UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APL CO. PTE. LTD., <br><br> Plaintiff, <br><br> v. <br><br> UK AEROSOLS LTD., INC.; U.G. CO., INC. dba Universal Grocers Co.; KAMDAR GLOBAL, LLC; and IMP-EX SOLUTIONS, LLC, <br><br> Defendants. | No. C 05-0646 MHP <br><br> **MEMORANDUM & ORDER** <br> **Motion to Dismiss** |

On February 11, 2005 plaintiff APL Co. Pte. Ltd. ("APL") brought this action under federal maritime law, 28 U.S.C. section 1333, for breach of contract and negligence against defendants UK Aerosols Ltd. ("UKA"), U.G. Co., Inc. ("UG"), and Kamdar Global, LLC ("Kamdar"). On February 28, 2006 plaintiff amended its complaint to add Imp-Ex Solutions, LLC ("Imp-Ex") as a co-defendant. Now before the court is Imp-Ex's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The court has considered the parties' arguments fully, and for the reasons set forth below, the court rules as follows.

BACKGROUND[1]

Plaintiff APL is a Singapore corporation with its principal place of business in Singapore. APL is qualified to do business in California. Defendant UKA is an English company with its principal place of business in England. Defendant UG is a California company with its principal place of business in California. Defendant Kamdar is an Illinois limited liability company with its

principal place of business in California. Lastly, defendant Imp-Ex is a Delaware limited liability company with its principal place of business in California.

UKA sent a request to plaintiff APL, requesting that APL send a cargo of 717,120 spray cans and 59,760 cartons of hair spray and mousse from Istanbul, Turkey to California (the "goods"). Pursuant to this request, on October 8, 2003, plaintiff issued its bill of lading APLU No. 800701216 (the "Bill of Lading") to govern the terms of the carriage. On November 23, 2003, after the goods arrived in California, APL discovered that the shipment was "leaking, dangerous and hazardous." Complaint ¶ 15. Plaintiff spent approximately $700,000 in assessing, cleaning, removing and eventually destroying the goods.

Plaintiff is named as a "Carrier" in the Bill of Lading and plaintiff alleges that all defendants are "Merchants" within the meaning of the Bill of Lading. A "Merchant" is defined as a "Shipper, Consignee, Receiver of the Bill of Lading, Owner of the cargo or Person entitled to the possession of the cargo or having a present of future interest in the Goods." Bill of Lading cl.1(ii). Defendants UKA, UG and Kamdar have all accepted and endorsed the Bill of Lading. However, the complaint provides no indication that Imp-Ex has also accepted or endorsed the Bill of Lading, only stating that Imp-EX "requested transport, inspection and salvage of the Goods and inquired into the cost of the clean up of the Goods." Complaint ¶ 13.

Plaintiff asserts that it has been harmed and is entitled to compensation because defendants were "negligent in shipping, stowing, describing, failing to describe or handling the Goods" Complaint ¶ 20. Specifically, plaintiff alleges that defendants breached clauses 13 and 19 of the Bill of Lading and are jointly and severally liable for all of plaintiff's damages and expenses incurred as a result of this breach. Pursuant to clause 13 of the Bill of Lading, the "Shipper warrants to the Carrier that the particulars relating to the Goods . . . have been checked by the Shipper. . . and that such particulars . . . are correct." Bill of Lading cl. 13(i). Additionally, clause 13 states that "the Merchant shall indemnify the Carrier against all loss, damage, liability and expenses arising or resulting from inaccuracies in or inadequacy of such particulars." Bill of Lading Clause 13(ii).

2

Pursuant to clause 19 of the Bill of Lading (entitled "Dangerous, Hazardous or Noxious Goods"), express written consent from the Carrier is required for any "[g]oods which are or may become inflammable, explosive, corrosive, noxious, hazardous, dangerous or damaging." Bill of Lading cl. 19(i). Absent consent, the Carrier is entitled to dispose of these dangerous goods "without compensation to the Merchant and without prejudice to the Carrier's right to Freight." Bill of Lading cl. 19(ii). Clause 19 also observes that regardless of the Merchant's knowledge about the "nature of the Goods, the Merchant *shall* indemnify the Carrier against all claims, losses, damages, liabilities or expenses arising in consequence of the Carriage of such Goods." Bill of Lading cl. 19(iv) (emphasis added).

On May 3, 2006 defendant Imp-Ex filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The crux of the current dispute between the parties is whether Imp-Ex is contractually obligated under the Bill of Lading. Imp-Ex asserts in its motion to dismiss that because APL cannot prove that Imp-Ex was a party or signatory to the Bill of Lading, APL's breach of contract claims and the negligence claims (which are based upon the purported contractual obligations) must fail. In response, APL contends that the definition of "Merchant" within the Bill of Lading is broad enough to include Imp-Ex, exposing it to contractual liability.

LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Because Rule 12(b)(6) focuses on the "sufficiency" of a claim—and not the claim's substantive merits—"a court may [typically] look only at the face of the complaint to decide a motion to dismiss." Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46 (1957). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police

Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996). The court need not, however, accept as true allegations that are conclusory, legal conclusions, unwarranted deductions of fact or unreasonable inferences. See Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Clegg v. Cult Awareness Network, 18 F.3d 752, 754–55 (9th Cir. 1994).

DISCUSSION

I.   Breach of Contract Claims

The bill of lading is "the basic transportation contract between the shipper-consignor and the carrier; its terms and conditions bind the shipper and all connecting shippers." Southern Pac. Transp. Co. v. Commercial Metals Co., 456 U.S. 336, 342 (1982). And "like all contracts," before a party is bound by its terms, it must demonstrate "some form of acceptance." All Pacific Trading, Inc. v. Vessel M/V Hankin Yosu, 7 F.3d 1427, 1432 (9th Cir. 1993) (citing Cal. Civ. Code. § 2176 which states that a "passenger, consignor or consignee, by *accepting* . . . a bill of lading . . . with knowledge of its terms, assents to the rate of hire, the time, place and manner of delivery therein stated, and also to the limitation stated therein upon the amount of the carrier's liability. . .).

However, evidence of "actual acceptance" is not always required. See Pacific Coast Fruit Distributors, Inc. v. Pennsylvania R.R. Co., 217 F.3d 273, 275 (9th Cir. 1954) (finding appellant's "unqualified and unequivocal dominion and control of the shipments" as well as its status as "consignee" to the bill of lading was sufficient as an alternate basis for finding "acceptance . . . of the goods for the purpose of determining liability for freight charges"); see also Kukje Kwajae Ins., Co., Ltd. v. M/V Hyundai Liberty, 408 F.3d 1250 (9th Cir. 2005) (quoting All Pacific, 7 F.3d at 1432) (observing that the Ninth Circuit has determined that "a cargo owner 'accepts' a bill of lading to which it is not a signatory by bringing suit on it.").

Defendant asserts that plaintiff has not alleged and cannot demonstrate that Imp-Ex accepted the terms of the Bill of Lading and that absent formal acceptance, plaintiff's attempt to bind Imp-Ex

4

1 through the definition of "Merchant" is unavailing.  In support of its contention, Imp-Ex relies on
2 two cases: Stein Hall & Co., Inc. v. S.S. Concordia Viking, 494 F.2d 287, 290 (2d Cir. 1974)
3 (holding that a carrier and shipper "cannot contract to bind an unconsenting third party") and United
4 States v. Waterman S.S. Corp., 471 F.2d 186, 188 (5th Cir. 1973) (declining to find government
5 liability when the "the government was neither party nor privy to the bill of lading").  The Waterman
6 court observed that "under traditional principles of contract law, [the government] is not bound by
7 [the bill of lading's] . . . provisions, absent consent to be bound" since "a party cannot unilaterally
8 employ definitions to bind another by provisions to which the other has not consented to be bound").
9 Id. at 189, n.4.  Although these cases provide support for defendant's assertions, the court is
10 mystified as to why defendant places such emphasis upon them and other district court decisions
11 from other circuits while making no mention of controlling Ninth Circuit precedent.  See, e.g., All
12 Pacific, 7 F.3d at 1432.  In any event, the court finds that the complaint is devoid of any allegations
13 that Imp-Ex is a signatory to or has "accepted" the Bill of Lading.[2]

14 Nonetheless, plaintiff contends—in an argument reminiscent of that made in Pacific Coast,
15 217 F.3d at 275 (where the court equated "unequivocal dominion and control of the shipments" with
16 acceptance)—that because Imp-Ex "assert[ed] an interest in and control over the goods," an
17 inference of an intent on the part of Imp-Ex to be bound by the terms of the Bill of Lading can be
18 appropriately drawn.  Pl.'s Opp. at 5:16–20.  However, the only facts alleged in the complaint to
19 support this contention, are the request made by Imp-Ex to "inspect[] and salvage" the goods and an
20 "inquir[y] into the cost of the clean up."  See Complaint ¶ 13.  These allegations are insufficient for
21 two reasons.  First, there is no evidence that Imp-Ex was "substituted in place of [another party] as
22 consignee"—in other words, plaintiff does not suggest that Imp-Ex became a party "by amendment."
23 Pacific Coast, 217 F.3d at 275.  Second, this request is not evidence of control on the part of Imp-Ex,
24 let alone the level of control emphasized by the Pacific Coast court.[3]  The court finds that pursuant to
25 All Pacific and Pacific Coast, Imp-Ex is not liable under the Bill of Lading because there are no
26 allegations of its acceptance of the contract—a requirement under traditional contract law principles.
27
28

5

Alternatively, in asserting that defendant is nonetheless liable because it is a "merchant" within the meaning of the contract, plaintiff offers up a litany of cases that it contends stand for the proposition that an unnamed party in a bill of lading can still be bound under the contract's definitions.  See Lite-On Peripherals, Inc. v. Burlington Air Express, Inc., 255 F.3d 1189 (9th Cir. 2001); Indemnity Ins. Co. v. Schneider Freight USA, Inc., No. CV 00-08032, 2001 WL 1356247 (C.D. Cal. Jun. 15, 2001); All Pacific, 7 F.3d at 1432.  Not only is one of these cases inapposite,[4] plaintiff fails to mention that the ability to bind an unnamed party is still subject to the "acceptance" requirement.  See Id. at 1432 (finding that plaintiffs were "actual parties" to the bills of lading under the definition of Merchant and that plaintiff's initiation of the suit constituted acceptance); Indemnity, 2001 WL 1356247, at *5 (finding that defendant was a party to the bill of a lading as a "merchant" and that the acceptance requirement was satisfied by the filing of suit by defendant).  In other words, for these two cases, the acceptance requirement was satisfied because the third-parties (who were unnamed but included within the definitions of the bills of lading) were the ones who brought suit, seeking benefits under the bills of lading.  This is not true of the present action.

In sum, plaintiff's contract law claim fails as a matter of law and defendant is entitled to dismissal.

II.     Negligence Claim

In its opposition, plaintiff has not offered any rebuttal to defendant's arguments that APL has failed to state a claim for negligence.  Plaintiff merely re-states the assertions made in its complaint, alleging that Imp-Ex and the other defendants, by not first obtaining APL's consent, were negligent in the "shipping, stowing[,] describing, failing to describe, or handl[ing of] the goods."  Pl.'s Opp. at 6:6–11.  Plaintiff's negligence claim appears to arise solely from duties imposed under the Bill of Lading.  Thus, to the extent that plaintiff's negligence claim stems from any contractual obligations under the Bill of Lading, the claim fails as matter of law.

Notwithstanding, even if plaintiff's negligence claim is independent of its contractual claim, the sparse facts alleged by plaintiff are insufficient to defeat defendant's motion to dismiss.  The

6

court finds that plaintiff's negligence claim is merely conclusory as the only facts alleged with respect to Imp-Ex are (1) that it is a Delaware corporation and (2) that it forwarded correspondence to APL inquiring after the clean-up costs and its inspection abilities.  Plaintiff has failed to state a claim for negligence and defendant is entitled to dismissal of this claim as a matter of law.

III.     Leave to Amend

The Federal Rules of Civil Procedure provide that leave to amend be "freely given when justice so requires." Fed. R. Civ. Pro 15(a).  The Ninth Circuit has construed this broadly, requiring that leave to amend be granted with "extraordinary liberality."  Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990).  In determining whether it should grant leave to amend a complaint, the court must consider (1) the plaintiff's bad faith; (2) undue delay; (3) prejudice to the defendant; (4) futility of amendment; and (5) whether the plaintiff has previously amended his or her pleadings.  Nunes v. Ashcroft, 375 F.3d 805, 808 (9th Cir. 2004) (citing Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995)), reh'g and reh'g en banc denied, 375 F.3d 810 (9th Cir. 2004), cert. denied, 543 U.S. 1188 (2005).  Futility alone can justify the denial of a motion to amend.  Bonin, 59 F.3d at 845.  Plaintiff asserts that through additional discovery, it will be able to determine the substance of the relationship between UG and Imp-Ex and on that basis allege facts demonstrating Imp-Ex's acceptance of the Bill of Lading.  The problem with this is that plaintiff is required to state a viable claim at the outset, not allege deficient claims and then seek discovery to cure the deficiencies.  See Rutman Wine Co. v. E.& J. Gallo Winery, 829 F.2d 729, 738 (9th Cir. 1987) (pointing out that the purpose of a Rule 12(b)(6) motion is to "enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery").

Plaintiff has only amended its pleadings once previously and there is no indication that defendants will suffer any prejudice or undue delay from a second amendment.  The court, therefore, grants plaintiff leave to amend its contract and negligence claims consistent with the provisions of this order. However, plaintiff must allege sufficient facts to overcome the deficiencies spelled out above.

CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is GRANTED with leave to amend within thirty (30) days of the date of this order if plaintiff can do so consistent with this order.

IT IS SO ORDERED.

Dated: July 6, 2006

/s/ Marilyn Hall Patel

MARILYN HALL PATEL
District Judge
United States District Court
Northern District of California

**ENDNOTES**

1. Unless otherwise noted, all facts are taken from the first amended complaint (the "complaint").

2. Defendant asserts that plaintiff is attempting to establish that the correspondence between APL and Imp-Ex occurred prior to the arrival of the goods in California. Plaintiff states in its opposition brief that

> Impex[sic] mis[-]characterizes the allegations of the First Amended Complaint and assumes the acts giving rise to APL's damages arose only after the goods arrived in California. The First Amended Complaint alleges that Impex[sic] wrote to APL an "requested transport, inspection and salvage of the Goods and inquired into the cost of the clean up of the Goods." It says nothing about the timing of this writing or the nature and extent of the writing.

Pl.'s Opp. at 5:25–6:2. Plaintiff engages in this mis-characterization, defendant alleges, because it is cognizant that post-breach communication cannot be evidence of an acceptance of a contract. At oral argument, however, plaintiff conceded that this communication occurred after the breach. Notwithstanding, regardless of whether this communication was made pre- or post-breach, plaintiff has not alleged any facts that support a finding that this communication was an acceptance of the terms of the Bill of Lading or that it demonstrates negligence.

3. At oral argument, plaintiff could offer no other facts in support of its assertion that Imp-Ex exercised significant control over the shipment goods. Plaintiff did contend that it believed that UG and Imp-Ex may have been joint venturers, and that based on this relationship there is a likely basis for liability.

4. Plaintiff's reliance on Lite-On is misplaced as the defendant was not an unnamed party but was specifically listed on the face of the bill of lading. Lite-On, 255 F.3d at 1191, 1193.

9