UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

APL CO. PTE. LTD.,

        Plaintiff,

    v.

UK AEROSOLS LTD., INC.; U.G. CO., INC. dba
Universal Grocers Co.; KAMDAR GLOBAL, LLC;
and IMP-EX SOLUTIONS, LLC,

        Defendants.

_____/

No. C 05-0646 MHP

**MEMORANDUM & ORDER**
**Motion to Dismiss**

On February 11, 2005 plaintiff APL Co. Pte. Ltd. ("APL") brought this action under federal maritime law, 28 U.S.C. § 1333, for breach of contract and negligence against defendants UK Aerosols Ltd. ("UKA"), U.G. Co., Inc. ("UG"), and Kamdar Global, LLC ("Kamdar"). On February 28, 2006 plaintiff amended its complaint to add Imp-Ex Solutions, LLC ("Imp-Ex") as a co-defendant. Imp-Ex brought a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), which was granted with leave to amend on July 7, 2006. Plaintiff has again amended its complaint, inserting additional facts and attaching to the second amended complaint ("SAC") what appears to be a contract between Imp-Ex, UG and Kamdar (entitled "Agreement for Payments"). Imp-Ex has brought a new motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), which is now before the court. The court has considered the parties' arguments fully, and for the reasons set forth below, the court rules as follows.

UNITED STATES DISTRICT COURT
For the Northern District of California

BACKGROUND[1]

Plaintiff APL is a Singapore corporation with its principal place of business in Singapore. APL is qualified to do business in California. Defendant UKA is an English company with its principal place of business in England. Defendant UG is a California company with its principal place of business in California. Defendant Kamdar is an Illinois limited liability company with its principal place of business in California. Lastly, defendant Imp-Ex is a Delaware limited liability company with its principal place of business in California.

UKA sent a request to plaintiff APL, requesting that APL ship a cargo of 717,120 spray cans and 59,760 cartons of hair spray and mousse from Istanbul, Turkey to California (the "goods"). Pursuant to this request, on October 8, 2003, plaintiff issued its bill of lading APLU No. 800701216 (the "Bill of Lading") to govern the terms of the carriage. On November 23, 2003, after the goods arrived in California, APL discovered that the shipment was "leaking, dangerous and hazardous." SAC ¶ 15. Plaintiff spent approximately $700,000 in assessing, cleaning, removing and eventually destroying the goods. Id. at ¶¶ 25-26.

Plaintiff is named as a "Carrier" in the Bill of Lading and plaintiff alleges that all defendants are "Merchants" within the meaning of the Bill. A "Merchant" is defined as a "Shipper, Consignee, Receiver of the Bill of Lading, Owner of the cargo or Person entitled to the possession of the cargo or having a present of future interest in the Goods and the servants and agents of any of these." Bill of Lading cl. 1(ii). Defendants UKA, UG and Kamdar have all accepted and endorsed the Bill of Lading. However, the complaint provides no indication that Imp-Ex has also accepted or endorsed the Bill.

Plaintiff asserts that it has been harmed and is entitled to compensation because defendants were "negligent in shipping, stowing, describing, failing to describe or handling the Goods" SAC ¶ 20. Specifically, plaintiff alleges that defendants breached clauses 13 and 19 of the Bill of Lading and are jointly and severally liable for all of plaintiff's damages and expenses incurred as a result of this breach. Pursuant to clause 13, the "Shipper warrants to the Carrier that the particulars relating

to the Goods . . . have been checked by the Shipper . . . and that such particulars . . . are correct." Bill of Lading cl. 13(i). Additionally, clause 13 states that "the Merchant shall indemnify the Carrier against all loss, damage, liability and expenses arising or resulting from inaccuracies in or inadequacy of such particulars." Id. at cl. 13(ii).

Pursuant to clause 19 of the Bill of Lading (entitled "Dangerous, Hazardous or Noxious Goods"), express written consent from the Carrier is required for any "[g]oods which are or may become inflammable, explosive, corrosive, noxious, hazardous, dangerous or damaging."Id. at cl. 19(i). Absent consent, the Carrier is entitled to dispose of these dangerous goods "without compensation to the Merchant and without prejudice to the Carrier's right to Freight." Id. at cl. 19(ii). Clause 19 also provides that regardless of the Merchant's knowledge about the "nature of the Goods, the Merchant *shall* indemnify the Carrier against all claims, losses, damages, liabilities or expenses arising in consequence of the Carriage of such Goods." Id. at cl. 19(iv) (emphasis added).

The SAC makes several allegations regarding Imp-Ex, primarily revolving around the alleged relationship between Imp-Ex, UG and Kamdar. Plaintiff alleges that Imp-Ex, UG and Kamdar entered into an agreement, which is attached to the SAC, whereby Imp-Ex and UG agreed to purchase goods from Kamdar, including the goods at issue in this case. SAC ¶¶ 13-14. Plaintiff further alleges that Imp-Ex and UG were partners or engaged in a joint venture or, alternatively, that Imp-Ex acted as principal and UG as agent, when UG accepted and endorsed the Bill of Lading. Id. at ¶ 15. Plaintiff also contends that Imp-Ex had an ownership interest in the goods and that Imp-Ex evidenced such an interest when it inquired about the status of the goods, including the cost of clean-up. Id. at ¶¶ 16-17.

On May 3, 2006 defendant Imp-Ex filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. This motion was granted with leave to amend on July 7, 2006. UG and Kamdar subsequently filed a motion for summary judgment on July 17, 2006, which was denied in part and granted as to a claim for negligence. On August 3, 2006, plaintiff filed a second amended complaint. Imp-Ex again filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) on August 17, 2006. Imp-Ex renews its argument that it cannot be bound to a

3

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1  Bill of Lading to which it was not a party.  Imp-Ex further contends that it is not liable as a joint

2  venturer, partner or principal.  APL argues that Imp-Ex is a "Merchant" under the Bill of Lading,

3  and that because Imp-Ex was a joint venturer, partner or principal in relation to UG, Imp-Ex is

4  bound to the Bill of Lading by virtue of its relationship with UG.

5

6  LEGAL STANDARD

7      A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal

8  sufficiency of a claim."  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  Because Rule

9  12(b)(6) focuses on the "sufficiency" of a claim—and not the claim's substantive merits—"a court

10  may [typically] look only at the face of the complaint to decide a motion to dismiss."  Van Buskirk

11  v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002).  A motion to dismiss under Federal

12  Rule of Civil Procedure 12(b)(6) should be granted if "it appears beyond doubt that the plaintiff can

13  prove no set of facts in support of his claims which would entitle him to relief."  Conley v. Gibson,

14  355 U.S. 41, 45–46 (1957).  Dismissal can be based on the lack of a cognizable legal theory or the

15  absence of sufficient facts alleged under a cognizable legal theory.  Balistreri v. Pacifica Police

16  Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  Allegations of material fact are taken as true and

17  construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80

18  F.3d 336, 337–38 (9th Cir. 1996).  The court need not, however, accept as true allegations that are

19  conclusory, legal conclusions, unwarranted deductions of fact or unreasonable inferences.  See

20  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Clegg v. Cult Awareness

21  Network, 18 F.3d 752, 754–55 (9th Cir. 1994).

22

23

24

25

26

27

28

4

DISCUSSION

I.     Liability as a Party to the Contract

The bill of lading is "the basic transportation contract between the shipper-consignor and the carrier; its terms and conditions bind the shipper and all connecting shippers." Southern Pac. Transp. Co. v. Commercial Metals Co., 456 U.S. 336, 342 (1982). Like any other contract, a bill of lading may bind multiple parties. Bills of lading may define the rights and responsibilities of a broad set of parties—including the owner of the goods being shipped. All Pacific Trading, Inc. v. Vessel M/V Hankin Yosu, 7 F.3d 1427, 1432 (9th Cir. 1993), cert. denied, 510 U.S. 1194 (1994). See also Maersk, Inc. v. Neewra, Inc., 2006 U.S. Dist. LEXIS 53395 (S.D.N.Y.) at *32 and cases cited therein.

While Imp-Ex may fit the expansive definition of "Merchant" in the Bill of Lading, more is needed to bind Imp-Ex to this contract. A party cannot be unwillingly or unknowingly bound to a contract; rather, it is fundamental that "some form of acceptance" is required. All Pacific, 7 F.3d at 1432 (citing Cal. Civ. Code. § 2176, which states that a "passenger, consignor or consignee, by accepting . . . a bill of lading . . . with knowledge of its terms, assents to the rate of hire, the time, place and manner of delivery therein stated, and also to the limitation stated therein upon the amount of the carrier's liability") (emphasis added). APL's Second Amended Complaint fails to allege facts sufficient to show acceptance of the Bill of Lading by Imp-Ex.

In its opposition, APL concedes that Imp-Ex did not sign the Bill of Lading. However, APL contends that Imp-Ex nonetheless accepted the Bill of Lading, by virtue of either the control inherent in a present or future possessory interest in the goods, or by being a joint venturer or partner with, or principal of UG. None of these interests is sufficient to constitute acceptance of the Bill of Lading.

The court rejects APL's contention that a present or future ownership interest in the goods is sufficient control to constitute acceptance of the Bill of Lading. Only "unqualified and unequivocal dominion and control of the shipments" may be equivalent to acceptance.  Pacific Coast Fruit Distribs., Inc. v. Pennsylvania R.R. Co., 217 F.2d 273, 275 (9th Cir. 1954).  Notably, in Pacific Fruit the accepting defendant was also a consignee to the bill of lading. Id.  Inquiries by Imp-Ex into the

5

UNITED STATES DISTRICT COURT
For the Northern District of California

1   status of the goods and the cost of clean-up, along with a possessory interest in the goods, are

2   insufficient to create the "unequivocal dominion" necessary for acceptance.  Shipping goods often

3   involves many intermediaries, and a high degree of control must be found before an intermediary

4   can be found to have accepted a contract to which it is not a party.

5           Nor can allegations of an agency relationship, partnership or joint venture between Imp-Ex

6   and UG create acceptance of the Bill of Lading by Imp-Ex.  Familiar principles of contract

7   interpretation govern the construction of a maritime bill of lading.  Yang Ming Marine Transp. Corp.

8   v. Okamoto Freighters Ltd., 259 F.3d 1086, 1092 (9th Cir. 2001) (citing Henley Drilling Co. v.

9   McGee, 36 F.3d 143, 148 n.11 (1st Cir. 1994)).  It is well-established as a general rule that "[a]n

10  offer can be accepted only by a person whom it invites to furnish the consideration."  RESTATEMENT

11  (SECOND) OF CONTRACTS § 52 (1979).  While acceptance by one other than the offeree may be

12  implied in certain situations, see, e.g., Pacific Coast Fruit, 217 F.2d at 275 (acceptance implied by

13  unequivocal dominion and control of goods); Kukje Kwajae Ins. Co., Ltd. v. M/V Hyundai Liberty,

14  408 F.3d 1250, 1254 (9th Cir. 2005) (cargo owner's acceptance of bill of lading implied by suing on

15  the bill of lading), deviations from the general rule are limited.  The liability of principals for the

16  actions of agents is governed by agency law, and the shared liability of partners and joint venturers

17  is governed by partnership law.  While these relationships may create liability, they do not create

18  acceptance where none exists.  Plaintiff has not alleged sufficient facts to demonstrate acceptance of

19  the Bill of Lading by Imp-Ex.

20          As a result, Imp-Ex cannot be bound as a party to the Bill of Lading.

21  II.     Contract Liability as a Principal

22           While general agency law principles are not absolutely applicable to maritime matters, see,

23  e.g., Norfolk S. Ry. Co. v. Kirby, 543 U.S. 14 (2004) (freight forwarding company is agent of

24  shipper only in contracting with subsequent carriers for liability limitations), agency principles are

25  routinely applied in maritime cases. See Tessler Brothers (B.C.) Ltd. v. Italpacific Line, 494 F.2d

26  438 (9th Cir. 1974) (applying agency principles to Himalaya Clause in maritime bill of lading);

27  Morrow Crane Co. v. Affiliated FM Ins. Co., 885 F.2d 612 (9th Cir. 1989) (applying agency

28

6

UNITED STATES DISTRICT COURT
For the Northern District of California

1   principles to maritime insurance coverage dispute).  In the maritime context, as elsewhere, a

2   principal, even if undisclosed, is bound by the acts of its agent if the agent has actual authority.  Id.

3   at 614; RESTATEMENT (THIRD) OF AGENCY § 6.03 (2005).

4       APL has alleged that Imp-Ex was acting as principal and UG was acting as agent when UG

5   signed the Bill of Lading.  When ruling on a motion under Federal Rule of Civil Procedure 12(b)(6)

6   the court does not accept as true plaintiff's legal conclusion that UG was Imp-Ex's agent. See

7   Sprewell, 266 F.3d at 988.  Furthermore, the court does not consider any evidence besides the

8   complaint and those matters of public record of which judicial notice has been requested.  Lee v.

9   City of Los Angeles, 250 F.3d 668, 688–89 (9th Cir. 2001).  Specifically, the court has not

10  considered the declaration attached to plaintiff's opposition.

11      Nevertheless, the court finds that plaintiff has sufficiently alleged that UG was acting as

12  agent for Imp-Ex when UG signed the Bill of Lading.  Attachment A (the "Agreement for

13  Payments") to the Second Amended Complaint indicates a business relationship between UG and

14  Imp-Ex.  The transaction at issue may have been entered into in the course of this relationship.

15  While the nature and extent of this relationship is unclear, the court is required to draw all

16  reasonable inferences in plaintiff's favor.  If plaintiff can prove that UG was Imp-Ex's agent, Imp-

17  Ex's liability will depend on UG's liability.  Imp-Ex's claim that the purchase orders previously

18  submitted pre-date the Agreement for Payments is directed to the strength of plaintiff's evidence and

19  does not inherently disprove plaintiff's allegations.  It does not appear "beyond doubt that plaintiff

20  can prove no set of facts in support of his claim which would entitle him to relief." Hydranautics v.

21  FilmTec Corp., 70 F.3d 533, 535–36 (9th Cir. 1995), cert. denied, 519 U.S. 814 (1991).

22      Accordingly, Imp-Ex's motion to dismiss the contract claim is denied.

23  III.   Contract Liability as a Partner or Joint Venturer

24      A partnership is generally defined as "an association of two or more persons to carry on as

25  co-owners a business for profit . . ."  Revised Uniform Partnership Act (RUPA) § 101(6) (1997).  A

26  joint venture is essentially a "single enterprise for profit" carried out by two or more people.  Parvin

27  v. Davis Oil Co., 655 F.2d 901, 904 (9th Cir. 1979), cert. denied, 445 U.S. 965 (1980) (applying

28

7

California law).  "Commentators generally regard joint ventures as a sub-species of partnership." Board of Trs. of the W. Conference of Teamsters Pension Tr. Fund v. H.F. Johnson, Inc., 830 F.2d 1009, 1015 (9th Cir. 1987).  Importantly, "[e]ach partner is an agent of the partnership for the purpose of its business."  RUPA § 301(1).

The Agreement for Payments, as discussed above, indicates some sort of business relationship between Imp-Ex and UG.  While the precise nature of this relationship is unclear, it is not unreasonable to infer that Imp-Ex and UG are partners to the Agreement for Payments and that they are operating as some sort of combined entity.  The Agreement for Payments reflects that Imp-Ex and UG share the same business address, and the Agreement refers several times to "Impex Solutions, L.L.C./Universal Grocers Co." as if it were a unified entity.  SAC, Attachment A ¶¶ 14–15.

The court is mindful that "[w]hether a partnership or joint venture has been formed depends on the applicable state law."  Nelson v. Serwold, 687 F.2d 278, 282 (9th Cir. 1982).  However, the partnership principles applicable to the present motion are general in nature and widely adopted, and the court need not determine what state law is applicable.  Contrary to the assertion of Imp-Ex, any partnership or joint venture between Imp-Ex and UG is not necessarily governed by the Agreement for Payments and its choice of Illinois law.[2]

Imp-Ex's motion to dismiss the contract claim is denied.

IV.     Negligence Claim

Plaintiff's negligence claim in the Second Amended Complaint is the same as the negligence claim that was the subject of Imp-Ex's first motion to dismiss.  Plaintiff has not pled any additional facts that would tend to show an independent duty beyond that established by contract nor an independent cause of action for negligence beyond the breach of contract.  It appears that plaintiff's negligence claim continues to arise solely from duties imposed under the Bill of Lading.  Again, plaintiff's negligence claim fails as a matter of law and this claim against Imp-Ex is dismissed.

V.      Leave to Amend

The Federal Rules of Civil Procedure provide that leave to amend be "freely given when

8

**UNITED STATES DISTRICT COURT**
For the Northern District of California

justice so requires." Fed. R. Civ. P. 15(a).  Federal Rule of Civil Procedure 15(a) embodies a strong preference that cases be decided on the merits, and not on pleadings or technicalities.  <u>Nunes v. Ashcroft</u>, 375 F.3d 805, 808 (9th Cir. 2004), <u>reh'g and reh'g en banc denied</u>, 375 F.3d 810 (2004), <u>cert. denied</u>, 543 U.S. 1188 (2005), <u>reh'g denied</u>, 544 U.S. 1011 (2005) (citing <u>Lopez v. Smith</u>, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc)).  The Ninth Circuit has construed Federal Rule of Civil Procedure 15(a) broadly, requiring that leave to amend be granted with "extraordinary liberality." <u>Morongo Band of Mission Indians v. Rose</u>, 893 F.2d 1074, 1079 (9th Cir. 1990).  In determining whether it should grant leave to amend a complaint, the court must consider (1) the plaintiff's bad faith; (2) undue delay; (3) prejudice to the defendant; (4) futility of amendment; and (5) whether the plaintiff has previously amended his or her pleadings.  <u>Nunes</u>, 375 F.3d at 808 (citing <u>Bonin v. Calderon</u>, 59 F.3d 815, 845 (9th Cir. 1995)), <u>reh'g and reh'g en banc denied</u>, 375 F.3d 810 (9th Cir. 2004), <u>cert. denied</u>, 543 U.S. 1188 (2005).

Plaintiff spends little time, either in the Second Amended Complaint or in its opposition, supporting its claim of negligence against Imp-Ex.  Plaintiff has now twice amended its pleadings. This case was facing a trial date in late October—just a month away.  It has been reset because of the amendments allowed by this order.  The court will not permit any additional delay and notes that further amendment is likely to be an exercise in futility.  Therefore, leave to amend the negligence claim will not be allowed.

//
//
//
//
//
//
//
//
//

9

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1  //

2  //

3

4

5  CONCLUSION

6       For the foregoing reasons, defendant's motion to dismiss is DENIED as to plaintiff's contract

7  claim against defendant and defendant's motion to dismiss is GRANTED as to plaintiff's negligence

8  claim against defendant, without leave to amend.

9

10       IT IS SO ORDERED.

11

12

13  Dated: September 27, 2006

14                            MARILYN HALL PATEL

                          District Judge

15                            United States District Court

                          Northern District of California

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

<u>**ENDNOTES**</u>

6

7

1.  Unless otherwise noted, all facts are taken from the second amended complaint (the "complaint" or "SAC").

8

9

2.  If Imp-Ex and UG are in fact partners or joint venturers, statutes addressing purported partners are inapposite, and any inquiry into representations is irrelevant.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**