UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

APL CO. PTE. LTD.,

    Plaintiff,

    v.

UK AEROSOLS LTD., INC.; U.G. CO., INC. dba Universal Grocers Co.; KAMDAR GLOBAL, LLC,

    Defendants.

No. C 05-0646 MHP

**MEMORANDUM & ORDER**
**Motion for Summary Judgment**

    On February 11, 2005 plaintiff APL Co. Pte. Ltd. ("APL") brought this breach of contract and negligence action against defendants UK Aerosols Ltd. ("UKA"), U.G. Co., Inc. ("UG"), and Kamdar Global, LLC ("Kamdar"). On February 28, 2006 plaintiff amended its complaint to add Imp-Ex Solutions, LLC ("Imp-Ex") as a co-defendant. On July 6, 2006 the court granted Imp-Ex's motion to dismiss and granted plaintiff leave to amend its complaint consistent with the court's order. On August 3, 2006, APL amended its complaint accordingly. Now before the court is UG's and Kamdar's motion for summary judgment on plaintiff's breach of contract and negligence claims. The court has considered the parties' arguments fully, and for the reasons set forth below, the court rules as follows.

BACKGROUND[1]

    Plaintiff APL is a Singapore corporation with its principal place of business in Singapore. APL is qualified to do business in California. Defendant UKA is an English company with its principal place of business in England. Defendant UG is a California company with its principal place of business in California. Defendant Kamdar is an Illinois limited liability company with its principal place of business in California.

    UKA sent a request to plaintiff APL requesting that APL send a cargo of 717,120 spray cans and 59,760 cartons of hair spray and mousse (the "goods") from Istanbul, Turkey to California.

Pursuant to this request, on October 8, 2003, plaintiff issued its bill of lading APLU No. 800701216 (the "Bill of Lading") to govern the terms of the carriage. On November 23, 2003, after the goods arrived in California, APL discovered that the shipment was "leaking, dangerous and hazardous." SAC ¶ 19. Plaintiff spent approximately $700,000 in assessing, cleaning, removing and eventually destroying the goods.

Plaintiff is named as a "Carrier" in the Bill of Lading and plaintiff alleges that all defendants are "Merchants" within the meaning of the Bill of Lading. Merchant is defined as a "Shipper, Consignee, Receiver of the Bill of Lading, Owner of the cargo or Person entitled to the possession of the cargo or having a present or future interest in the Goods and the servants or agents of any of these." Bill of Lading cl. 1(ii). Defendants UKA, UG and Kamdar have all accepted and endorsed the Bill of Lading.

Plaintiff asserts that it has been harmed and is entitled to compensation because defendants were "negligent in shipping, stowing, describing, failing to describe or handling the Goods." SAC ¶ 24. Specifically, plaintiff alleges that defendants breached clauses 13 and 19 of the Bill of Lading and are jointly and severally liable for all of plaintiff's damages and expenses incurred as a result of this breach. Pursuant to Clause 13 of the Bill of Lading, the "Shipper warrants to the Carrier that the particulars relating to the Goods . . . have been checked by the Shipper . . . and that such particulars . . . are correct." Bill of Lading Cl. 13(i). Additionally, Clause 13 states that "the Merchant shall indemnify the Carrier against all loss, damage, liability and expenses arising or resulting from inaccuracies in or inadequacy of such particulars." Bill of Lading Cl. 13(ii).

Pursuant to Clause 19 of the Bill of Lading (entitled "Dangerous, Hazardous or Noxious Goods"), express written consent from the Carrier is required for any "[g]oods which are or may become inflammable, explosive, corrosive, noxious, hazardous, dangerous or damaging." Bill of Lading Cl. 19(i). Absent this consent, the Carrier is entitled to dispose of these dangerous goods "without compensation to the Merchant and without prejudice to the Carrier's right to Freight." Bill of Lading Cl. 19(ii). Clause 19 also observes that regardless of the Merchant's knowledge about the "nature of the Goods, the Merchant *shall* indemnify the Carrier against all claims, losses, damages,

2

1  liabilities or expenses arising in consequence of the Carriage of such Goods." Bill of Lading Cl.
2  19(iv) (emphasis added).
3  　　　On July 17, 2006 defendants UG and Kamdar filed a motion for summary judgment on
4  plaintiff's breach of contract and negligence claim. The issue facing the court is whether Clauses 13
5  and 19 of the Bill of Lading violate the U.S. Carriage of Goods by Sea Act (COGSA), 46 U.S.C. §
6  1300 et seq. Defendants assert that Clause 13 is void because it impermissibly shifts liability for the
7  shipper's negligence to the defendants in violation of sections 1303(8) and 1304(3) of COGSA.
8  Defendants argue that Clause 19 is void because it violates COGSA sections 1304(6) and 1304(3).
9  Defendants further argue that since APL cannot prove that UG and Kamdar had a role in the
10 manufacturing, securing or transporting of the goods, APL's negligence claim must fail. In response,
11 APL contends that the Bill of Lading does not impermissibly shift liability and that UG and Kamdar
12 are bound by the terms of the contract under agency principles.
13
14 LEGAL STANDARD
15 　　　Summary judgment is proper when the pleadings, discovery and affidavits show that there is
16 "no genuine issue as to any material fact and that the moving party is entitled to judgment as a
17 matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the
18 case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is
19 genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving
20 party. Id. The party moving for summary judgment bears the burden of identifying those portions
21 of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material
22 fact. Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). On an issue for which the opposing party
23 will have the burden of proof at trial, the moving party need only point out "that there is an absence
24 of evidence to support the nonmoving party's case." Id.
25 　　　Once the moving party meets its initial burden, the nonmoving party must go beyond the
26 pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a
27 genuine issue for trial." Fed. R. Civ. P. 56(e). Mere allegations or denials do not defeat a moving
28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

3

party's allegations. Id.; Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 960 (9th Cir. 1994). The court may not make credibility determinations, and inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the motion. Masson v. New Yorker Magazine, 501 U.S. 496, 520 (1991); Anderson, 477 U.S. at 249.

The moving party may "move with or without supporting affidavits for a summary judgment in the party's favor upon all [claims] or any part thereof." Fed. R. Civ. P. 56(a). "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e).

DISCUSSION

I. Breach of Contract Claims

The Carriage of Goods By Sea Act [hereinafter "COGSA"] enacted in 1936 governs "all contracts for the carriage of goods by sea to or from ports of the United States in foreign trade." 46 U.S.C. § 1312. COGSA sets out rules for the allocation of risk between shippers and carriers in contracts for the shipment of goods. See Senator Linie GMBH & Co. KG v. Sunway Line, Inc., 291 F.3d 145, 148 (2d Cir. 2002) (describing the goals of COGSA as "fostering international uniformity in sea-carriage rules and allocating risk between shippers and carriers in a manner that is consistent and predictable"). The parties agree that the Bill of Lading is governed by COGSA.[2]

The issue presented here is whether the allocation of risk in Clauses 13 and 19 of the Bill of Lading violates the principles set forth in various provisions of COGSA. Defendants advance a general principle based on a reading of these provisions that COGSA prevents the imposition of liability on any party without fault. Plaintiff contends that COGSA contains no such general principle and that individual statutory provisions govern the different arrangements among the parties to a bill of lading.

Under the general maritime law of contracts, "freedom of contract is the norm so that rights, duties, liability depend primarily upon the substance of the parties' agreement." 1 Thomas J.

4

Schoenbaum, Admiralty and Maritime Law § 5-1 at 181 (4th ed. 2003).  Express contractual agreements to shift or limit liability, such as indemnity provisions, are generally enforceable in admiralty.  See American Stevedores, Inc. v. Porello, 330 U.S. 446, 456-59 (1947) (reviewing an indemnity provision in contract for stevedoring services); Nissho-Iwai Co. v. M/T Stolt Lion, 617 F.2d 907 (2d Cir. 1980) (analyzing an indemnity provision in a time charter between shipowner and timer charterer governing liability for damaged cargo). While freedom of contract in maritime contracts is the norm, the parties are restrained by COGSA. "COGSA allows a freedom of contracting out of its terms, but only in the direction of increasing the [carrier's] liabilities, and never in the direction of diminishing them." Sun Oil Co. v. M/T Carisle, 771 F.2d 805, 813 (3d Cir. 1985) (quoting G. Gilmore & C. Black, The Law of Admiralty 145 (2d ed. 1975)).  Therefore, the court must determine whether the provisions in the Bill of Lading violate COGSA's strong prohibition on lessening the carrier's liability.

A. Clause 13

Defendants argue that Clause 13 violates COGSA sections 1303(8) and 1304(3) because it imposes liability on all of those parties included in the definition of "Merchant" for the negligent acts of the "Shipper."  The court will address each argument in turn.

Under Clause 13, the "Shipper warrants to the Carrier that the particulars relating to the Goods . . . have been checked by the Shipper . . . and that such particulars . . . are correct."  Bill of Lading Cl. 13(i).  Additionally, Clause 13 states that "the Merchant shall indemnify the Carrier against all loss, damage, liability and expenses arising or resulting from inaccuracies in or inadequacy of such particulars."  Bill of Lading Cl. 13(ii).  The Bill of Lading identities UG and Kamdar as the "notify party" and "also notify party," respectively.  Plaintiffs contend that as such they are included in the definition of "Merchant" in the Bill of Lading.  The Bill of Lading imposes liability on the Merchant for certain acts of the Shipper, UKA.  Under this theory, UG and Kamdar may be liable for UKA's negligence.

5

COGSA section 1303(8) renders void any contractual provision "relieving the carrier or the ship from liability for loss or damage to or in connection with the goods, arising from negligence, fault, or failure in the duties and obligations provided in this section, or lessening such liability otherwise than as provided in this Act." Under the terms of the statute, "any contract agreement lessening the statutory liability of the carrier is null and void." All Pac. Trading v. Vessel M/V Hanjin Yosu, 7 F.3d 1427, 1433 (9th Cir. 1993) (voiding language of a bill of lading in conflict with section 1303(8)). Therefore, the court must determine whether Clause 13 impermissibly shifts liability away from the carrier.

Defendants contend that Clause 13 imposes liability on the Merchant without fault in violation of section 1303(8). They contend that COGSA prohibits any imposition of "liability without a showing of fault." Def. Mot. 10:13-13. Contrary to defendants' assertions, section 1303(8) does not prohibit the imposition of liability without a showing of fault. Rather, it voids contracts that shift liability for the carrier's negligence away from the carrier. To support their reading of COGSA, defendants rely on United States v. M/V Santa Clara in which the court found certain contractual provisions to violate COGSA where they shift liability for the carrier's own negligence to the shipper or other parties. 887 F. Supp. 825, 837 (D.S.C. 1995) (concluding that contractual provision which "relieved the carrier" from liability for the carrier's own negligence violated section 1303(8)). In contrast to the provision considered in Santa Clara, Clause 13 does not relieve APL, the carrier, of liability for its own negligence. Clause 13 instead imposes liability on parties other than the shipper—in this case UG and Kamdar—for UKA's alleged breach of warranty. APL remains liable for its own negligence consistent with section 1303(8). Clause 13 does not shift liability as between the shipper and the carrier but merely extends the shipper's liability to those parties within the definition of Merchant in the Bill of Lading. Accordingly, Clause 13 does not violate section 1303(8).

Defendants also rely on a related provision, section 1304(3), to support their broad reading of COGSA. Section 1304(3) provides that the "shipper shall not be responsible for loss or damage sustained by the carrier or the ship arising or resulting from any cause without the act, fault, or

6

1  neglect of the shipper, his agents, or his servants." Defendants state that Clause 13 of the Bill of
2  Lading violates section 1304(3) because it imposes liability on UG and Kamdar without a showing
3  that they are at fault.
4        The court is not persuaded by defendants' reading of section 1304(3) to prohibit imposing
5  liability for the shipper's negligence on parties other than the shipper. Interpretation of section
6  1304(3) in this manner is a matter of first impression in the Ninth Circuit. The court has found no
7  binding authority on this issue. However, the Ninth Circuit analyzed a similar definition of
8  "Merchant" to the one at issue here in All Pacific. The Ninth Circuit affirmed the trial court's
9  conclusion that a cargo owner as included in the definition of "Merchant" was a party to the bill of
10 lading and, therefore, was jointly and severally liable for payment of all freight owed and any
11 expenses incurred as a result of failure to pay freight. All Pac. Trading, 7 F.3d at 1432; see also,
12 Maersk, Inc. v. Neewra, Inc., 2006 U.S. Dist. LEXIS 53395, at *32 (S.D.N.Y) (holding that a similar
13 clause bound parties other than shipper jointly and severally to pay freight owed by the shipper to
14 carrier). The All Pacific case, however, did not address the interpretation of section 1304(3)
15 proffered by the defendants.
16       Section 1304(3) addresses only the liability of the shipper and not the liability of other
17 parties. Many of the cases cited by defendants address only the imposition of liability on the shipper
18 without fault. See, e.g., Sea-Land Service, Inc. v. The Purdy Co., 1982 AMC 1593 (W.D. Wash.
19 1981) (concluding that carrier had failed to prove shipper's negligence in action for damages caused
20 by allegedly negligent packing of containers). The sole case that supports defendants' reading of
21 COGSA is Excel Shipping Corp. v. S.S. Seatrain Bunker Hill, 584 F. Supp. 734 (E.D.N.Y. 1984). In
22 Excel, the owner of a vessel sued Michelin Canada, the consignee, for damage to the vessel caused
23 by negligent stowage of the goods. The vessel owner argued that Michelin Canada, as consignee
24 named on the bill of lading, was bound by a provision in the bill of lading stating that "'the shipper,
25 the consignee and the goods, jointly and severally, shall be liable for, and shall indemnify [the time
26 charterer] and the ship against' damages caused by cargo tendered for carriage." Id. at 747. The
27 court rejected the imposition of liability on Michelin Canada as unenforceable under section 1304(3)
28

7

and held that any "potential recovery against Michelin Canada must be predicated on a showing of negligence on its part in the stowage and shipment of the goods." Id. at 748.  The Excel court appears to have adopted a broad reading of section 1304(3): no liability can be imposed on any party without a showing of negligence on its part.

The court declines to adopt the reasoning of Excel.  That holding is in tension with the plain language of COGSA section 1304(3) and the general principles of freedom of contract in admiralty. The plain meaning of the statute limits the liability of shippers. By its terms, section 1304(3) addresses shipper liability only and does not reach the liability of other parties: "The shipper shall not be responsible for loss or damage sustained by the carrier or the ship arising or resulting from any cause without the act, fault, or neglect of the shipper, his agents, or his servants." Therefore, section 1304(3) does not apply to contractual provisions governing the liability of parties other than the shipper.  The parties have presented no evidence that the drafters of COGSA intended to engraft a broad principle of no liability without fault onto the statute, and the court has found none.  The court declines to do what the drafters could have done themselves and did not. See Hishon v. King & Spalding, 467 U.S. 69, 77-78 (1984) (declining to read an exemption for partnerships into Title VII because "[w]hen Congress wanted to grant an employer complete immunity [into the text of a statute], it expressly did so.")  Accordingly, the liability rule of section 1304(3) applies only to those parties that meet the statutory definition of shipper.

Such a broad reading of section 1304(3) would also eviscerate the norm of freedom of contract and prohibit almost any form of indemnity in Bills of Lading.  The court is not persuaded that the drafters of COGSA intended such sweeping consequences.  In analyzing the reach of section 1303(8)'s liability rules for carriers, the Supreme Court noted that the "liability imposed on carriers under COGSA [section 1303] is defined by explicit standards of conduct, and it is designed to correct specific abuses by carriers." Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer, 515 U.S. 528, 534 (1995). In that case, the Court held that a forum selection clause—even one that imposed greater litigation costs on the shipper—did not violate COGSA's prohibition on limiting the carrier's liability because the forum selection clause did not lessen the carrier's liability.  Similarly, this court

refuses to interpret section 1304(3) more broadly than its text. In reaching the contrary conclusion, the Excel court relied solely on cases which addressed the imposition of liability on the shipper without proof of the shipper's negligence. See Serrano v. United States Lines Co., 238 F. Supp. 383, 388 (S.D.N.Y. 1965). Aside from these cases, the Excel court gave only one additional rationale for its holding: an imposition of liability on Michelin Canada would "creat[e] a greater scope of liability for a consignee having no active participation in the shipment of goods than for the shipper itself." 584 F. Supp. at 748. This form of liability shifting is typical of routine indemnification arrangements which occur as a matter of course in admiralty. See, e.g., American Stevedores, Inc., 330 U.S. at 456-59 (reviewing an indemnity provision in contract for stevedoring services); Nissho-Iwai Co., 617 F.2d at 907 (analyzing an indemnity provision in a time charter between shipowner and timer charterer governing liability for damaged cargo). Had the drafters of COGSA intended to eliminate the practice of indemnification in admiralty contracts generally, the text of COGSA would have specified such a principle. Because the text of section 1304(3) is limited to shipper liability, the court declines to extend its reach to the liability of parties other than the shipper.

The court does recognizes that there are some limits to the freedom of contract in admiralty beyond the court's reading of section 1304(3). In Prima U.S., Inc. v. Panalpina, Inc., 223 F.3d 126 (2d Cir. 2000), the Second Circuit addressed an issue analogous to the one presented here. In that case, a carrier filed an action against the owner of goods for damage to the vessel caused by improper loading of the goods; the owner of the goods, in turn, filed an action for indemnification against the freight forwarder, Panalpina. The district court found Panalpina liable in indemnity to the owner of the goods for damage to the vessel based on a contract between Panalpina and the owner of the goods. Based on a clause which required the freight forwarder to give "door to door . . . close care and supervision," the district court imputed the negligence of the stevedore to Panalpina and required Panalpina to indemnify the goods owner for the stevedore's negligence based on the contractual duty to supervise the stevedore. The Second Circuit reversed the district court. "[B]ecause of the well settled legal distinction between forwarders and carriers, that statement—mere puffing—cannot transform Panalpina into a carrier, and bestow liability upon it."

9

Id. at 129-30.  See also Bisso v. Inland Waterways Corp, 349 U.S. 85 (1955) (holding that a release from negligence clause in a towage contract violated public policy).  Panalpina is distinguishable from the case at bar. The Bill of Lading in the present dispute does not seek to impose the liabilities of a carrier on a non-carrier nor does it seek to do so on the basis of unclear language.  The Bill of Lading here merely requires the Merchant to indemnify the carrier for the negligence of the shipper.

Clause 13 would violate section 1304(3) only if it imposed liability on the shipper without the fault of the shipper.  Clause 13 imposes liability on those parties included in the Bill of Lading's definition of Merchant for the negligence of the Shipper in the Bill of Lading.  No definition of Shipper appears in Clause 1 (Definitions of the Bill of Lading).  On the face of the Bill of Lading, UKA is listed as the Shipper.  Under section 1304(3), any party which is a shipper cannot be held liable for the negligence of UKA.  The question is whether any of the parties included in the definition of Merchant are "shippers" under COGSA and thus protected by section 1304(3).  The definition of Merchant includes "the shipper, consignee, receiver, holder of the bill of lading, owner of the cargo or person entitled to the possession of the cargo or having a present or future interest in the goods and the servants and agents of these." Bill of Lading Cl.1. COGSA defines "shipper" to include "(A) a cargo owner; (B) the person for whose account the ocean transportation is provided; (C) the person to whom delivery is to be made; (D) a shippers' association; or (E) an ocean transportation intermediary, as defined in paragraph (17)(B) of this section, that accepts responsibility for payment of all charges applicable under the tariff or service contract." 46 U.S.C. §1702(21).  The court concludes that the Bill of Lading violates COGSA to the extent that any of the parties included in the definition of "Merchant" are shippers under COGSA. Therefore, pursuant to the court's interpretation of section 1304(3), any party that meets the COGSA definition of shipper cannot be held liable without proof of its own negligence.  None of the parties has alleged that UG and Kamdar are shippers under the statute, and it remains to be established at trial whether UG and Kamdar are Merchants according to the Bill of Lading.  However, plaintiff's submissions are sufficient to withstand summary judgment at this time.

10

Clause 13 does not impose liability on the shipper without fault. Instead, the clause imposes liability on parties other than the shipper, namely those included in the definition of Merchant for the shipper's negligence. APL concedes that it must prove negligence on the part of the shipper, UKA, in order to seek indemnification from UG and Kamdar. Pl.'s Opp. 5:15. As noted previously, It must also prove that UG and Kamdar meet the definition of Merchant.

In sum, Clause 13 does not violate sections 1303(8) and 1304(3) and is valid under COGSA.

B. <u>Clause 19</u>

Defendants offer similar arguments to support their contention that Clause 19 violates COGSA sections 1304(6) and 1304(3).

Clause 19 of the Bill of Lading addresses dangerous or hazardous goods. Pursuant to Clause 19, express written consent from the Carrier is required for any "[g]oods which are or may become inflammable, explosive, corrosive, noxious, hazardous, dangerous or damaging." Bill of Lading Cl. 19(i). Absent consent, the Carrier is entitled to dispose of these dangerous goods "without compensation to the Merchant and without prejudice to the Carrier's right to Freight." Bill of Lading Cl. 19(ii). Clause 19 also observes that regardless of the Merchant's knowledge about the "nature of the Goods, the Merchant *shall* indemnify the Carrier against all claims, losses, damages, liabilities or expenses arising in consequence of the Carriage of such Goods." Bill of Lading Clause 19(iv) (emphasis added). The parties have stipulated that the goods involved in this dispute, hair spray and air fresheners, are hazardous goods. Statement of Undisputed Facts (hereinafter "SUF") ¶ 15. APL claims that, according to Clause, 19 UG and Kamdar, as Merchants, must indemnify APL for the damages arising from the cleanup and disposal of the goods.

Defendants present the novel argument that the imposition of strict liability for hazardous goods on parties other than the shipper violates section 1304(3) and that, as a consequence, extending this liability to UG and Kamdar as Merchants violates that section. In the previous discussion of Clause 13, the court has rejected defendants' broad reading of section 1304(3), which

11

would prohibit the imposition of liability without fault. In Senator Linie, the Second Circuit rejected the exact argument that defendants make here. 291 F.3d at 157. After a careful analysis of the legislative history of COGSA, the court held that the specific rule governing shipper's liability for dangerous goods in section 1304(6) controls the general rule set forth in section 1304(3). Id. Bills of Lading can impose strict liability on shippers without violating section 1304(3). There is no support, then, for the prohibition of strict liability on parties other than the shipper. Thus, Clause 19 does not violate section 1304(3) of COGSA.

Defendants further argue that Clause 19 violates COGSA section 1304(6). Section 1304(6) renders the shipper "liable for all damages and expenses directly or indirectly arising out of or resulting from" the shipment of dangerous goods without the carrier's consent.[3] A plain reading of Clause 19(i) suggests that it does not violate section 1304(6) because Clause 19(i) imposes no additional liability on the shipper than does that allowed by section 1304(6). Clause 19(ii) further imposes an obligation on the Merchant "whether or not the merchant was aware of the nature of the goods . . . [to] indemnify the carrier against all claims, losses, damages, liabilities or expenses arising in consequence of the carriage of such goods." Bill of Lading cl. 19(ii). Defendants argue that this provision imposes strict liability on them in violation of section 1304(6). Since courts have upheld the imposition of strict liability for hazardous goods on the shipper as consistent with section 1304(6), there is no reason that parties who are Merchants within the definition of the Bill of Lading, which term includes shippers, may not be liable for indemnification. See, e.g., Senator Linie, 291 F.3d at 148 ("An examination of the plain meaning of the statute reveals that § 1304(6) sets forth a risk-allocating rule that renders a shipper strictly liable for damages in the event that neither the shipper nor the carrier knew or should have known that shipped goods were inherently dangerous.").

The court has found no cases to support the defendants' reading of section 1304(6) to prohibit the imposition of strict liability on parties other than the shipper; the parties have offered none. Reliance on the only case discussing the imposition of liability for the shipper's negligence on other parties, Excel Shipping, 584 F. Supp. at 734., is inappropriate in this context because the

12

dispute in Excel involved the shipment of goods that were not hazardous. However, in Senator Linie, the Second Circuit upheld the imposition of strict liability for hazardous goods on a party that was named as both consignee and notify party in the Bill of Lading and which the district court found to be a shipper. 291 F.3d at 150, n.5. Thus, the imposition of strict liability on parties other than the shipper is not improper. The court finds that the imposition of strict liability on defendants for the shipment of hazardous goods does not violate COGSA section 1304(6).

However, the Second Circuit has limited the holding of Senator Linie to situations in which neither the shipper nor the carrier knew of the inherently dangerous nature of the goods. See Contship Containerlines, Ltd. v. PPG Indus., 442 F.3d 74, 77 (2d Cir. 2006). Where a carrier knows that cargo "poses a danger and requires gingerly handling or stowage," it cannot invoke strict liability under section 1304(6). Id. Clause 19 can be read consistent with these principles. Therefore, to the extent that APL was on notice that the materials were hazardous, plaintiff may not be able to prevail on strict liability. Liability for the damage to the ship will depend upon "the particulars of what it and the shipper knew and their respective duties." Id. Whether or not APL had notice of the goods' hazardous nature is a factual issue to be determined at trial.

II.   Negligence Claims

Under federal maritime law, a tort action may not lie where the basis for liability arises from a contract between the parties. See International Ore & Fertilizer Corp. v. SGS Control Servs., 38 F.3d 1279, 1283 (2d Cir. 1994). In a case similar to the one at bar, the Second Circuit upheld the dismissal of a negligence claim brought by a shipper against a carrier for misrepresenting the condition of the ship, which resulted in damage to the shipper's cargo. Relying on East River Steamship Corp. v. Transamerica Delaval, 476 U.S. 858 (1986), the Second Circuit held that "any duty owed by [the carrier] to [the shipper] must be derived from the contract and that the negligent misrepresentation claim, which sounds in tort and entails a duty independent of the contract, should have been dismissed." Id. at 1284. In an action brought by a carrier against a shipper for delay and fumigation costs associated with insect infestation of the cargo, one court dismissed the carrier's tort claim where it was "almost identical" to the duties imposed by the contract between the parties and

13

claimed damages for economic loss.  Maersk Line Ltd. v. CARE, 271 F. Supp. 2d 818, 823 (D. Va. 2003).  In the present case, APL has alleged no additional duties owed other than those rooted in the Bill of Lading to support its negligence claim.  Plaintiff has offered no evidence that UG and Kamdar had an independent duty to warn APL of the hazardous nature of the goods or that they had an independent duty with respect to "shipping, stowing, describing, failing to describe or handle the goods." SAC ¶ 24.  Nor does plaintiff's opposition provide any facts supporting this contention; it addresses only the breach of warranty claim.  Therefore, the court concludes that plaintiff's negligence claim must fail as a matter of law.

III.     Evidentiary Objections

Defendants have filed separate evidentiary objections to three declarations and accompanying exhibits offered in support of plaintiff's opposition. The court has relied on none of the disputed evidence in reaching its conclusions.

CONCLUSION

For the foregoing reasons, the court hereby DENIES in part defendants' motion for summary judgment as to the breach of contract claims. The court GRANTS defendants' motion for summary judgment as to the negligence claims.

IT IS SO ORDERED.

Dated: September 27, 2006

MARILYN HALL PATEL
District Judge
United States District Court
Northern District of California

15

## **ENDNOTES**

1. Unless otherwise noted, all facts are taken from the second amended complaint (the "Complaint" or "SAC").

2. All statutory references are to COGSA.

3. Section 1304(6) reads in its entirety:

Inflammable, explosive or dangerous cargo. Goods of an inflammable, explosive, or dangerous nature to the shipment whereof the carrier, master or agent of the carrier, has not consented with knowledge of their nature and character, may at any time before discharge be landed at any place or destroyed or rendered innocuous by the carrier without compensation, and the shipper of such goods shall be liable for all damages and expenses directly or indirectly arising out of or resulting from such shipment. If any such goods shipped with such knowledge and consent shall become a danger to the ship or cargo, they may in like manner be landed at any place, or destroyed or rendered innocuous by the carrier without liability on the part of the carrier except to general average, if any.