UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APL CO. PTE. LTD., | |
|              Plaintiff, | No. C 05-00646 MHP |
|   v. | **ORDER** |
| UK AEROSOLS LTD., ET AL., | Motion for Summary Judgment |
|              Defendants. | |
| _____/ | |

On February 11, 2005 plaintiff APL Co. Pte. Ltd. ("APL") brought this breach of contract and negligence action against defendants UK Aerosols Ltd. ("UKA"), U.G. Co., Inc. ("UG"), and Kamdar Global, LLC ("Kamdar"). On February 28, 2006 plaintiff amended its complaint to add Imp-Ex Solutions, LLC ("Imp-Ex") as a co-defendant. On July 6, 2006 the court granted Imp-Ex's motion to dismiss and granted plaintiff leave to amend its complaint consistent with the court's order. On August 3, 2006, APL amended its complaint accordingly. Now before the court are cross-motions for summary judgment brought by APL and UG and Kamdar. The court has considered the parties' arguments fully, and for the reasons set forth below, the court rules as follows.

BACKGROUND[1]

Plaintiff APL is a Singapore corporation with its principal place of business in Singapore. APL is qualified to do business in California. Defendant UKA is an English company with its principal place of business in England. Defendant UG is a California company with its principal place of business in California. Defendant Kamdar is an Illinois limited liability company with its

principal place of business in California.

UKA sent a request to plaintiff APL requesting that APL send a cargo of 717,120 spray cans and 59,760 cartons of hair spray and mousse (the "goods") from Istanbul, Turkey to California. Pursuant to this request, on October 8, 2003, plaintiff issued its bill of lading APLU No. 800701216 (the "Bill of Lading") to govern the terms of the carriage. On November 23, 2003, after the goods arrived in California, APL discovered that the shipment was "leaking, dangerous and hazardous." SAC ¶ 19. Plaintiff spent approximately $700,000 in assessing, cleaning, removing and eventually destroying the goods.

Plaintiff is named as a "Carrier" in the Bill of Lading and plaintiff alleges that all defendants are "Merchants" within the meaning of the Bill of Lading. Merchant is defined as a "Shipper, Consignee, Receiver of the Bill of Lading, Owner of the cargo or Person entitled to the possession of the cargo or having a present or future interest in the Goods and the servants or agents of any of these." Bill of Lading Cl. 1(ii). Defendants UKA, UG and Kamdar have all accepted and endorsed the Bill of Lading.

It is undisputed[2] that at all relevant times Kamdar acted as a purchasing agent for importers or exporters of goods. Kamdar received purchase orders for the goods from UG and forwarded these purchase orders to UKA. Kamdar bought the goods from UKA pursuant to an agreement with UG and Imp-Ex. As part of this agreement, Kamdar procured banking services for merchandise that UG and Imp-Ex bought overseas. Kamdar also authorized UKA to ship the goods on behalf of UG and Kamdar. UG is in the business of importing and exporting goods. There is evidence that UG exercised some degree of control over the goods at issue here, as they instructed APL to reroute one container of goods while in transit. Two other containers of goods were delivered to UG and Imp-Ex in Southern California. UKA, for its part, issued invoices to Kamdar for shipment of the goods and loaded the goods into the shipping containers.

Plaintiff asserts that it has been harmed and is entitled to compensation because defendants were "negligent in shipping, stowing, describing, failing to describe or handling the Goods." SAC ¶ 24. Specifically, plaintiff alleges that defendants breached Clauses 9, 13 and 19 of the Bill of

Lading and are jointly and severally liable for all of plaintiff's damages and expenses incurred as a result of this breach. Pursuant to Clause 9 of the Bill of Lading, the Merchant must indemnify APL for losses caused by "any manner in which [a shipper-packed] Container has been filled, packed, stuffed or loaded; or [] the unsuitability of the Goods for carriage in the Container." Bill of Lading Cl. 9. Pursuant to Clause 13 of the Bill of Lading, the "Shipper warrants to the Carrier that the particulars relating to the Goods . . . have been checked by the Shipper . . . and that such particulars . . . are correct." Bill of Lading Cl. 13(i). Additionally, Clause 13 states that "the Merchant shall indemnify the Carrier against all loss, damage, liability and expenses arising or resulting from inaccuracies in or inadequacy of such particulars." Bill of Lading Cl. 13(ii).

Pursuant to Clause 19 of the Bill of Lading (entitled "Dangerous, Hazardous or Noxious Goods"), express written consent from the Carrier is required for any "[g]oods which are or may become inflammable, explosive, corrosive, noxious, hazardous, dangerous or damaging." Bill of Lading Cl. 19(i). Absent this consent, the Carrier is entitled to dispose of these dangerous goods "without compensation to the Merchant and without prejudice to the Carrier's right to Freight." Bill of Lading Cl. 19(ii). Clause 19 also observes that regardless of the Merchant's knowledge about the "nature of the Goods, the Merchant *shall* indemnify the Carrier against all claims, losses, damages, liabilities or expenses arising in consequence of the Carriage of such Goods." Bill of Lading Cl. 19(iv) (emphasis added).

On September 28, 2006 the court granted in part and denied in part UG's and Kamdar's motion for summary judgment on APL's breach of contract and negligence claim. In that order, the court held that the Bill of Lading violated the U.S. Carriage of Goods by Sea Act (COGSA), 46 U.S.C. § 1304(3)[3] to the extent that it imposed liability on any party that was a shipper under section 1304(3) without fault. It further held that Clause 19 might be void under COGSA sections 1304(6) if APL had knowledge of the hazardous nature of the goods.

Now, the parties have filed cross-motions for summary judgment. APL argues that UG and Kamdar are bound by the Bill of Lading and that UG and Kamdar breached Clause 9 and Clause 19 of its terms. Breach of Clause 9 is premised upon UG's and Kamdar's failure to properly

3

1 secure the goods, while breach of Clause 19 is premised upon the UG's and Kamdar's failure to
2 pack the goods so as to withstand the risk of carriage.  APL insists UG and Kamdar are bound to
3 indemnify it for all expenses it incurred as a result of these breaches.  UG and Kamdar argue that
4 Clauses 9 and 13 are void because Defendants fall within COGSA's definition of a shipper.
5 Defendants further argue that APL cannot recover under Clause 19 because it had knowledge of the
6 cargo's hazardous nature and character.

## LEGAL STANDARD

Summary judgment is proper when the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  Id.  The party moving for summary judgment bears the burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986).  On an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  Mere allegations or denials do not defeat a moving party's allegations.  Id.; Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 960 (9th Cir. 1994).  The court may not make credibility determinations, and inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the motion.  Masson v. New Yorker Magazine, 501 U.S. 496, 520 (1991); Anderson, 477 U.S. at 249.

The moving party may "move with or without supporting affidavits for a summary judgment in the party's favor upon all [claims] or any part thereof." Fed. R. Civ. P. 56(a).  "Supporting and

4

opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e).

DISCUSSION

UG and Kamdar ask the court for summary judgment. They argue that they are shippers under COGSA section 1304(3) and that the relevant clauses of the Bill of Lading are invalid as applied to them. They further argue that clause 19 is void under COGSA section 1304(6). APL asks the court to grant it summary judgment or, in the alternative, partial summary judgment on the issues of liability and damages. APL argues that the Bill of Lading is valid under COGSA because UG and Kamdar do not meet the statutory definition of shippers. It further argues that it has established that it is entitled to indemnification under the terms of the Bill of Lading. The court will first consider the threshold issue of whether UG and Kamdar are shippers under COGSA, and then it will consider whether UG and Kamdar have breached the relevant clauses of the Bill of Lading.

I.      Application of 1304(3) to UG and Kamdar

In its September 28, 2006 order ("Order"), the court held that the Bill of Lading violated COGSA section 1304(3) to the extent that any of the parties are shippers under COGSA. In its discussion of COGSA, the court assumed without deciding that UG and Kamdar were not shippers and noted that none of the parties had alleged that UG and Kamdar were shippers under section 1304(3). Order at 6,10. The parties now disagree as to what definition of "shipper" applies for the purposes of section 1304(3) and whether UG and Kamdar meet that definition. The court will consider each argument in turn.

Section 1304(3) provides that "the shipper shall not be responsible for loss or damage sustained by the carrier or the ship arising or resulting from any cause without the act, fault, or neglect of the shipper, his agents, or his servants." 46 U.S.C § 1304(3). While the provision itself does not define the term "shipper," courts have looked to the definition provided in a related statute,

5

the Shipping Act of 1984, 46 U.S.C. § 1702(21), for guidance. See <u>Senator Linie GMBH & Co. KG v. Sunway Line, Inc.</u>, 291 F.3d 145, 149 (2d Cir. 2002) ("Under COGSA, [a party] qualified as a shipper in its capacity as a NVOCC. 46 U.S.C. § 1702(17)(B) & (21)(E).")[4]; <u>All Pac. Trading v. Vessel M/V Hanjin Yosu</u>, 7 F.3d 1427, 1430 (9th Cir. 1993) (concluding, based on Shipping Act definition, that an NVOCC was a shipper for COGSA purposes). Indeed, the court referred to this definition of shipper in its previous order. Order at 10. As the court noted, section 1702(21) defines "shipper" to include a "(A) cargo owner; (B) the person for whose account the ocean transportation is provided; (C) the person to whom delivery is to be made; (D) a shipper's association <u>or</u> (E) an ocean transportation intermediary . . ." <u>Id.</u> (emphasis added) A close reading of this definition indicates that any one of the parties enumerated in section 1702(21) can be a shipper for COGSA purposes but it does not indicate that each of those parties must be a COGSA shipper. The Shipping Act definition sets the scope of which parties may be shippers under COGSA in certain contexts—such as determining whether an NVOCC is a shipper, but the federal common law of admiralty also informs the interpretation of the term shipper under COGSA.

In the context of interpreting bills of lading, the shipper is the party with some indicia of control over the transportation of the goods. Under the common law of admiralty, a shipper is generally the party that "enters into a contract of transportation with a carrier." UCC § 7-102; see also <u>Interpool, Ltd. v. Char Yigh Marine, S.A.</u>, 890 F.2d 1453, 1459 (9th Cir. 1989) ("In maritime commercial transactions, the Uniform Commercial Code is taken as indicative of the federal common law of admiralty."). Thus, under the common law of admiralty, a shipper is usually a party who enters into a contract with a carrier for transportation of goods. Under certain circumstances, such as the consideration of the legal status of NVOCCs, the court may also look to the Shipping Act definition or other definitions. See <u>Royal Exch. Ass. Co. of Am. M/V Hoegh Dene</u>, 1988 A.M.C. 868, 876-877 (W.D. Wa. 1987) (concluding that consignee was the shipper for COGSA purposes where it "controlled the shipping arrangements for the [goods] that it purchased."). This definition of shipper is consistent with the finding of other courts that NVOCCs, which make arrangements for the transportation of goods, were shippers for COGSA purposes. See, e.g., <u>All Pac.</u>

6

Trading v. Vessel M/V Hanjin Yosu, 7 F.3d 1427, 1430 (9th Cir. 1993). In this case, it is undisputed that the Bill of Lading in this case was issued to UKA as "Shipper" and that UKA entered into a contract for shipment of goods with APL. UG and Kamdar have presented no such evidence that they contracted with APL for shipment of the goods or otherwise controlled shipping arrangements. Accordingly, the court finds that UG and Kamdar are not shippers under COGSA and the Bill of Lading does not violate section 1304(3) as applied to UG and Kamdar.

## II.     Clause 9

To receive indemnity from UG and Kamdar, APL must show (1) that UG and Kamdar breached their obligations under Clause 9; (2) that UG and Kamdar have no defenses to this claim; (3) and that the damages are reasonable under the circumstances. Yang Ming Marine Transp. Corp. v. Okamoto Freighters Ltd., 259 F.3d 1086, 1090 (9th Cir. 2001).

### A.     Breach of Clause 9

Clause 9 of the Bill of Lading addresses the liability associated with damages caused by shipper-packed goods. It requires the Merchant to indemnify APL for losses caused by "any manner in which [a shipper-packed] Container has been filled, packed, stuffed or loaded; or [] the unsuitability of the Goods for carriage in the Container." Cl. 9. In this case, the Goods were shipper-packed, thus invoking the obligations of the Merchant to indemnify APL for any losses caused by the packing. APL has provided sufficient evidence, including the reports of TEC documenting the improper packing, to show that the packing was the cause of the leaking and the resulting damage. See Wetzel Decl. ¶¶ 10–16 & Ex. A (Report of TEC). APL has also shown that UG and Kamdar are Merchants within the definition provided in the Bill of Lading. APL has alleged that UG and Kamdar are owners of the goods, and the defendants have not disputed this assertion. Accordingly, UG and Kamdar, as Merchants, are obliged to indemnify APL for the damage.

7

B.  Defenses

UG and Kamdar have offered no defenses, aside from invalidity under section 1304(3), for their failure to indemnify APL. Defendants assert that APL must prove that it was not negligent pursuant to COGSA section 1303(8), which prohibits shifting of liability for carrier's own negligence. However, nothing in the language of the statute suggests that APL has the burden of proving that it was not negligent. Furthermore, there is no evidence before the court to suggest that APL was negligent in handling the Goods.

C.  Damages

Finally, the court must consider whether the damages claimed are reasonable. Yang-Ming, 259 F.3d at 1091–1095. APL contends that it sustained damages totaling $739,895.00 arising from the storage, clean-up and disposal of the Goods. Fearn Dec. ¶ 27. APL paid TEC $672,776.39 for unloading, inspection, clean-up and other services and Union Pacific Railroad $33,204 for the storage of the containers during the relevant period. Id. at ¶ 30. APL establishes that it took certain efforts to mitigate damages, including minimizing clean-up costs. Id. at ¶ 29. It also added a 5% service charge to the costs incurred for its efforts in managing the clean-up. Id. at ¶ 31.

UG and Kamdar argue that the Fearn Declaration is insufficient to establish the amount of damages because the declarant did not establish personal knowledge and foundation for the facts she alleges. As explained below in the section addressing evidentiary objections, the court finds that Haldis Fearn does state sufficient facts to establish her personal knowledge and foundation for the facts to which she attests. With respect to the damages APL alleges it incurred, Fearn's testimony as to her role and the scope of her duties indicates she acquired personal knowledge of such matters in the normal course of her employment. UG and Kamdar further object that Fearn's statements about the cleanup costs APL incurred, without APL submitting invoices to that effect, constitute inadmissible hearsay. Fearn is an officer of APL and has personal knowledge of the costs incurred in the cleanup. The court will accept these statements for the purposes of the motion. Before any award of damages plaintiff will need to submit the documents that back up Fearn's assertions.

8

1  Therefore her declaration cannot be hearsay for it is made directly to the court by APL.  Other than
2  these evidentiary objections, UG and Kamdar have offer no arguments as to the reasonableness of
3  these charges.  The court concludes that the damages claimed are reasonable.

In sum, the court GRANTS APL's motion for summary judgment as to the breach of Clause 9.

III.     Clause 13

Defendants UG and Kamdar have moved for summary judgment on the issue of Clause 13's validity under COGSA section 1304(3).  Plaintiff APL did not move for summary judgment on this issue.  Because the court held, above, that UG and Kamdar are not shippers under COGSA and that the Bill of Lading does not violate section 1304(3) as applied to UG and Kamdar, the defendants' motion for summary judgment on the issue of Clause 13's validity is DENIED.

IV.     Clause 19

In its previous order, the court held that Clause 19 violated section 1304(6) of COGSA to the extent that it imposes strict liability on the shipper when the carrier had knowledge of the goods' hazardous nature[5].  Order at 13.  As the Second Circuit has explained, COGSA allows strict liability to adhere when "neither the shipper nor the carrier appreciates that the cargo is inherently dangerous."  Senator Linie GMBH & Co. v. Sunway Line, 291 F.3d 145, 148 (2d Cir. 2002).  The court in Senator Linie imposed strict liability on a shipper who had contracted for the carriage of thiourea dioxide, a chemical which at the time of the shipment was generally unknown to be capable of spontaneous combustion.  Id. at 150.  The court later expanded on Senator Linie's fundamental principle in Contship Containerlines v. PPG Industries, 442 F.3d 74 (2d Cir. 2006).

In Contship, the court held that COGSA implicitly prohibits the imposition of strict liability on the shipper when the carrier "knows that a cargo poses a danger and requires gingerly handling or stowage, and nonetheless exposes the cargo to the general condition that triggers the known danger, regardless of whether the carrier is aware of the precise characteristics of the cargo."  Id. at 77.

9

Contship, taken in light of Senator Linie, illustrates the principle that when the carrier has knowledge of a cargo's inherently hazardous nature and significantly contributes to the accident, COGSA prohibits its recovering damages on a theory of strict liability. This court indicated as much in its previous order, where it held that "to the extent that APL was on notice that the materials were hazardous, plaintiff may not be able to prevail on strict liability. Liability for the damage [] will depend upon 'the particulars of what it and the shipper knew and their respective duties.'" Order at 13:12–15.

Defendants UG and Kamdar point to five statements in evidence that they argue indicate APL had knowledge of the nature and character of the hazardous cargo APL had agreed to transport. First, at the time the shipment was booked, APL assigned a tariff and charged based on the cargo's hazardous nature. Lavigne Dep. at 20:8–9. Second, APL received a Dangerous Goods Declaration from UKA prior to loading that identified the cargo as IMO class 2 dangerous goods. Fearn Dep. at 32:11–19. Third, APL notified Union Pacific about the dangerous nature of the shipment prior to tendering rail transit. Id. at 14:7–15:3. Fourth, APL issued a bill of lading with the correct IMO and UN codes for aerosols and flammable/combustible gas, accurately describing what was contained in the shipping containers. Id. at 39:22–40:3. Fifth, the containers, although improperly placarded, were nevertheless labeled "class 2" which APL personnel understood to mean IMO class 2 dangerous goods. Id. at 51:3–52:16. APL fails to provide the court with any contrary evidence on the issue of their knowledge of the dangerous nature and character of the cargo. The court therefore finds that APL possessed such knowledge.

While defendants have satisfied the court that APL had the requisite knowledge of the goods' hazardous nature, there is no evidence to demonstrate that APL "expose[d] the cargo to the general condition that trigger[ed] the known danger." Contship, 442 F.3d at 77. The only hint of questionable behavior on the part of APL is that its agents failed to turn away UG and Kamdar's unplacarded containers, as it is apparently required to do. See Fearn Dep. at 52:17–54:20 (noting lack of knowledge as to reason why unplacarded containers failed to be turned away in Turkey). But UG and Kamdar provide no evidence to suggest that APL somehow bore responsibility for the

10

harm caused by the dangerous cargo. Because Clause 19, under these circumstances, does not impose

strict liability on a shipper in spite of the carrier's own negligence, Clause 19 does not violate section 1304(6) of COGSA.

### A. Breach of Clause 19

Pursuant to Clause 19 of the Bill of Lading (entitled "Dangerous, Hazardous or Noxious Goods"), express written consent from the carrier is required for any "[g]oods which are or may become inflammable, explosive, corrosive, noxious, hazardous, dangerous, or damaging." Bill of Lading Cl.19(i). Absent this consent, the Carrier is entitled to dispose of these dangerous goods "without compensation to the Merchant and without prejudice to the Carrier's right to Freight." Bill of Lading Cl. 19(ii). The Merchants are obligated to "indemnify the Carrier against all claims, losses, damages, liabilities or expenses arising in consequence of the Carriage of such Goods." Bill of Lading Cl. 19(iv).

The parties agree that the goods are of a hazardous nature. Statement of Undisputed Facts, ¶ 15. Plaintiff APL argues that UG and Kamdar breached Clause 19 by failing to obtain APL's express written consent and by failing to indicate the nature of the goods in compliance with applicable law. In their Memorandum in Opposition, UG and Kamdar argue in their defense only that APL had notice of the goods' hazardous nature but not that APL expressly consented per the terms of Clause 19. As UG and Kamdar have failed to dispute, much less demonstrate, that they failed to acquire APL's express written consent, they are required to indemnify APL for the losses incurred.

### B. Defenses

As with their arguments respecting Clause 13, UG and Kamdar have offered no defenses, aside from the invalidity of Clause 19 under section 1304(6), for their failure to indemnify APL. APL has no burden of proving that it was non-negligent, and there is no evidence before the court to

11

suggest that APL was negligent in handling the goods.

### C. Damages

For the same reasons listed above with respect to Clause 13, the court concludes that the damages claimed are reasonable.

Therefore, the court GRANTS APL's motion for summary judgment on the breach of Clause 19 and DENIES UG and Kamdar's motion for summary judgment respecting the same.

## V. Evidentiary Issues

### A. Parties' Requests for Judicial Notice

The parties have submitted requests that the court take judicial notice of various facts and documents. Federal Rule of Evidence 201 permits the court to take judicial notice of facts that are not subject to reasonable dispute. APL asks that the court take judicial notice of certain documents, namely bills of lading issued by other carriers. UG and Kamdar have also filed requests for judicial notice. They ask the court to take judicial notice of certain admissions in APL's submission in connection with the instant motions as well as certain declarations and documents submitted in connection with the prior motion for summary judgment. The court need not reach this issue because it has not considered these admissions and documents in the evaluation of the parties' claims.

### B. APL's Objections to Defendant's Evidence

APL objects to two statements made in defendants' submissions on the grounds that they are "inadmissable because they are contradicted by the evidence and misstate the evidence." Pl's Obj. at 2. APL's objections are improper. The objectionable statements are simply characterizations of the evidence and not evidence themselves. Additionally, the court is unaware of any rule of evidence that would permit it to sustain APL's objections, and APL cites none.

12

Accordingly, APL's objections are OVERRULED.

C.  Defendant's Objections to APL's Evidence

UG and Kamdar object to the content of the declarations of Brenna Moorhead, Haldis Fearn, and Robert Wetzel. These objections will each be addressed in turn.

1.  Declaration of Brenna Moorhead

a.  Deposition Transcript of Kishor Kamdar

UG and Kamdar object that Moorhead has not authenticated the deposition transcript of Kishor Kamdar because the reporter's certification, the name of the deponent and the action are missing. As a result UG and Kamdar argue that the representations Moorhead makes in her declaration at ¶ 3(a),(b) and the declaration attachment Exhibit B are inadmissible. The court notes that the full deposition of Kishor Kamdar is in the record and bears the reporter's certification, the deponent's name and the name of the action. The deposition is sufficiently authenticated. This objection is therefore OVERRULED.

b.  Agreement for Payments

UG and Kamdar object that Moorhead has not authenticated the Agreement for Payments referenced in her declaration at ¶ 3(a) and attached to her declaration as Exhibit C. UG and Kamdar therefore argue these items are inadmissible under Fed. R. Evid. 901(b). Rule 901(b) permits authentication through several means, including the testimony of a witness with knowledge. Fed. R. Evid. 901(b)(1). In his deposition, Kishor Kamdar provides plentiful authentication testimony respecting the Agreement for Payments, his personal knowledge about the agreement and the parties to it, and his signature upon it. UG and Kamdar fail to point to any specific manner in which authentication fails. This objection is therefore OVERRULED.

c. <u>Deposition Transcript of Walid Jamil</u>

UG and Kamdar object that Moorhead has not authenticated the deposition transcript of Walid Jamil because the reporter's certification, the name of the deponent and the action are missing. As a result UG and Kamdar argue that the representations Moorhead makes in Declaration ¶ 3(a),(b) and Exhibit D are inadmissible. The court notes that the full deposition of Walid Jamil is in the record and bears the reporter's certification, the deponent's name the name of the action. The deposition is sufficiently authenticated. This objection is therefore OVERRULED.

d. <u>Bills of Lading Issued by Other Carriers</u>

UG and Kamdar object that the bills of lading issued by other carriers constitute inadmissible hearsay, lack foundation and are irrelevant. As explained above, the court has not considered these admissions and documents in the evaluation of the parties' claims and therefore need not reach these issues.

2. <u>Declaration of Haldis Fearn</u>

UG and Kamdar object that in her declaration, Haldis Fearn fails to state facts sufficient to establish her role in connection with the incident and that she has therefore failed to establish that she has personal knowledge of the events about which she attests. In paragraph 1, however, Fearn states that she is the Director of Hazardous Materials for APL, and in paragraph 3 she states that her job is to review shippers' declarations of dangerous goods involving incidents such as the one presently at issue. Given the nature of the facts which to which she later attests, this is sufficient to establish personal knowledge. The objection as to Fearn's personal knowledge is OVERRULED.

14

### 3. Declaration of Robert Wetzel

UG and Kamdar object that in his declaration, Robert Wetzel fails to state facts sufficient to establish that he has personal knowledge of the containers' placarding, lack of blocking or bracing and leakage, as he attests in paragraph 14. Wetzel states in paragraph 5, however, that he "participated in the assessment, clean up, disposal of, and reporting on" the incident. His attestation that he participated in each of these stages of the incident is sufficient to establish his personal knowledge as to the general condition of the containers on the scene. This objection is therefore OVERRULED.

CONCLUSION

APL's motion for summary judgment is GRANTED and concurrently defendants' motion for summary judgment is DENIED.

IT IS SO ORDERED.

Dated:   Feb. 22, 2007

_____

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

ENDNOTES

1. Unless otherwise noted, all facts are taken from the second amended complaint (the "Complaint" or "SAC").

2. All facts in this paragraph are taken from the joint statement of undisputed facts dated February 5, 2007 (the "Joint Statement").

3. Since the court issued that order, Title 46 of the U.S. Code has been recodified.  As of this order, however, COGSA remains uncodified.  See BENEDICT ON ADMIRALTY §16.01 (8th ed. 2006) at n.3. The court will employ the earlier citations for the purposes of referencing its previous order.  The parties correctly point out that the Shipping Act has been recodified at 46 U.S.C. §§ 40101 et seq.

4. In that case the Second Circuit relied upon the determination of the district court that certain parties were "shippers" purposes of sections 1304(3) and 1304(6) by reference to the definition of shipper presented in the Shipping Act.  See Insurance Co. of N. Am. v. M/V Tokyo Senator, 2001 U.S. Dist. LEXIS 2553 (S.D.N.Y. 2001).

5. Per the terms of COGSA section 1304(6), with respect to "[g]oods of an inflammable, explosive or dangerous nature," when the carrier "has not consented with knowledge of their nature and character [] the shipper of such goods shall be liable for all damages and expenses directly or indirectly arising out of or resulting from such shipment." 46 U.S.C.App. § 1304(6).