SHEPPARD MULLIN RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
CHARLES S. DONOVAN, Cal. Bar No. 103667
AMY B. NORRIS, Cal. Bar No. 201147
BRENNA E. MOORHEAD, Cal. Bar No. 233425
Four Embarcadero Center, 17th Floor
San Francisco, California  94111-4106
Telephone:    415-434-9100
Facsimile:    415-434-3947
Email:        cdonovan@sheppardmullin.com

Attorneys for Plaintiff APL Co. Pte. Ltd.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APL CO. PTE. LTD.,<br><br>                    Plaintiff,<br><br>       v.<br><br>UK AEROSOLS LTD.; U.G. CO., INC. doing business as "UNIVERSAL GROCERS CO."; KAMDAR GLOBAL LLC; and IMP-EX SOLUTIONS, LLC,<br><br>                    Defendants. | Case No. C 05-0646 MHP<br><br>**APL CO. PTE. LTD.'S NOTICE OF MOTION AND MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES**<br><br>Date:        August 27, 2007<br>Time:        2:00 p.m.<br>Courtroom:   15 |

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that at 2:00 p.m. on August 27, 2007, or as soon thereafter as counsel may be heard, in the Courtroom of the Honorable Marilyn Hall Patel, located at 450 Golden Gate Avenue, San Francisco, CA 94123, Plaintiff, APL Co. Pte. Ltd. ("APL") will and hereby does move the Court for an award of attorneys' fees.

This motion is made on the grounds that APL is the prevailing party in this litigation and is entitled to an award of attorneys' fees pursuant to the terms of the bill of lading.

This motion is based upon this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities and the Declarations of Charles S. Donovan and Amy B. Norris, the other pleadings and materials already on file in this matter, and upon such further argument and evidence as may be presented at the hearing of this motion.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**

**I.**

**STATEMENT OF FACTS**

As the Court is familiar with the facts of this case, APL only states those facts of particular significance to this motion and briefly summarizes the relevant procedural history.

APL is organized under the laws of Singapore.  UK Aerosols Ltd. ("UK Aerosols") is a company organized under the laws of England.  APL transported a shipment of hair spray, hair mousse and air freshener (the "Goods") from Istanbul, Turkey to Long Beach, California pursuant to bill of lading number APLU 800701216 ("Bill of Lading").  Clause 28 (a) of the Bill of Lading provides "in so far as anything has not been dealt with by the terms and conditions of this Bill of Lading, Singapore law shall apply.  Singapore law shall in any event apply in interpreting the terms and conditions hereof."

The Bill of Lading identifies U.G. Co., Inc. ("U.G.") and Kamdar Global LLC ("Kamdar") as "Notify Parties".  U.G. is a California corporation and Kamdar is an Illinois limited liability company.  APL was obliged to clean up the leaking Goods and dispose of them in a

hazardous waste disposal facility in Arkansas.  APL spent more than $739,895.91 cleaning up and disposing of the Goods.  UK Aerosols rejected APL's demands for APL payment of those costs.

On February 12, 2005, APL filed a complaint in this Court against U.K. Aerosols, U.G. and Kamdar in this Court, alleging that UK Aerosols, U.G. and Kamdar were jointly and severally liable under the Bill of Lading for failing to pack the Goods in compliance with applicable laws or in an adequate manner to withstand the risks of carriage; and for failing to obtain APL's consent to carry flammable goods.  On May 2, 2005, U.G. answered the complaint.  On September 16, 2005, Kamdar answered the complaint.  UK Aerosols never answered the complaint or appeared in the action.  On May 4, 2006, at APL's request, the Court entered UK Aerosols' default.

On February 28, 2006, APL filed an amended complaint joining Imp-Ex Solutions, LLC ("Imp-Ex") as a defendant on the basis that Imp-Ex was jointly and severally liable for breach of the Bill of Lading.  Imp-Ex filed a motion to dismiss.  APL opposed that motion.  On July 7, 2006, the Court granted the motion to dismiss but gave APL leave to amend its complaint.

On August 3, 2006, APL filed a second amended complaint.  Imp-Ex responded by filing a second motion to dismiss.  On July 17, 2006, U.G. and Kamdar filed a motion for summary judgment alleging that the Bill of Lading was void under COGSA.  On September 28, 2006, after hearing oral argument on all pending motions, the Court issued two orders, one denying Imp-Ex's motion to dismiss in part and granting the motion in part and the other denying U.G. and Kamdar's motion for summary judgment on all grounds but negligence.

On December 18, 2006, the parties participated in an early neutral evaluation.  Declaration of Amy B. Norris in Support of APL's Motion for Attorneys' Fees ("Norris Decl.") ¶ 6.  APL and Imp-Ex agreed to settle.  Id.  APL was unable to agree on settlement terms with U.G. or Kamdar.  Id.

On December 29, 2006, APL and U.G. and Kamdar filed cross motions for summary judgment.  The Court heard oral argument on those motion on February 5, 2007.  Following the hearing and at the Court's direction, APL continued to prepare for the trial scheduled to commence on March 7, 2007.  Norris Decl. ¶ 7.  APL engaged in the relevant meet

-2-

1  and confer sessions, prepared and filed motions in limine, exhibit and witness lists and a pre-trial
2  statement, and coordinated its witnesses for trial.  Id. at ¶ 8.  On or about February 23, 2007, this
3  Court granted summary judgment in favor of APL and denied U.G. and Kamdar's motion for
4  summary judgment.

5        On March 1, 2007, the parties participated in a conference before the Court.  Norris
6  Decl. ¶ 10.  As the Court had determined that U.G. and Kamdar were liable to APL, the parties
7  agreed to stipulate to an amount of damages and concluded there were no issues remaining for
8  trial.  Id.  On March 8, 2007, the parties filed their stipulation regarding damages.

9        APL prepared a proposed form of judgment and presented it to counsel for U.G.
10 and Kamdar.  Norris Decl. ¶ 11.  Counsel could not agree on the proper method for calculating
11 prejudgment interest.  Id.  On May 18, 2007, APL filed a motion for entry of judgment, asking the
12 Court to determine the proper rate of prejudgment interest.  On June 25, 2007, the Court issued an
13 order granting APL's motion for entry of judgment that approved APL's calculation of
14 prejudgment interest.

15       APL expended more than $641,000.00 in attorneys' fees and $34,235.00 00 in non-
16 taxable costs prosecuting this action against U.G. and Kamdar.  Declaration of Charles S.
17 Donovan in Support of APL's Motion for Attorneys' Fees ("Donovan Decl.") ¶ 12.  The services
18 performed on APL's behalf are described in detail in the Declaration of Amy B. Norris in Support
19 of APL's Motion for Attorneys' Fees.  The defendants' refusal to pay to clean up and dispose of the
20 Goods compelled APL to file this lawsuit.  Donovan Decl. at ¶ 13.  The services provided by
21 APL's lawyers were necessitated by the extensive law and motion practice and their refusal to
22 settle, despite APL's multiple attempts to do so.  Norris Decl. at ¶ 13.

23 **II.**
24 **ARGUMENT**
25 **A.  APL IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES.**
26       The Bill of Lading provides for the application of Singapore law.  Singapore
27 follows the so called "English Rule" with respect to attorneys' fees.  Singapore's Application of
28 English Law Act § 3 (1).  Under the English Rule, attorneys' fees are awarded to the prevailing

-3-

party. <u>Alyeska Pipeline Co. v. Wilderness Society</u>, 421 U.S. 240, 248 (1975). A district court applying the English Rule has discretion to award attorneys' fees to the prevailing party. <u>Karkar v. Citicorp</u>, 1994 U.S. App. LEXIS 29255 *7 (9th Cir. 1994). APL is the prevailing party in this dispute and is entitled to an award of attorneys' fees.

**1.    The choice of Singapore law should be enforced.**

"[W]here the parties specify in their contractual agreement which law will apply, admiralty courts will generally give effect to that choice." <u>Chan v. Society Expeditions, Inc.</u>, 123 F.3d 1287, 1296-1297 (9th Cir. 1997)(citations omitted).

In admiralty, contractual choice of law provisions are analyzed under the Restatement (Second) Conflict of Laws[1]. <u>Id.</u> at 1297. The principles governing a choice of law analysis appear in Restatement § 187. <u>Flores v. American Seafoods Co.</u>, 335 F.3d 904, 916 (9th Cir. 2003).

Section 187 (2) of the Restatement provides:

> the law of the state chosen by the parties to govern their contractual rights and duties will be applied … unless either
> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no reasonable basis for the parties' choice, or
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.[2]

Where a party is incorporated in the state designated by the contract as the forum state, subdivision (a) is of no import. <u>Ribbens Int'l, S.A. de C.V. v. Transport Int'l Pool, Inc.</u>, 47 F. Supp. 2d 1117, 1120 (C.D. Cal. 1999). Here, APL is organized under the laws of Singapore and

---

[1]    All references to the "Restatement" are to the Restatement (Second) Conflict of Laws.

[2]    Section 187(1) does not apply here. That subdivision is applicable where the contract provides that the law of a specified forum applies only to a particular issue in the contract. <u>Flores</u>, 335 F.3d at 917.

the Bill of Lading includes a Singapore choice of law. There is sufficient contact with Singapore to justify the Bill of Lading's choice of law.[3]

Restatement § 187 (2)(b) will only invalidate a choice of law where the chosen law undermines a fundamental public policy of a state with a materially greater interest in the dispute. Subdivision (b) is moot in this context because federal admiralty law does not have a fundamental public policy prohibiting awards of attorneys' fees and the United States does not have a materially greater interest than Singapore in the determination of the attorneys' fees question.

a. **Application of Singapore law will not violate a fundamental public policy of federal maritime law.**

To analyze the validity of the Singapore choice of law, the court must determine whether Singapore law would undermine a fundamental public policy of federal maritime law. Admiralty law follows the American rule with respect to attorneys' fees. Texas A&M Research Foundation v. Magna Transportation Inc., 338 F.3d 394, 405 (5th Cir. 2003). Under the American rule, attorneys' fees are typically awarded only if provided for statute or contract. Alyeska Pipeline Co. v. Wilderness Society, 421 U.S. 240, 257 (1975) citing Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 717 (1967). That rule is based upon the theories that the poor should not be discouraged from litigation and a party should not be penalized for defending itself. Fleischmann, 386 U.S. at 718.

The federal interests that underlie the attorneys' fees rule are not applicable to the circumstances of this case. An award of attorneys' fees in this case would not dissuade the poor from litigation. This case involves a contract negotiated between sophisticated international business people. Any rule flowing from this case would pertain only to parties engaged in complex international transactions, not indigent litigants. The federal aversion to penalizing

---

[3] Despite the Bill of Lading's designation of Singapore law, United States Carriage of Goods by Sea Act ("COGSA"), 46 app. U.S.C. § 1300 et seq., governed the dispute regarding the limitation of liability. COGSA applied of its own force because it governs all bills of lading covering goods shipped to or from ports of the United States. 46 app. U.S.C. § 1300. COGSA does not however nullify the Bill of Lading's choice of law. COGSA does not forbid selection of a foreign forum or choice of law. See Vimar Seguros y Reaseguros, S.A v. M/V SKY REEFER, 515 U.S. 528 (1995).

defendants for defending themselves is also not applicable here. Prior to the occurrence of any event giving rise to litigation, the parties agreed to application of Singapore law. The choice of Singapore law is not unilateral; it was not intended to penalize the defendants. Singapore law, including its rule regarding attorneys' fees, was chosen prior to performance under the Bill of Lading and applies with even force to all the parties. Singapore law was chosen to ensure predictability, not to penalize the defendants.

### b. **The United States does not have a materially greater interest in the determination of the attorneys' fees issue than Singapore.**

When a fundamental policy of a state is called into question, the court balances the state's interests with respect to the issue with the expectation of the parties as reflected by the choice of law. Restatement § 187 cmt. c. In balancing those interests, courts in this Circuit have recognized that it is sometimes appropriate to apply the law of a foreign state to the question of attorneys' fees. In Cutler v. Bank of America, 441 F. Supp. 863 (N.D. Cal. 1977), the court awarded attorneys' fees to the prevailing party under the English Rule because England's interest in compensating the victim of a bank theft in London outweighed California's interest in judicial administration and the regulation of its bar. In DeRoburt v. Gannett Co., Inc., 558 F. Supp. 1223 (D. Hi 1983), the court awarded attorneys' fees pursuant to the English Rule adopted by the nation of Nauru, because the application of Nauru law was consistent with the parties' expectations and Nauru's "scheme for tort compensation". DeRoburt, 558 F. Supp. at 1227. The court found that Hawaii's "interest in applying the American rule did not appear substantial under the circumstances." Id.

Cutler and DeRoburt both rely on the expectation of the parties to determine which state's law to apply. That is one of several factors Restatement § 188 suggests considering in the absence of an effective choice of law. Section 188 also suggests consideration of the place of contacting, the place of negotiation of the contract, the place of performance, the location of the subject matter for the contract, and the domicile, residence, nationality, place of incorporation and place of business of the parties. The Restatement's commentators state that those factors have less significance when the places of negotiation and performance, and the parties are located in

-6-

multiple states.  See Restatement § 188 cmt. b and cmt. e.  In the case of "multi-state" contracts, the Restatement's commentators acknowledge that choice of a legal scheme with which the parties are familiar, promotes predictability and confidence regarding contractual rights and duties. Restatement § 187 cmt. f.

Each of the parties to the Bill of Lading is organized and operates out of a different locale.  APL is organized under the laws of Singapore and operates all over the world; UK Aerosols was organized under the laws of England and operated out of London; Kamdar is organized in Illinois and operates out of Chicago; and U.G. was organized in California and operated out of San Diego.  UK Aerosols contacted APL's agent in Turkey and arranged for the transportation of the Goods.  APL's agent in Turkey sent the Bill of Lading to UK Aerosols in England.  Kamdar and U.G. subsequently received and endorsed the Bill of Lading.  APL transported the Goods from Turkey to Long Beach, via Italy and Houston.  The packing of the Goods which caused the leak and APL's damages took place in Turkey.

Here, analysis of § 188's factors would provide no clear answer as to which state's law to apply because the parties and the subject matter were located in multiple jurisdictions.  In circumstances such as these, the expectations of the parties, as expressed by their choice of law, is the most salient factor.  That choice of law provides a measure of predictability.  See DeRoburt, 558 F.Supp. at 1227 and Restatement § 188 cmt. b and cmt. e.  Multi-state transactions, like this one, have unpredictable consequences.  The designation of Singapore law before any dispute arose ensured predictability and allowed the parties to negotiate based on established contractual rights and duties.

The Court must weigh the federal interests against the interests of Singapore.  The federal interest in resolution of the attorneys' fees question in this case would be enforcement of the American rule.  As discussed above, the policies underlying that rule are not relevant to this dispute.  The parties to this dispute agreed to the application of Singapore law before the dispute arose.  Singapore has an interest in application of the laws to this dispute because one of its citizens sought the protections of its laws and provided advance notice to the other parties to the

-7-

1  contract that Singapore law would govern.  In addition, Singapore would wish to ensure its
2  citizens are made whole for losses suffered abroad.

3  **2.    The Court should enforce Singapore's rules regarding attorneys' fees.**

4  "A federal court sitting in diversity applies the law of the forum state regarding an
5  award of attorneys' fees."  <u>Kona Enterprises, Inc. v. Estate of Bishop</u>, 229 F.3d 877, 883 (9th Cir.
6  2000).

7  Although the basis of the Court's jurisdiction over this action is maritime law, the
8  action involves breach of a Bill of Lading governed by Singapore law.  Parties who conduct
9  business in a particular forum, expect to be subject to the laws of that forum.  Likewise, the parties
10 to the Bill of Lading agreed to be subject to Singapore law.  For that reason, the result here should
11 be no different than if the Court were sitting in diversity.  The Court should apply Singapore's law
12 to the question of attorneys' fees.

13 **B.    APL'S FEES ARE REASONABLE.**

14 The Court has the discretion to make an award of attorneys' fees under the English
15 Rule.  <u>Karkar</u>, 1994 U.S. App. LEXIS 29255 at *7.  As the prevailing party, APL is entitled to an
16 award of attorneys' fees under the English Rule.  The starting point of the attorney's fees
17 calculation is the "lodestar" method, under which fees are determined by multiplying the number
18 of hours reasonably expended on the litigation by a reasonable hourly rate.  <u>Burlington v. Dague</u>,
19 505 U.S. 557, 562 (1992).  "There is a strong presumption that the lodestar represents the
20 'reasonable' fee" (<u>Dague</u>, 505 U.S. at 562*)*, but in order to determine reasonableness, the Ninth
21 Circuit also requires consideration of the factors set forth in <u>Kerr v. Screen Extras Guild, Inc.</u>, 526
22 F.2d 67 (9th Cir. 1975).  <u>Tutor-Saliba Corp. v. Hailey</u>, 452 F.3d 1055, 1064-1065 (9th Cir. 2006).
23 The <u>Kerr</u> factors include the time and labor required, the novelty and difficulty of the questions
24 involved, the skill required, preclusion of other employment by the attorney, relevant time
25 limitations, results obtained, experience, reputation and ability of the attorneys, and the customary
26 fee.  <u>Kerr</u>, 526 F.2d at 70.

-8-

**1.   Results**

APL was awarded $ 739,895.91 in damages.  That is the full amount of the costs incurred in cleaning up and disposing of the Goods.  In addition, APL was awarded prejudgment interest from the date UK Aerosols refused to reimburse APL for the costs of clean up and disposal.  That is the computation of prejudgment interest proposed by APL.  APL successfully opposed two motions for summary judgment and brought its own motion for summary judgment before this Court.  APL received the desired result.

**2.   Novelty and Difficulty of the Questions**

As the Court well knows, this dispute involved novel legal issues that required extensive legal research and law and motion practice.  That is demonstrated by the fact that APL's lead counsel who has more than thirty years of experience in maritime law had not previously encountered the questions posed by this action.

**3.   Required Skill/Experience, Reputation and Ability of Attorneys**

The issues raised in this dispute were complex and required extensive knowledge of admiralty law.  APL's lead attorney has more than thirty (30) years of experience in that field.  Many of the issues were novel to APL's counsel despite their extensive experience in maritime law.  The issues required legislative history research, research of foreign law and research of environmental regulations

The significance of this dispute was heightened by the fact that an adverse outcome would have effected not only the disputed shipment, but all goods shipped by APL under its bill of lading.  In addition an adverse outcome would have negatively impacted other major ocean cargo carriers, who ship goods under similar bill of lading provisions; and changed the distribution of liabilities and the equities in the area of ocean cargo shipping.

**4.   Customary Fee**

"The prevailing market rate is indicative of a reasonable hourly rate."  <u>Jordan v. Multnomah County</u>, 815 F.2d 1258, 1262 (9th Cir. 1987) (citations omitted).

The rates charged by APL's attorneys are in line with the customary rates in the San Francisco legal market in which this case was litigated.  APL's attorneys set their rates after

canvassing the marketplace and assessing what competitors charge for lawyers of comparable experience and stature. The rates of APL's counsel are reasonable as they are in line with the prevailing market rate.

### 5. Time and Labor

The standard for the number of hours considered in computing an attorneys' fees award is "the number of hours that 'reasonably competent counsel' would have billed." <u>Baerthlein v Electronic Data Systems Corp.</u>, 2005 WL 88381 *3 (N.D. Cal. 2005), quoting <u>Yahoo!, Inc. v. Net Games, Inc.</u>, 329 F. Supp. 2d 1179, 1182 (N.D. Cal. 2004).

APL's counsel has significant experience in the field of maritime law. The issues presented by this dispute were novel and required substantial efforts on the part of APL's counsel. In addition, the case was hard fought with the parties engaging in significant law and motion practice and making three motions for summary judgment and multiple post-judgment motions. The litigation posed unusual legal issues and required thorough research and careful drafting. In light of the novel nature of the issues presented and the zeal with which counsel pursued the proceedings, APL's attorneys spent a reasonable number of hours litigating the case.

## III.
## CONCLUSION

The Court should grant APL's attorney's fees and costs in the amount of $675,235.00.

Dated: July 9, 2007

SHEPPARD MULLIN RICHTER & HAMPTON LLP

By       /s/ Amy B. Norris
          AMY B. NORRIS
   Attorneys for APL Co. Pte. Ltd.

-10-