1  Norman J. Ronneberg, Jr., SBN 68233
   E-mail: norman.ronneberg@bullivant.com
2  Marilyn Raia, SBN 072320
   E-mail: marilyn.raia@bullivant.com
3  BULLIVANT HOUSER BAILEY PC
   601 California Street, Suite 1800
4  San Francisco, California 94108
   Telephone: 415.352.2700
5  Facsimile: 415.352.2701

6  Attorneys for Defendants
   U.G. Co., Inc. dba Universal Grocers and
7  Kamdar Global, LLC and Intervenor Valley
   Forge Insurance Company

8                  UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11

12  APL CO. PTE. LTD.,                      Case No.: C 05-0646 MHP

13                 Plaintiff,               **DEFENDANTS' OPPOSITION TO**
                                            **PLAINTIFF'S MOTION FOR**
14       vs.                                **ATTORNEYS FEES UNDER**
                                            **SINGAPORE LAW**
15  U.K. AEROSOLS LTD., U.G. CO. INC., doing
    business as UNIVERSAL GROCERS CO., and
16  KAMDAR GLOBAL, LLC,

17                 Defendants.

18

19

20

21

22

23

24

25

26

27

28

6082640.1

1

## TABLE OF CONTENTS

2

I. INTRODUCTION ............................................................................................................. 1

II. LEGAL ARGUMENTS ................................................................................................... 1

   A. Under The United States Law Of Admiralty, Attorneys Fees Are, Except In Unusual Circumstances, Never Awarded ..................................................................... 1

   B. The Purported Singapore Choice Of Law Clause Is Superseded By Other Clauses Of The APL Bill Of Lading, As Well As The Plaintiff's Own Admissions ................................................................................................................. 2

      1. The Clause Paramount ........................................................................................ 2

      2. The "Laws of the United States" Provision ...................................................... 3

   C. If Singapore Law Is Applied To One Part Of This Contractual Dispute, When The Rest Of The Dispute Has Been Governed By COGSA, The Supreme Court's Mandate To Apply A Single Body Of Law To A Maritime Transaction Would Be Violated ................................................................................. 3

   D. The Three Separate Choice of Law Clauses are Contradictory and Ambiguous, and Must Therefore Be Construed Against APL ...................................... 4

   E. APL Has Failed To Provide The Court With The Type Of Evidence Needed To Establish The Applicability Of Singapore Law ....................................................... 5

   F. Plaintiff Has Failed To Comply With Rule 44.1 F.R.C.P. And Is Therefore Not Entitled To Assert Any Rights Under Singapore Law ........................................... 6

   G. At This Late Date, APL Should be Judicially Estopped From Claiming Attorneys Fees Under Singapore Law .......................................................................... 7

   H. APL is Seeking Attorneys Fees Which Are Not Granted By The Bill Of Lading 8

   I. Even If Singapore Law Did Apply And Provide For An Award Of Attorneys Fees Under The Circumstances Of This Case, Apl Has Failed To Properly Support Its Attorneys Fees Claim. ............................................................................... 9

      1. APL has failed to establish that the hourly rate is "reasonable." ................... 9

      2. APL has failed to establish that the hours expended were reasonable .......... 10

III. CONCLUSION ............................................................................................................. 11

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TABLE OF AUTHORITIES

## CASES

*All Pacific Trading Inc. v. Vessel M/V Hanjin Yosu* (9th Cir. 1993)
    7 F.3d 1427.................................................................................................................... 4

*Allied Chem. Intern. Corp. v. Compania in de Navegacao Lloyd* (2nd Cir. 1985)
    775 F.2d 476...................................................................................................................... 4

*Altadis USA Inc v. Sea-Star Line* (11th Cir. 2006)
    458 F.3d, 1288.................................................................................................................. 4

*American Home Assurance Co. v. TGL Container Lines, Ltd.* (N.D. Cal. 2004)
    347 F.Supp.2d 749 .......................................................................................................... 8

*Chan v. Society Expeditions, Inc.* (9th Cir. 1997)
    123 F.3d 1287.................................................................................................................. 4

*DP Aviation v. Smiths Industries Aerospace and Defense Systems* (9th Cir. 2001)
    268 F.3d 829............................................................................................................... 6, 7

*East River SS Co. v. Transamerica Delaval, Inc.* (1986)
    476 U.S. 858.................................................................................................................... 1

*Government of Virgin Islands v. Paniagua* (3rd Cir. 1990)
    922 F.2d 178.................................................................................................................... 7

*Hensley v. Eckerhart* (1983)
    461 U.S. 424............................................................................................................... 9, 10

*Jordan v. Multnomah County* (9th Cir. 1987)
    815 F.2d 1258.................................................................................................................. 9

*Julian-Ocampo v. Air Ambulance Network Inc.* (D. OR 2001)
    2001 US Dist. LEXIS 22173............................................................................................ 8

*Kossick v. United Fruit Co.* (1961)
    365 US 731...................................................................................................................... 4

*Mastrobuono v. Shearson Lehman Hutton, Inc.* (1995)
    514 US 52........................................................................................................................ 4

*Norfolk Southern RR Co. v. Kirby* (2004)
    543 U.S. 14................................................................................................................... 3, 4

*Noritake Co., Inc. v. M/V Hellenic Champion* (5th Cir. 1980)
    627 F.2d 724................................................................................................................. 2, 3

*Post Office v. Norwich Union* [1967]
    2QB 18363 ...................................................................................................................... 5

*San Rafael Compania Naviera, S.A. v. American  Smelting & Refining Co.* (9th Cir.
    1964)
    327 F.2d 581.................................................................................................................... 6

OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS FEES UNDER SINGAPORE LAW

*Sealy, Incorporated v. Easy Living, Inc.* (9th Cir. 1984)
    743 F.2d 1378................................................................................ 9, 10, 11

*Shonac Corp. v. AMKO Int'l. Inc.* (S.D. OH 1991)
    763 F.Supp. 919 .................................................................................... 6

*Sompo Japan Ins. Co. of America v. Union Pac. RR Co.* (2nd Cir. 2006)
    456 F.3d 54.......................................................................................... 4

*Sosebee v. Rath* (3rd Cir. 1990)
    893 F.2d 54.......................................................................................... 2

*Southern Pacific Co. v. Jensen* (1917)
    244 U.S. 205........................................................................................ 3

*The Garden City*, [1982]
    2 Lloyds Reg. 282 ................................................................................ 5

*Yanez v. United States* (9th Cir. 1993)
    989 F.2d 323........................................................................................ 8

**RULES**

F.R.C.P. Rule 9(h) .......................................................................................... 1

F.R.C.P. Rule 44.1.................................................................................... 5, 6, 7

F.R.C.P. Rule 54 .......................................................................................... 1

**OTHER AUTHORITIES**

*Advisory Committee's Note* 39 FRD 61, 118 (1966) ...................................... 6

I. Schoenbaum, *Admiralty and Maritime Law*, section 10-11 at 51 (4th ed 2004) ......................... 2

*The Patrick O/Brian Newsletter*, Vol. 1, Issue 1, (August 1992) ..................... 5

**REGULATIONS**

28 U.S.C. 1333 ............................................................................................. 1

46 U.S.C. App. § 1312 ("COGSA") ......................................... 1, 2, 3, 5, 7, 8

46 U.S.C. App. 1300 ................................................................................... 8

OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS FEES UNDER SINGAPORE LAW

# I. INTRODUCTION

After two and one half years of litigation,[1] and multiple rulings by this court applying the United States Carriage of Goods by Sea Act[2] to plaintiff's claim, plaintiff APL suddenly – and without prior notice that foreign law will be asserted with regard to attorneys fees - - - asserts a claim for $675,000 under Singapore law.  For the reasons set forth below, defendants respectfully ask this court to reject plaintiff's tardy and contractually void plea for a recovery under foreign law.

Plaintiff's motion for attorneys fees (presumably under F.R.C.P. Rule 54 ) is based upon the APL bill of lading's alleged Singapore "choice of law" provision.  Singapore law, unlike the "American Rule," purportedly allows the prevailing party in litigation to recover its attorneys fees.  Plaintiff has not, however, provided defendants or the court with any evidentiary support for its motion, or proof as to how Singapore courts would apply Singapore's substantive law or choice of law principles to this dispute.  Moreover, even assuming attorneys fees might be awarded, the amount demanded is grossly inflated, and out of step with fees charged by other maritime lawyers in San Francisco.

# II. LEGAL ARGUMENTS

## A.   Under The United States Law Of Admiralty, Attorneys Fees Are, Except In Unusual Circumstances, Never Awarded

Plaintiff's complaint clearly stated that this is an admiralty and maritime claim under 28 U.S.C. 1333, and Rule 9(h) of the Federal Rules of Civil Procedure.  With admiralty jurisdiction comes the application of the substantive federal maritime law.  East River SS Co. v. Transamerica Delaval, Inc., 476 U.S. 858, 862, 866 (1986).  Under the law of admiralty, the prevailing party is generally not entitled to an award of attorneys fees, unless a federal statute specifically authorizes such an award.  Noritake Co., Inc. v. M/V Hellenic Champion, 627 F.2d

---

[1] The complaint herein was filed on February 11, 2005.

[2] The Carriage of Goods by Sea Act ("COGSA") was until recently found at 46 U.S.C.App. § 1300, et seq.  Nearly all decisional references to the statute notes this earlier citation format.  In October 2006, Congress continued its recodification of Title 46 and has "temporarily" placed COGSA as an appendix to 46 U.S.C.A § 30701.  For ease of reference, however, we will continue to refer to the earlier citation location, i.e., 46 U.S.C. App. § 1312.

– 1 –

6082640.1

1   724, 730 (5th Cir. 1980).  See also, <u>Sosebee v. Rath</u>, 893 F.2d 54 (3rd Cir. 1990) and <u>Tai Pan Inc.</u>

2   <u>v. Keith Marine</u>, 1997 A.M.C. 2447 (M.D. FL 1997).  In <u>Noritake</u> – as in our case – plaintiff

3   asserted its legal rights under the Carriage of Goods by Sea Act.  The Fifth Circuit disallowed

4   attorneys fees on the grounds that COGSA does not provide statutory authority for attorneys

5   fees.  Because plaintiff's case herein was asserted and <u>decided</u> under the governing authority of

6   COGSA, and COGSA provides no statutory authority for the award of attorneys fees, plaintiff

7   has no right to recover attorneys fees herein.

8   **B.   <u>The Purported Singapore Choice Of Law Clause Is Superseded By Other Clauses</u>**
        **<u>Of The APL Bill Of Lading, As Well As The Plaintiff's Own Admissions</u>**
9

10      Section 28(I) of the APL Bill of Lading[3] provides that:  <u>"Insofar as anything has not</u>

11   <u>been dealt with by the terms and conditions of the bill of lading</u>, Singapore law shall apply...."

12   (Emphasis added.)

13      However, the APL bill of lading <u>has</u> otherwise "dealt with" the choice of law issue in

14   two other sections of the contract.

15      **1.   The Clause Paramount**

16      In the bill of lading's "Clause Paramount" (Section 6), the provisions of US COGSA"

17   (i.e., the American Carriage of Goods by Sea Act) "<u>shall</u> apply to all shipments to or from the

18   United States whether compulsorily applicable or not."  Indeed, APL has itself told the court

19   that US COGSA, not Singapore law, governed the instant foreign transit dispute.  See APL's

20   reply brief of January 22, 2007:  "The parties agree that COGSA governs the bill of lading."

21   See also, this court's order of September 28, 2006:  "The parties agree that the bill of lading is

22   governed by COGSA."  As a matter of maritime law, "the function of the Clause Paramount" is

23   to specify the laws to be applied in the contract of carriage.  I. Schoenbaum, <u>Admiralty and</u>

24   <u>Maritime Law</u>, section 10-11 at 51 (4th ed 2004).

25

26

27   _____

28   [3] A copy of the pertinent bill of lading is attached hereto as Exhibit A.  A true and correct copy
     of the APL bill of lading was proffered by APL as Exhibit A to the declaration of Diane Terrien
     filed with this court on July 31, 2006.

– 2 –

6082640.1

1    Given the representations and the late date of plaintiff's demand for foreign law with

2 regard to attorneys fees, it is clear that American law (including the American Rule of attorneys

3 fees), rather than Singapore law, should govern the entire case.

4    **2.    The "Laws of the United States" Provision**

5    Section 28(III) permits a "merchant" (which this court found defendants to be) to refer a

6 dispute to the U.S. District Court for the Southern District of New York "in accordance with the

7 laws of the United States." The mere fact that APL chose to sue first in the present forum

8 should not be allowed to prevent defendants from having the same U.S. law applied here, as

9 would have applied in New York's federal court, i.e., "the laws of the United States." To do

10 otherwise would encourage forum shopping and contradict the Supreme Court's mandate that

11 maritime law should be uniform throughout the United States. See, e.g., <u>Southern Pacific Co. v.</u>

12 <u>Jensen</u>, 244 U.S. 205, 216 (1917).

13   **C.    If Singapore Law Is Applied To One Part Of This Contractual Dispute, When The
         Rest Of The Dispute Has Been Governed By COGSA, The Supreme Court's**

14       **Mandate To Apply A Single Body Of Law To A Maritime Transaction Would Be
         Violated**

15

16    After successfully using the American COGSA as the vehicle for demanding substantial

17 damages from defendants, APL now does an "about face" and seeks to use the law of Singapore

18 (undefined and unexplained) to obtain yet more compensation from defendants in the form of

19 attorneys fees – a remedy which APL would be denied under both COGSA and American

20 maritime law. See <u>Noritake</u>, supra, at 730. Plaintiff is thereby asking the court to apply two

21 different legal regimes to one maritime contract, a tactic which was recently denounced by the

22 U.S. Supreme Court in <u>Norfolk Southern RR Co. v. Kirby</u>, 543 U.S. 14, 23 (2004) [hereinafter

23 <u>Kirby</u>].

24    In <u>Kirby</u>, the court reaffirmed that a bill of lading issued by an ocean-going vessel is a

25 maritime contract to which <u>federal</u> law applies. (<u>Id.</u>) The court further found that federal law

26 applies to both the sea and land components of a through bill of lading, and stressed that a single

27 body of law should be used to construe a bill of lading in order to assure maritime uniformity.[4]

28 _____

[4] Although <u>Kirby</u> found that State Law must give way to Federal Law in the interests of
maritime uniformity and predictability, its principle has been followed in other contexts, i.e. a
Federal Maritime Statute takes precedence over a Federal non-Maritime body of law to make

6082640.1

1   (Id. at 29), citing and following its earlier opinion in Kossick v. United Fruit Co., 365 US 731

2   (1961): ["As we said in Kossick, when a maritime contract…may well have been made

3   anywhere in the world, it should be judged by one law wherever it was made."]  (Cites and

4   interior quotes omitted.)  See also, Sompo Japan Ins. Co. of America v. Union Pac. RR Co., 456

5   F.3d 54, 74, maritime commerce would be subject to confusion and inefficiency if more than

6   one body of law governs a maritime contract's construction.

7   **D.      The Three Separate Choice of Law Clauses are Contradictory and Ambiguous, and**
        **Must Therefore Be Construed Against APL**

8
9          Maritime law has long held that any ambiguity in a bill of lading is to be construed

10  against the carrier.  Allied Chem. Intern. Corp. v. Compania in de Navegacao Lloyd, 775 F.2d

11  476, 486 (2nd Cir. 1985).  See also, All Pacific Trading Inc. v. Vessel M/V Hanjin Yosu, 7 F.3d

12  1427, 1431 (9th Cir. 1993) [bills of lading are contracts of adhesion, usually drafted by the

13  carrier and therefore strictly construed against the carrier].

14         APL's bill of lading contains at least three confusing and competing choices of law:

15  Paragraph 6, 28(I) and 28(III).  Under these circumstances, APL should not be able to ambush

16  defendants by suddenly seeking the benefit of an ambiguous "fallback" choice of law provision,

17  when it has previously sought benefits from the same contract under U.S. law.  See, e.g.,

18  Mastrobuono v. Shearson Lehman Hutton, Inc., 514 US 52, 62-63 (1995), in which the Supreme

19  Court ruled against the draftsman of contradictory choice of law clauses because the party

20  "drafted an ambiguous document, and they cannot now claim the benefit of the doubt.  The

21  reason for this rule is to protect the party who did not choose the language from an unintended

22  or unfair result."  See also Chan v. Society Expeditions, Inc., 123 F.3d 1287, 1296, (9th Cir.

23  1997) where the Ninth Circuit acknowledged a generalized policy in favor of choice of law

24  clauses, but recognized that competing choice of law clauses create an ambiguity, which must

25  be interpreted against the party who drafted the clauses.  The Ninth Circuit followed

26  Mestrobuano, supra, granting the non-drafting party the "benefit of the doubt" with regard to

27

28  sure only one legal regime applies to the maritime contract. See Altadis USA Inc v. Sea-Star
    Line, 458 F.3d, 1288, 1294 (11th Cir. 2006).

                                              – 4 –
    6082640.1

1  choice of law. The same thing should be done here and United States law should apply to any

2  attorneys fees disputes.

3      APL is attempting to pick and choose its laws, claiming the benefits of American law (a

4  right to indemnification under COGSA), but disregarding its burdens (the American rule of

5  attorneys fees). As British civil and admiralty courts have long stated, when a person is

6  claiming the benefit of a contract: "You cannot pick out the plums and leave the duff behind."[5]

7  Post Office v. Norwich Union [1967] 2QB 18363. See also The Garden City, [1982] 2 Lloyds

8  Reg. 282. A person suing under a contract should not have the right to "pick and choose" the

9  terms he or she wishes to rely upon.

10 **E.    APL Has Failed To Provide The Court With The Type Of Evidence Needed To**
        **Establish The Applicability Of Singapore Law**

11

12     Plaintiff makes the bold assertion that Singapore law permits the awarding of almost

13 $700,000 in attorneys fees, but fails to provide any evidence whatsoever as to the contents of

14 Singapore law. What statutes or case precedent permits the award of attorneys fees? Does it

15 apply to admiralty cases, when the damage arises in another country? What are its rules of

16 "renvoi"? Does Singapore law grant attorneys fees only as "costs"? Only for indemnification

17 of third party litigation expenses or both? Clearly, contrary to the requirements of F.R.C.P.

18 Rule 44.1, plaintiff has given the court none of the "relevant materials" required by the rule.

19     A court may choose to ascertain the relevant foreign law on its own, when a party has

20 failed to do so. However, this is not a particularly good use of judicial resources. Instead, the

21 "basic mode of proving foreign law" in the federal courts is by means of "expert testimony

22 accompanied by extracts from foreign legal materials." Honshu Shipping Co., Ltd. v. M/V

23 TRADE SALE, 2005 A.M.C. 1323, 1328 (N.D. CA 2005) and cases cited therein. Plaintiff has

24 utterly failed to do this. Given this dereliction, the court should find the applicable law to be

25 that of the forum, i.e., the law of admiralty, San Rafael Compania Naviera, S.A. v. American

26

27

28 _____

[5] A "plum duff" is a type of doughy, plum pudding, which was often eaten by British merchant
seamen. See The Patrick O'Brian Newsletter, Vol. 1, Issue 1, (August 1992).

6082640.1

1 | Smelting & Refining Co., 327 F.2d 581 (9th Cir. 1964) and apply the American Rule of

2 | attorneys fees to this suit.

3 | **F.    Plaintiff Has Failed To Comply With Rule 44.1 F.R.C.P. And Is Therefore Not
        Entitled To Assert Any Rights Under Singapore Law**

4 |

5 |      Federal Rule of Civil Procedure 44.1 states that:

6 |           A party who intends to raise an issue concerning the law of a

7 |           foreign country shall give notice by pleadings or other reasonable

8 |           written notice.

9 |      The rule was designed to avoid "unfair surprise" to the opposing party.  Though

10 | Congress chose not to set "any definite limit on the party's time for giving notice of any issue of

11 | foreign law," see *Advisory Committee's Note* 39 FRD 61, 118 (1966), a district court is expected

12 | to consider the following factors when deciding whether or not to permit "late" notice of foreign

13 | law:  the stage at which the case has reached at the time of notice, the reason proffered by the

14 | party for his failure to provide notice, and the importance of the issue being raised.  (Id.)

15 |      As noted above, there is no "bright line" deadline as to when reasonable written notice

16 | must be given.  However, the Ninth Circuit Court of Appeal has established a general rule of

17 | timeliness:

18 |           …notice of intent to raise an issue of foreign law should be given

19 |           before or during the pretrial conference, and normally a

20 |           contention of application of foreign law should be disclosed at the

21 |           latest in the pretrial order.  [emphasis supplied]

22 | DP Aviation v. Smiths Industries Aerospace and Defense Systems, 268 F.3d 829, 847 (9th Cir.

23 | 2001).  As a matter of fundamental fairness, "it is only fair to provide notice of potential

24 | application of foreign law as early as is practicable…."  (Id.)  Furthermore, there must generally

25 | be "extenuating circumstances" to allow the use of foreign law where it is raised "late in the

26 | district court's proceedings."  (Id. at fn 18.)  See also, Shonac Corp. v. AMKO Int'l. Inc., 763

27 | F.Supp. 919, 940 n. 2 (S.D. OH 1991), which was approvingly cited by the Ninth Circuit in DP

28 |

– 6 –

1   Aviation [plaintiff's submission of notice of the applicability of foreign law to a particular issue

2   one day before summary judgment was rendered was untimely under Rule 44.1].

3        Here, the action proceeded over a period of years, without a single mention of the

4   applicability of Singapore law <u>with regard to the issue of attorneys fees</u>.  In footnotes, APL

5   reserved its right to assert that Singapore law applied but reserving its right and actually

6   asserting Singapore law as applicable are not the same.  The Joint Pretrial Statement of

7   February 16, 2007 similarly says nothing about Singapore law and attorneys fees.[6]  To the

8   contrary, plaintiff stated that the "issues to be decided" revolved around the Carriage of Goods

9   by Sea Act created by Act of the United States Congress. See page 3 of Joint Pretrial Statement.

10   Clearly, Rule 44.1 notice was not given "as soon as practicable," and no extenuating

11   circumstances exist (or have ever been offered) to excuse APL's dereliction.

12        Therefore, under the authority of <u>DP Aviation</u>, <u>supra</u>, plaintiff's failure to provide notice

13   of foreign law with regard to the issue of attorneys fees at or about the time of the Pretrial

14   Conference Statement (or indeed for five months thereafter)[7] disqualifies plaintiff from having

15   the court grant them any rights or remedies which they might be accorded under the law of

16   Singapore, if it otherwise were applicable.  Interestingly, <u>DP Aviation</u> also involved an attempt

17   <u>after judgment</u> by plaintiff to increase its damages, based on a contractual English choice of law

18   provision.

19   **G.    At This Late Date, APL Should be Judicially Estopped From Claiming Attorneys**
       **Fees Under Singapore Law**

20

21        Judicial estoppel "precludes a party from assuming a position in a legal proceeding

22   inconsistent with one previously asserted. <u>Government of Virgin Islands v. Paniagua</u>, 922 F.2d

23   178, 183 (3rd Cir. 1990).  The doctrine applies to assertion of law, as well as to assertions of

24

25   [6] Somewhat unusually, plaintiff incorporated its motion for summary judgment into the Joint
       Pretrial Statement as a means of setting forth its "disputed legal issues."  However, plaintiff's

26   memorandum of points and authorities in support of its summary judgment motion <u>only</u>
       discusses U.S. law.  It says nothing whatsoever about the law of Singapore.

27

28   [7] APL's vague, tentative responses to the possible application of Singapore law (without giving
       any context) clearly did not advise defendant's that the issue of attorneys fees might be decided
       under Singapore law.

                             – 7 –

6082640.1

1  fact, and will bar a new litigation argument if the old one was "actually adopted by the court in

2  the earlier litigation." Yanez v. United States, 989 F.2d 323, 326 (9th Cir. 1993). When a court

3  relies on a party's proffered choice of law in reaching a decision, that party cannot subsequently

4  proffer a different choice of law in order to reap additional benefits. See, for example, Julian-

5  Ocampo v. Air Ambulance Network Inc., 2001 US Dist. Lexis 22173 (D. OR 2001), where both

6  parties briefed their cases based on Oregon law, the court granted relief under Oregon law, then

7  one party later sought punitive damages under Washington law.

8        The finding of judicial estoppel is particularly apt in a COGSA case. The shipment at

9  issue involved the transport of goods from a foreign port to the United States. As this court has

10  noted, the United States Carriage of Goods by Sea Act applies, by force of law to "every bill of

11  lading…which is evidence of a contract for the carriage of goods by sea to or from ports of the

12  United States." American Home Assurance Co. v. TGL Container Lines, Ltd., 347 F.Supp.2d

13  749, 762 (N.D. Cal. 2004), citing to 46 U.S.C. App. 1300. Indeed, APL recognized the

14  applicability of U.S. COGSA – not Singapore's Carriage of Goods statute by means of its

15  Clause Paramount (Section 6 of the bill of lading). At this late juncture, APL should be

16  judicially estopped from asserting that COGSA does not apply to certain aspects of this

17  transaction or bill of lading, and that Singapore law does.

18  **H.**    **APL is Seeking Attorneys Fees Which Are Not Granted By The Bill Of Lading**

19        It must be noted that the APL bill of lading does not contain an attorneys fees provision.

20  More pertinently, APL does not appear to be making a claim for attorneys fees incurred in

21  connection with the clean up itself and has not submitted any evidence that establishes that

22  attorneys fees were incurred for anything other than pursuing a collection action against the

23  defendants. Thus, APL is not seeking indemnity for "all claims, losses, damages, liabilities or

24  expenses arising in consequence of the Carriage of such [hazardous] Goods" as is set forth in

25  paragraph 19 of the bill of lading upon which it relies.

26        Further, APL has not established that the attorneys fees which it is seeking fall within

27  the scope of paragraph 9 of the bill of lading. That paragraph contains an indemnity obligation [8]

28

---

[8]Without waiving any argument that such provision is valid and enforceable.

– 8 –

6082640.1

1 with respect to loss, damage, liability, or expense caused by the manner in which the goods were

2 stowed, the unsuitability of the goods, the defective condition of the container. In this case,

3 APL has not established that it incurred the attorneys fees that it is seeking because of any of

4 those reasons. Rather, it incurred the attorneys fees in pursuing an action against UG and

5 Kamdar when UK Aerosols denied its claim, a date which this Court previously found to be the

6 operative date for the accrual of prejudgment interest and the date upon which the Court held

7 that APL's claim accrued.

8 **I.** **Even If Singapore Law Did Apply And Provide For An Award Of Attorneys Fees Under The Circumstances Of This Case, Apl Has Failed To Properly Support Its**
9 **Attorneys Fees Claim.**

10 **1.** **APL has failed to establish that the hourly rate is "reasonable."**

11 APL is correct that when reviewing a claim for attorneys fees, the court begins with

12 establishing the "lodestar." The "lodestar" is calculated by multiplying the number of hours

13 reasonably expended on litigation by a reasonable hourly rate. Hensley v. Eckerhart, 461 U.S.

14 424, 433 (1983); Jordan v. Multnomah County, 815 F.2d 1258 (9th Cir. 1987). The prevailing

15 market rate in the community is indicative of a reasonable hourly rate. When determining a

16 reasonable hourly rate, the court must consider the prevailing rate in the community, not the rate

17 actually charged to the prevailing party. Peake v. Chevron Shipping Co., Inc., 2004 A.M.C.

18 2778, 2790 (N.D. CA 2004); Sealy, Incorporated v. Easy Living, Inc., 743 F.2d 1378, 1385 (9th

19 Cir. 1984).

20 Although APL's counsel contends that he has "canvassed" the San Francisco market and

21 participated in the setting of his hourly rate, he failed to detail his findings and justify the rate

22 claimed based upon the rates charged by other experienced admiralty practitioners in San

23 Francisco with comparable experience. The party seeking the attorneys fees has the burden of

24 producing satisfactory evidence in addition to its counsel's self-serving declaration that the rates

25 claimed are consistent with those in the community for counsel with similar experience and

26 reputation. Jordan, 815 F.2d at 1263.

27 As set forth in the declaration of Marilyn Raia, the rates claimed by APL far exceed the

28 prevailing rates in San Francisco for experienced admiralty counsel. Indeed, the hourly rate

– 9 –

1   claimed is nearly twice the prevailing rate and the total attorneys fees claimed are approximately

2   five times the amount of attorneys fees charged by defense counsel who has at least equal

3   experience and reputation.  In the absence of any evidence at all of the prevailing rate in the

4   community for experienced admiralty practitioners, APL has not met the requirements of

5   establishing the first element of the "lodestar."

6          **2.      APL has failed to establish that the hours expended were reasonable**

7          In addition to its failure to adequately establish that the hourly rate required for the

8   "lodestar" calculation was reasonable, APL has also failed to provide sufficient documentation

9   to enable this court to find that number of hours expended was reasonable.  In fact, APL has

10  failed to provide any information whatsoever that would enable the court to determine how

11  much time was spent on any particular task and by whom.  APL has provided only single page

12  summary sheets and one invoice with redacted information as to what was done.  Its counsel has

13  attempted to summarize what was done in a declaration but such summaries are inadequate for

14  the court to assess the reasonableness of the hours expended.  Further, it is not sufficient for

15  counsel to merely render his opinion that the time expended was reasonable as APL's counsel

16  has done.  <u>Sealy Incorporated</u>, 743 F.2d at 1385.  While it is true that counsel need not detail

17  what was done for each minute of litigation, at a minimum, counsel should identify the general

18  subject matter of his time expenditures.  <u>Hensley</u>, 461 U.S. at 437.  The offer to the court of an

19  *in camera* inspection of its time records does not meet the standard of proof imposed on a party

20  seeking to recover attorneys fees.  As this court has recognized:

21              As a 'maritime law expert', plaintiff's counsel should know that
                motions for attorneys fees are often opposed through declarations
22              listing improperly billed time.  Such declarations are not overly
                argumentative or inexpert; they are part of the attorneys fees
23              calculation process.

24                          <u>Peake</u>, 2004 AMC at 2791

25         While APL's counsel asserts that the $640,000 in fees claimed is a reduced amount after

26  deducting the fees incurred in pursuing a recovery from Imp-Ex (see declaration of Charles

27  Donovan, page 3, paragraph 12) and after making adjustments for inefficiencies, there is no way

28  for this court or defense counsel to verify this assertion.  It is important for the court to cast a

6082640.1

1   critical eye on counsel's representations about the time expended on the matter. <u>Sealy</u>, 743 F.2d

2   at 1385. Of course, it is equally important and expected for opposing counsel to have the

3   opportunity to challenge the time spent for its reasonableness. Further the expenses claimed are

4   not supported in any way and cannot be critically examined by the court or counsel for their

5   relevance and reasonableness. For example, APL appears to be seeking $25,000 for

6   computerized research and several thousand dollars for an expert who was not deposed,

7   designated as a trial witness and who did not testify.

8        As set forth in the declaration of Marilyn Raia,(attached hereto as Exhibit B) there were

9   many occasions during the course of this litigation on which more than one attorney appeared

10  on behalf of APL, whether in court, at a deposition, or at an ENE session. It is unknown

11  whether fees have been claimed for the attendance of two attorneys but at the rates allegedly

12  charged, the combined rate would have exceeded $1,000 per hour for such dual appearances!

13  Given the alleged experience of counsel, it was not necessary for more than one attorney to have

14  attended those proceedings. If the attendance of more junior counsel was for a "learning

15  experience," it is not appropriate for those fees to be claimed. However, because APL has failed

16  to submit any details about the fees claimed, whether in fact a claim is being made for the

17  attendance of more than one counsel.

18       Further, given the number of hours alleged to have been spent on various non-

19  appearance aspects of the matter, it is suspected that more than one attorney analyzed the court's

20  orders and pleadings, drafted pleadings, researched legal issues, etc., and that a claim is being

21  made for duplicative effort. While counsel has alleged that "every effort" was made to allocate

22  responsibilities to avoid duplication, without any documentation to support the hours expended

23  by each counsel, paralegal and clerk on each task, neither the court nor defense counsel can

24  determine whether the fees being claimed are excessive and/or duplicative and consequently,

25  unreasonable., and whether expenses claimed were necessary and reasonable.

26                          **III. CONCLUSION**

27       For the reasons set forth herein, Defendants respectfully request that APL's motion for

28  attorneys fees under Singapore law, rather than under the American Rule, be denied.

– 11 –

6082640.1

1

2   DATED:  August 6, 2007

3                                          BULLIVANT HOUSER BAILEY PC

4

5                                          By _____
                                                 Norman J. Ronneberg, Jr.
6                                                     Marilyn Raia
                                           Attorneys for Defendants U.G. Co., Inc. dba
7                                          Universal Grocers and Kamdar Global, LLC and
                                           Intervenor Valley Forge Insurance Company
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6082640.1

OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS FEES UNDER SINGAPORE LAW

1

**PROOF OF SERVICE**

2

*APL Co. Pte. Ltd., v. U.K. Aerosols Ltd., et al.*
USDC Northern District (San Francisco Division) Court Case No.:  C 05-0646 MHP

3

4

I am employed in the City and County of San Francisco by the law firm of Bullivant
Houser Bailey PC ("the business"), 601 California Street, Suite 1800, San Francisco, CA 94108.
I am over the age of 18 and not a party to this action.  On August 6, 2007, I served the
document(s) entitled:

5

6

- **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR
ATTORNEYS FEES UNDER SINGAPORE LAW**

7

8

upon the following parties:

9

Charles S. Donovan
Sheppard Mullin Richter & Hampton LLP

10

Four Embarcadero Center, 17th Flr.
San Francisco, CA  94111-4106

11

Telephone:  415-434-9100
Facsimile:  415-434-3947

12

*Attorney for Plaintiff APL. CO. PTE. LTD.*

13

( )   BY MAIL (CCP § 1013a):  I am readily familiar with the ordinary practice of the

14

business with respect to the collection and processing of correspondence for mailing
with the United States Postal Service.  I placed true and correct copies of the above-titled

15

document(s) in envelopes addressed as above, with first class postage thereon fully
prepaid.  I sealed the aforesaid envelopes and placed them for collection and mailing by

16

the United States Postal Service in accordance with the ordinary practice of the business.

17

Correspondence so placed is ordinarily deposited by the business with the United States
Postal Service on the same day.

18

( )   BY FACSIMILE TRANSMISSION (CRC 2008(e)):  I transmitted the documents by

19

facsimile transmission by placing them in a facsimile machine (telephone number 415-
352-2701) and transmitting them to the facsimile machine telephone numbers listed

20

above.  A transmission report was properly issued by the transmitting facsimile machine.
Each transmission was reported as complete and without error.  A true and correct copy

21

of the transmission report is attached hereto.

22

( )   BY OVERNIGHT DELIVERY (CCP § 1013(c)):  I am readily familiar with the

23

ordinary practice of the business with respect to the collection and processing of
correspondence for mailing by Express Mail and other carriers providing for overnight

24

delivery.  I placed true and correct copies of the above-titled document(s) in envelopes
addressed as above, with first class postage thereon fully prepaid.  I sealed the aforesaid

25

envelopes and placed them for collection and mailing by Express Mail or other carrier

26

for overnight delivery in accordance with the ordinary practice of the business.
Correspondence so placed is ordinarily deposited by the business with Express Mail or

27

other carrier on the same day.

28

( )   BY PERSONAL SERVICE UPON AN ATTORNEY (CCP § 1011(a)):  I placed true
and correct copies of the above-titled document(s) in sealed envelopes addressed as

1    indicated above. I delivered each of said envelopes by hand to a receptionist or person
     having charge of it at the address on the envelope, or, if no person was present, by
2    leaving the envelope in a conspicuous place in the office between the hours of nine in
     the morning and five in the afternoon.
3

4   (X )   BY PERSONAL SERVICE UPON A PARTY (CCP § 1011(b)): I placed true and
            correct copies of the above-titled document(s) in sealed envelopes addressed as indicated
5           above. I delivered each of said envelopes by hand to a person of not less than 18 years
            of age at the address listed on the envelope, between the hours of eight in the morning
6           and six in the evening.

7           I declare under penalty of perjury that the foregoing is true and correct. Executed on
     August 6, 2007, at San Francisco, California.
8

9

10
            David Greathouse
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

R008 BILL OF LADING
SECTION: 01    -   1. DEFINITIONS

CARRIAGE -
MEANS THE WHOLE OR ANY PART OF THE OPERATIONS AND SERVICES
UNDERTAKEN BY THE CARRIER IN RESPECT OF THE GOODS COVERED BY THIS
BILL OF LADING.

CARRIER -
INCLUDES APL CO. PTE LTD AND AMERICAN PRESIDENT LINES, LTD, THE
THE VESSEL, ITS OWNER, OPERATOR CHARTERER (WHETHER DEMISE, TIME,
VOYAGE, SPACE OR SLOT), THE MASTER, AND ANY CONNECTING OR
SUBSTITUTE WATER CARRIER.

COMBINED TRANSPORT -
ARISES IF THE PLACE OF RECEIPT AND/OR THE PLACE OF DELIVERY ARE
INDICATED ON THE FACE HEREOF IN THE RELEVANT SPACES.

CONTAINER -
INCLUDES ANY OPEN OR CLOSED CONTAINER, VAN, TRAILER, FLATBED,
TRANSPORTABLE TANK, FLAT, PALLET, SKID, PLATFORM OR ANY SIMILAR
ARTICLE USED TO CONSOLIDATE GOODS AND ANY EQUIPMENT ASSOCIATED
OR ATTACHED THERETO.

FREIGHT -
INCLUDES ALL CHARGES PAYABLE TO THE CARRIER IN ACCORDANCE WITH THE
APPLICABLE TARIFF AND THIS BILL OF LADING.

GOODS -
MEANS THE CARGO RECEIVED FROM THE MERCHANT AND INCLUDES ANY
EQUIPMENT OR CONTAINER NOT SUPPLIED BY OR ON BEHALF OF THE CARRIER.

INDEMNIFY -
INCLUDES DEFEND, INDEMNIFY AND HOLD HARMLESS.

MERCHANT -
INCLUDES THE SHIPPER, CONSIGNEE, RECEIVER, HOLDER OF THE BILL OF
LADING, OWNER OF THE CARGO OR PERSON ENTITLED TO THE POSSESSION
OF THE CARGO OR HAVING A PRESENT OR FUTURE INTEREST IN THE GOODS
AND THE SERVANTS AND AGENTS OF ANY OF THESE, ALL OF WHOM SHALL BE
JOINTLY AND SEVERALLY LIABLE TO THE CARRIER FOR THE PAYMENT OF ALL
FREIGHT, AND FOR THE PERFORMANCE OF THE OBLIGATIONS OF ANY OF THEM
UNDER THIS BILL OF LADING.

PERSON -
MEANS ANY NATURAL PERSON, COMPANY, FIRM, BODY CORPORATE OF
UNINCORPORATED ASSOCIATION OR BODY, INCLUDING ANY GOVERNMENT OR
GOVERNMENTAL OR STATUTORY INSTRUMENTALITY OR PORT AUTHORITY.

SUB-CONTRACTOR -
INCLUDES OWNERS AND OPERATORS OF VESSLES (OTHER THAN THE CARRIER),
STEVEDORES, TERMINAL AND GROUPAGE OPERATORS, ROAD AND RAIL
TRANSPORT OPERATORS, LONGSHOREMEN, WAREHOUSEMEN AND ANY
INDEPENDENT CONTRACTOR EMPLOYED BY THE CARRIER IN PERFORMANCE OF
THE CARRIAGE.

AN ENDORSEMENT ON THIS BILL OF LADING THAT THE GOODS HAVE BEEN
SHIPPED "ON BOARD" MEANS ON BOARD THE CARRIER'S VESSEL, OR ANOTHER
MODE OF TRANSPORT OPERATED BY OR ON BEHALF OF CARRIER EN ROUTE

TO THE PORT OF LOADING FOR LOADING ABOARD CARRIER'S VESSEL.

PORT TO PORT SHIPMENT -
ARISES IF THE CARRIAGE CALLED FOR BY THIS BILL OF LADING IS NOT
COMBINED TRANSPORT.

VESSEL -
INCLUDES THE VESSEL NAMED ON THE FACE OF THIS BILL OF LADING AND
ANY OTHER VESSEL, LIGHTER OR WATERCRAFT OWNED, OPERATED, CHARTERED
OR EMPLOYED BY THE CARRIER OR ANY CONNECTING OR SUBSTITUTED WATER
CARRIER PERFORMING CARRIAGE UNDER THIS BILL OF LADING.

SECTION: 02      -      2. CARRIER'S APPLICABLE TARIFF


THE TERMS OF THE CARRIER'S APPLICABLE TARIFF ARE INCORPORATED
HEREIN.  PARTICULAR ATTENTION IS DRAWN TO THE TERMS THEREIN
RELATING TO CONTAINER AND VEHICLE DEMURRAGE.  COPIES OF THE
RELEVANT PROVISIONS OF THE APPLICABLE TARIFF ARE OBTAINABLE FROM
THE CARRIER OR ITS AGENTS UPON REQUEST.  IN CASE OF INCONSISTENCY
BETWEEN THIS BILL OF LADING AND THE APPLICABLE TARIFF, THIS BILL
OF LADING SHALL PREVAIL.

SECTION: 03      -      3. WARRANTY


THE MERCHANT WARRANTS THAT IN AGREEING TO THE TERMS AND CONDITIONS
HEREOF, INCLUDING THE APPLICABLE TARIFF(S), IT IS, OR HAS THE
AUTHORITY OF, THE PERSON OWNING OR ENTITLED TO THE POSSESSION OF
THE GOODS AND/OR CONTAINER AND THIS BILL OF LADING, AND THAT ALL
PRIOR AGREEMENTS AND FREIGHT ARRANGEMENTS ARE MERGED IN AND
SUPERSEDED BY THE PROVISIONS OF THIS BILL OF LADING.

SECTION: 04      -      4. SUB-CONTRACTING


    I. THE CARRIER SHALL BE ENTITLED TO SUB-CONTRACT ON ANY TERMS THE
       WHOLE OR ANY PART OF THE CARRIAGE, LOADING, UNLOADING, STORING,
       WAREHOUSING, HANDLING AND ANY AND ALL DUTIES WHATSOEVER
       UNDERTAKEN BY THE CARRIER IN RELATION TO THE GOODS.

   II. THE MERCHANT UNDERTAKES THAT NO CLAIM OR ALLEGATION SHALL BE
       MADE AGAINST ANY PERSON WHOMSOEVER BY WHOM THE CARRIAGE IS
       PROCURED, PERFORMED OR UNDERTAKEN, WHETHER DIRECTLY OR
       INDIRECTLY (INCLUDING ANY INDEPENDENT CONTRACTORS AND ANY
       SUB-CONTRACTORS OF THE CARRIER AND THEIR SERVANTS OR AGENTS),
       OTHER THAN THE CARRIER WHICH IMPOSES OR ATTEMPTS TO IMPOSE
       UPON ANY SUCH PERSON, OR ANY VESSEL OWNED BY ANY SUCH PERSON,
       ANY LIABILITY WHATSOEVER IN CONNECTION WITH THE GOODS OR THE
       CARRIAGE OF THE GOODS, WHETHER OR NOT ARISING OUT OF
       NEGLIGENCE ON THE PART OF SUCH PERSON AND, IF ANY SUCH CLAIM
       OR ALLEGATION SHOULD NEVERTHELESS BE MADE, TO INDEMNIFY THE
       CARRIER AGAINST ALL CONSEQUENCES THEREOF.  WITHOUT PREJUDICE
       TO THE FOREGOING EVERY SUCH PERSON SHALL HAVE THE BENEFIT OF
       EVERY RIGHT, DEFENCE, LIMITATION AND LIBERTY OF WHATSOEVER
       NATURE HEREIN CONTAINED OR OTHERWISE AVAILABLE TO THE CARRIER
       AS IF SUCH PROVISIONS WERE EXPRESSLY FOR ITS BENEFIT; AND IN
       ENTERING INTO THIS CONTRACT, THE CARRIER, TO THE EXTENT OF
       THESE PROVISIONS, DOES SO NOT ONLY ON ITS OWN BEHALF BUT ALSO
       AS AGENT AND TRUSTEE FOR SUCH PERSONS.

III. THE MERCHANT FURTHER UNDERTAKES THAT NO CLAIM OR ALLEGATION IN RESPECT OF THE GOODS SHALL BE MADE AGAINST THE CARRIER BY ANY PERSON OTHER THAN IN ACCORDANCE WITH THE TERMS AND CONDITIONS OF THIS BILL OF LADING WHICH IMPOSES OR ATTEMPTS TO IMPOSE UPON THE CARRIER ANY LIABILITY WHATSOEVER IN CONNECTION WITH THE GOODS OR THE CARRIAGE OF THE GOODS, WHETHER OR NOT ARISING OUT OF NEGLIGENCE ON THE PART OF THE CARRIER AND, IF ANY SUCH CLAIM OR ALLEGATION SHOULD NEVERTHELESS BE MADE, TO INDEMNIFY THE CARRIER AGAINST ALL CONSEQUENCES THEREOF.

SECTION: 05    -    5. CARRIER'S RESPONSIBILITY

A. PORT-TO-PORT SHIPMENT

IF THE CARRIAGE CALLED FOR BY THIS BILL OF LADING IS A PORT-TO-PORT SHIPMENT, THE CARRIER'S LIABILITY, IF ANY, SHALL BE RESTRICTED TO THE PERIOD WHEN THE GOODS ARE LOADED ON BOARD THE VESSEL UNTIL DISCHARGED THEREFROM OR TRANSHIPPED TO ANOTHER VESSEL TACKLE-TO-TACKLE, TO BE DETERMINED IN ACCORDANCE WITH THE PROVISIONS OF CLAUSE 6 HEREOF.

B. COMBINED TRANSPORT

I. IF THE CARRIAGE CALLED BY THIS BILL OF LADING IS A COMBINED TRANSPORT SHIPMENT, THE CARRIER UNDERTAKES TO PERFORM AND/OR PROCURE IN ITS OWN NAME, PERFORMANCE OF THE CARRIAGE FROM THE PLACE OF RECEIPT OR THE PORT OF LOADING TO THE PORT OF DISCHARGE OR THE PLACE OF DELVIERY, WHICHEVER IS APPLICABLE, AND THE CARRIER'S LIABILITY, IF ANY, SHALL BE DETERMINED IN ACCORDANCE WITH THE PROVISIONS OF CLAUSE 6 HEREOF.

II. DURING THE PERIOD PRIOR TO LOADING ONTO THE VESSEL AND AFTER DISCHARGE FROM THE VESSEL, THE CARRIER SHALL BE ENTITLED AS AGAINST THE MERCHANT TO ALL RIGHTS, DEFENCES, IMMUNITIES, EXEMPTIONS, LIMITATIONS OF OR EXONERATIONS FROM LIABILITY, LIBERTIES AND BENEFITS CONTAINED OR INCORPORATED IN THE CONTRACT BETWEEN THE CARRIER AND ANY PERSON WHOMSOEVER BY WHOM THE CARRIAGE IS PROCURED, PERFORMED OR UNDERTAKEN, WHETHER DIRECTLY OR INDIRECTLY (AND INCLUDING SUCH PERSONS MENTIONED IN CLAUSE 4 II. HEREOF) AND TWO WOULD HAVE BEEN LIABLE TO THE MERCHANT IF THE MERCHANT HAD CONTRACTED DIRECTLY WITH SUCH PERSON OR CONTAINED IN ANY COMPLUSORY LEGISLATION APPLICABLE TO SUCH PERSON.  HOWEVER, IN NO EVENT SHALL THE CARRIER'S LIABILITY EXCEED THAT DETERMINED IN ACCORDANCE WITH THE PROVISIONS OF CLAUSE 6 HEREOF.

III. IF IT CANNOT BE PROVEN WHERE OR WHEN OR AT WHAT STAGE OF THE CARRIAGE THE GOODS OR CONTAINERS OR OTHER PACKAGES WERE LOST OR DAMAGED, IT SHALL BE CONCLUSIVELY DEEMED TO HAVE OCCURED WHILST AT SEA AND THE CARRIER'S LIABILITY, IF ANY, SHALL BE DETERMINED IN ACCORDANCE WITH THE PROVISIONS OF CLAUSE 6 HEREOF.

C. GENERAL PROVISIONS
   (APPLICABLE TO BOTH PORT-TO-PORT AND COMBINED TRANSPORT SHIPMENTS)

I. THE CARRIER DOES NOT UNDERTAKE THAT THE GOODS OR CONTAINERS

OR OTHER PACKAGES SHALL ARRIVE AT THE PORT OF DISCHARGE OR
PLACE OF DELIVERY AT ANY PARTICULAR TIME OR TO MEET ANY
PARTICULAR MARKET OR USE, AND THE CARRIER SHALL IN NO
CIRCUMSTANCES BE LIABLE FOR ANY DIRECT, INDIRECT OR
CONSEQUENTIAL LOSS OF DAMAGE CAUSED BY DELAY OR ANY OTHER
CAUSE.

II. THE TERMS OF THIS BILL OF LADING SHALL GOVERN ALL
RESPONSIBILITIES OF THE CARRIER IN CONNECTION WITH OR
ARISING OUT OF THE SUPPLY OF A CONTAINER TO THE MERCHANT
WHETHER BEFORE OR AFTER THE GOODS ARE RECEIVED BY THE CARRIER
FOR TRANSPORTATION OR DELIVERED TO THE MERCHANT.

III. WHEN A CONTAINER IS SUPPLIED BY THE MERCHANT, THE MERCHANT
ENTERS INTO THIS BILL OF LADING CONTRACT FOR ITSELF AND AS
AGENT OF THE OWNER OR LESSEE (IF OTHER THAN THE MERCHANT) OF
THE CONTAINER, AND THE OWNER OR LESSEE,  AS THE CASE MAY BE,
IS BOUND BY THE TERMS AND CONDITIONS OF THIS BILL OF LADING
AS A RESULT.

THE RIGHTS, DEFENCES, IMMUNITIES, EXEMPTIONS, LIMITATIONS
OF AND EXONERATIONS FROM LIABILITY, LIBERTIES AND BENEFITS
SHALL APPLY IN ANY ACTION OR PROCEEDING WHATSOEVER BROUGHT
AGAINST THE CARRIER AND/OR ANY PERSON ENCOMPASSED IN
CLAUSE 4 11) HEREOF, WHETHER IN CONTRACT, TORT, EQUITY OR
OTHER THEORY OF RECOVERY.

SECTION: 06      -      6. PARAMOUNT CLAUSE


I. FROM LOADING OF THE GOODS INTO THE VESSEL UNTIL DISCHARGE OF THE
GOODS FROM THE VESSEL, THE CARRIER'S RESPONSIBILITY SHALL BE
SUBJECT TO THE PROVISIONS OF ANY LEGISLATION COMPULSORY
APPLICABLE TO THIS BILL OF LADING:

A. WHICH GIVES EFFECT TO THE HAGUE RULES CONTAINED IN THE
INTERNATIONAL CONVENTION FOR THE UNIFICATION OF CERTAIN
RULES RELATING TO BILLS OF LADING, DATED AT BRUSSELS,
AUGUST 25, 1994, (" THE HAGUE RULES") INCLUDING ADAPTATIONS
THEREOF, SUCH AS THE CARRIAGE OF GOODS BY SEA ACT OF THE
UNITED STATES, 1936 ("US COGSA"), THE PROVISIONS OF WHICH
SHALL APPLY ON ALL SHIPMENTS TO OR FROM THE UNITED STATES
WHETHER COMPULSORILY APPLICABLE OR NOT OR

B. WHICH GIVES EFFECT TO SAID RULES AS AMENDED BY THE PROTOCOLS
TO AMEND THE INTERNATIONAL CONVENTION FOR THE UNIFICATION OF
CERTAIN RULES OF LAW RELATING TO BILLS OF LADING, DATED AT
BRUSSELS, FEBRUARY 23, 1968 (THE "HAGUE-VISBY RULES") AND
DECEMBER 21, 1979 (THE"SDR PROTOCOL"), BUT WHERE THE HAGUE-
VISBY RULES OR SDR PROTOCOL ARE NOT COMPULSORILY APPLICABLE,
THEY SHALL NOT BE GIVEN EFFECT.  WHERE THE HAGUE RULES,
ADAPTATIONS THEREOF OR THE HAGUE-VISBY RULES AND SDR PROTOCOL
ARE NOT COMPULSORILY APPLICABLE, EXCEPT AS TO SHIPMENTS TO
OR FROM THE UNITED STATES, AS PROVIDED IN CLAUSE 6 1. A.,
THIS BILL OF LADING SHALL BE GOVERNED BY THE HAGUE RULES,
EXCEPT THAT THE LIMITATION SHALL BE  US$500 PER PACKAGE OR
PER SHIPPING UNIT AS STATED IN CLAUSE 7, AND WITHOUT
PREJUDICE TO THE CARRIER'S RIGHT TO RELY UPON THE TERMS AND
CONDITIONS OF THIS BILL OF LADING NOTWITHSTANDING THE FACT
THAT THEY MAY CONFER WIDER OR MORE BENEFICIAL RIGHTS,

DEFENCES, IMMUNITIES, EXEMPTION, LIMITATIONS, EXONERATIONS,
LIBERTIES OR BENEFITS UPON THE CARRIER AND THIRD-PARTY
BENEFICIARIES THAN THOSE AFFORDED BY THE AFORESAID
CONVENTIONS OR LEGISLATION.

II.  THE APPLICABLE CONVENTIONS OR LEGISLATION SHALL APPLY TO
THE CARRIAGE BY INLAND WATERWAYS AND REFERENCE TO CARRIAGE
BY SEA IN SUCH CONVENTIONS OR LEGISLATION SHALL BE DEEMDED
TO INCLUDE INLAND WATERWAYS.

III. THE CARRIER, NOTWITHSTANDING WHICH CONVENTION OR LEGISLATION
IS APPLICABLE, SHALL BE ENTITLED TO THE BENEFIT OF SECTION
4281 THROUGH 4287 OF THE REVISED STATUTES OF THE UNITED
STATES AND AMENDMENTS THERETO, AS IF THE SAME WERE EXPRESSLY
SET OUT HEREIN, INCLUDING BUT NOT LIMITED TO THE FIRE
STATUTE.

IV.  PRIOR TO LOADING ONTO THE VESSEL AND AFTER DISCHARGE FROM
THE VESSEL OR IF THE STAGE OF CARRIAGE DURING WHICH THE
LOSS OR DAMAGE TO GOODS OCCURED CANNOT BE PROVED, THE
CARRIER'S LIABILITY SHALL BE GOVERNED UNDER THE HAGUE
RULES, EXCEPT THAT THE LIMITATION SHALL BE US$500 PER
PACKAGE OR PER SHIPPING UNIT AS STATED IN CLAUSE 7, AND
FOR THIS PURPOSE THE HAGUE RULES SHALL BE EXTENDED TO THE
PERIODS BEFORE LOADING AND SUSEQUENT TO  DISCHARGE AND TO
THE ENTIRE PERIOD OF THE CARRIER'S RESPONSIBILITY.
NOTWITHSTANDING CLAUSE 6 IV, IF THE PROVISIONS OF ANY
CONTRACT BETWEEN BCARRIER AND ANY CONTRACTOR OR THE
PROVISIONS OF ANY INTERNATIONAL CONVENTION OR NATIONAL LAW
APPLICABLE TO ANY SUCH MODE OF CARRIAGE EMPLOYED AT THE
TIME OF SUCH LOSS, DAMAGE, MISDELIVERY, CONVERSION OR
DELAY WOULD RESULT IN LIABILITY TO THE MODAL CARRIER, AND
SUCH LIABILITY IS LESS THAN CARRIER'S LIABILITY DETERMINED
IN CLAUSE 6 IV, THEN CARRIER'S LIABILITY SHALL NOT EXCEED
SUCH LESSER AMOUNT.

V.  IT IS HEREBY AGEED BY THE MERCHANT THAT THE CARRIER
QUALIFIES AND SHALL BE REGARDED AS A PERSON ENTITLED TO
LIMIT LIABILITY UNDER THE RELEVANT CONVENTION ON THE
LIMITATION OF LIABILITY FOR MARITIME CLAIMS OR SIMILAR
LEGISLATION; EXCEPT TO THE EXTENT THAT MANDATORY LAW OF
THE COUNTRY APPLIES IN THE APPROPRIATE JURISDICTION ( IN
WHICH CASE SUCH LAW SHALL APPLY ), THE SIZE OF THE FUND TO
WHICH THE CARRIER MAY LIMIT LIABILITY SHALL BE CALCULATED
BY MULTIPLYING THE LIMITATION FUND OF THE CARRYING VESSEL
AT THE RELEVANT TIME BY THE NUMBER OF TWENTY FOOT
EQUIVALENT UNITS ("TEUS") ABOARD AT THAT TIME FOR WHICH
THE CARRIER IS THE CONTRACTING CARRIER AND DIVIDING THAT
TOTAL BY THE TOTAL NUMBER OF TEUS ABOARD AT THAT TIME.

NOTHING HEREIN CONTAINED, EXPRESSED, IMPLIED OR
INCORPORATED BY THE REFERENCE, SHALL BE DEEMED TO WAIVE OR
OPERATE TO DEPRIVE THE CARRIER OF OR LESSEN ANY OF ITS
RIGHTS, DEFENCES, IMMUNITIES, EXEMPTIONS, LIMITATIONS,
EXONERATIONS, LIBERTIES OR BENEFITS AFFORDED BY APPLICABLE
LEGISLATION OR BY THE TERMS AND CONDITIONS HEREOF.

SECTION: 07    -    7. PACKAGE LIMITATION

I. FOR SHIPMENTS TO AND FROM THE UNITED STATES, NEITHER THE CARRIER
NOR THE VESSEL SHALL IN ANY EVENT BECOME LIABLE FOR ANY LOSS OF
OR DAMAGE TO OR IN CONNECTION WITH THE CARRIAGE OF GOODS IN AN
AMOUNT EXCEEDING US$500 (WHICH IS THE PACKAGE OR SHIPPING UNIT
LIMITATION UNDER U.S. COGSA) PER PACKAGE OR IN THE CASE OF GOODS
NOT SHIPPED IN PACKAGES PER CUSTOMARY FREIGHT UNIT.

II. IN ALL OTHER TRADES THE CARRIER'S MAXIMUM LIABILITY SHALL BE AS
PROVIDED IN CLAUSE 7 I, SAVE THAT THE WORDS "GBP100 LAWFUL MONEY
OF THE UNITED KINGDOM" SHALL SUBSTITUTE THE WORD "US$500" WHEREVER
APPEARING THEREIN.

III. NOTWITHSTANDING CLAUSE 7 I AND II, WHERE THE NATURE AND VALUE OF
GOODS HAVE BEEN DECLARED BY THE SHIPPER IN WRITING TO THE CARRIER
BEFORE SHIPMENT AND INSERTED IN THIS BILL OF LADING AND THE
SHIPPER HAS PAID ADDITIONAL FREIGHT ON SUCH DECLARED VALUES,
THE CARRIERS LIABILITY IF ANY, SHALL NOT EXCEED THE DECLARED
VALUE AND ANY PARTIAL LOSS OR DAMAGE SHALL BE ADJUSTED PRO-RATA
ON THE BASIS OF SUCH DECLARED VALUE.

IV. SHIPPING UNIT IN THIS CLAUSE 7 INCLUDES CUSTOMARY FREIGHT UNIT
AND THE TERM "UNIT" AS USED IN THE THE HAGUE RULES AND HAGUE-
VISBY RULES.

THIS CLAUSE APPLIES IN ADDITION TO AND SHALL NOT BE CONSTRUED AS
DEROGATING FROM ANY DEFENCE OR EXCLUSION, RESTRICTION OR
LIMITATION  OF LIABILITY AVAILABLE TO THE CARRIER UNDER THE
TERMS OF THIS BILL  OF LADING OR OTHERWISE.

SECTION: 08    -    8. NOTICE OF LOSS, TIME BAR


I. THE CARRIER SHALL BE DEEMED PRIMA FACIE TO HAVE DELIVERED THE
GOODS AS DESCRIBED IN THE BILL OF LADING UNLESS NOTICE OF LOSS
OR DAMAGE TO THE GOODS, INDICATING THE GENERAL NATURE OF SUCH
LOSS OR DAMAGE, SHALL BE GIVEN IN WRITING TO THE CARRIER AT THE
TIME OF REMOVAL OF THE GOODS INTO THE CUSTODY OF THE PERSON
ENTITLED TO DELIVERY THEREOF UNDER THIS BILL OF LADING OR, IF THE
LOSS OR DAMAGE IS NOT APPARENT, WITHIN THREE CONSECUTIVE DAYS
THEREAFTER.

II. THE CARRIER SHALL IN ANY EVENT BE DISCHARGED FROM ALL LIABILITY
WHATSOEVER IN RESPECT OF THE GOODS, UNLESS SUIT IS BROUGHT IN THE
PROPER FORUM AND WRITTEN NOTICE THEREOF RECEIVED BY THE CARRIER
WITHIN NINE MONTHS AFTER DELIVERY OF THE GOODS OR THE DATE WHEN
THE GOODS SHOULD HAVE BEEN DELIVERED.  IN THE EVENT THAT SUCH TIME
PERIOD SHALL BE FOUND TO BE CONTRARY TO ANY LAW COMPULSORILY
APPLICABLE, THE PERIOD PRESCRIBED BY SUCH LAW SHALL THEN APPLY
BUT IN THAT CIRCUMSTANCE ONLY.

SECTION: 09    -    9. SHIPPER-PACKED CONTAINERS


I. IF A CONTAINER HAS NOT BEEN FILLED, PACKED, STUFFED OR LOADED
BY THE CARRIER, THE CARRIER SHALL NOT BE LIABLE FOR LOSS OF OR
DAMAGE TO THE GOODS AND THE MERCHANT SHALL INDEMNIFY THE CARRIER
AGAINST ANY LOSS, DAMAGE, LIABILITY OR EXPENSE INCURRED BY THE
CARRIER, IF SUCH LOSS, DAMAGE, LIABILITY OR EXPENSE HAS BEEN
CAUSED BY:

A. THE MANNER IN WHICH THE CONTAINER HAS BEEN FILLED, PACKED,
STUFFED OR LOADED; OR

B. THE UNSUITABILITY OF THE GOODS FOR CARRIAGE IN CONTAINER; OR

C. THE UNSUITABILITY OR DEFECTIVE CONDITION OF THE CONTAINER
ARISING WITHOUT ANY WANT OF DUE DILIGENCE ON THE PART OF THE
CARRIER WHICH OCCURS WHILE SUCH CONTAINER REASONABLY FIT FOR THE PURPOSE
FOR WHICH IT IS INTENDED; OR

D. THE UNSUITABILITY OR DEFECTIVE CONDITION OF THE CONTAINER
SUPPLIED BY THE SHIPPER.

II. THE SHIPPER SHALL INSPECT CONTAINERS BEFORE STUFFING THEM AND ITS
USE OF THE CONTAINERS SHALL BE PRIMA FACIE EVIDENCE OF THEIR BEING
SUITABLE AND NOT IN A DEFECTIVE CONDITION.

SECTION: 10    -    10. CARRIER'S CONTAINER

I. EACH MERCHANT SHALL ASSUME FULL RESPONSIBILITY AND INDEMNIFY
THE CARRIER FOR ANY LOSS OR DAMAGE HOWSOEVER CAUSED TO ANY
CONTAINER OR OTHER EQUIPMENT FURNISHED BY OR ON BEHALF OF THE
CARRIER WHICH OCCURS WHILE SUCH CONTAINER OR EQUIPMENT IS IN THE
POSSESSION OF ANY MERCHANT OR ANY SERVANT OR AGENT OF OR
CONTRACTOR ENGAGED BY OR ON BEHALF OF ANY MERCHANT.

II. THE CARRIER SHALL NOT IN ANY EVENT BE LIABLE FOR AND EACH MERCHANT
SHALL BE SEVERALLY LIABLE TO INDEMNIFY AND HOLD THE CARRIER
HARMLESS FROM AND AGAINST ANY LOSS OF OR DAMAGE TO PROPERTY OF
OTHER PERSONS OR INJURIES TO OTHER PERSONS CAUSED BY CONTAINER(S)
FURNISHED BY OR ON BEHALF OF THE CARRIER OR CONTENTS THEREOF WHILE
IN THE USE OR POSSESSION OF ANY MERCHANT OR ANY SERVANT OR AGENT
OF OR CONTRACTOR ENGAGED BY OR ON BEHALF OF ANY MERCHANT.

SECTION: 11    -    11. INSPECTION OF GOODS

I. THE CARRIER SHALL NE ENTITLED, BUT UNDER NO OBLIGATION, TO
OPEN ANY PACKAGE OR CONTAINER AT ANY TIME AND TO INSPECT THE
CONTENTS.

II. IF BY ORDER OF THE AUTHORITIES AT ANY PLACE, A CONTAINER HAS TO
BE OPENED FOR THE GOODS TO BE INSPECTED, THE CARRIER WILL NOT BE
LIABLE FOR ANY LOSS OR DAMAGE INCURRED AS A RESULT OF ANY OPENING,
UNPACKING, INSPECTION OR REPACKING. THE CARRIER SHALL BE ENTITLED
TO RECOVER THE COST OF SUCH OPENING, UNPACKING, INSPECTION AND
REPACKING FROM THE MERCHANT.

SECTION: 12    -    12. DESCRIPTION OF GOODS

I. NO REPRESENTATION IS MADE BY THE CARRIER AS TO THE WEIGHT,
CONTENTS, MEASURE, QUANTITY, QUALITY, DESCRIPTION, CONDITION,
MARKS, NUMBERS OR VALUE OF THE GOODS, AND THE CARRIER SHALL BE
UNDER NO RESPONSIBILITY WHATSOEVER IN RESPECT OF SUCH
DESCRIPTION OR PARTICULARS FURNISHED OR MADE BY OR ON BEHALF OF
THE SHIPPER.

II. IF ANY PARTICULARS OF ANY LETTER OF CREIT AND/OR IMPORT LICENSE
AND/OR SALE CONTRACT AND/OR INVOICE OR ORDER NUMBER AND/OR
DETAILS OR ANY CONTRACT TO WHICH THE CARRIER IS NOT A PARTY ARE
SHOWN ON THE FACE OF THIS BILL OF LADING, SUCH PARTICULARS ARE
INCLUDED SOLELY AT THE  REQUEST OF THE MERCHANT FOR ITS
CONVENIENCE.  THE MERCHANT AGREES THAT THE INCLUSION OF SUCH
PARTICULARS SHALL NOT BE REGARDED AS A DECLARATION OF VALUE AND IN
NO WAY AFFECTS THE CARRIER'S LIABILITY UNDER THIS BILL OF LADING.
THE MERCHANT FURTHER AGREES TO INDEMNIFY THE CARRIER AGAINST ALL
CONSEQUENCES OF INCLUDING SUCH PARTICULARS IN THIS BILL OF
LADING.

III. THE MERCHANT ACKNOWLEDGES THAT, EXCEPT WHEN THE PROVISIONS OF
CLAUSE 7 III APPLY, THE VALUE OF THE GOODS IS UNKNOWN TO THE
CARRIER.

SECTION: 13    -    13. SHIPPER'S/MERCHANT'S RESPONSIBILITY


I. THE SHIPPER WARRANTS TO THE CARRIER THAT THE PARTICULARS
RELATING TO THE GOODS AS SET OUT OVERLEAF HAVE BEEN CHECKED BY
THE SHIPPER ON RECEIPT OF THIS BILL OF LADING AND THAT SUCH
PARTICULARS AND ANY OTHER PARTICULARS FURNISHED BY OR ON BEHALF
OF THE SHIPPER ARE CORRECT.

II. THE MERCHANT SHALL INDEMNIFY THE CARRIER AGAINST ALL LOSS, DAMAGE,
LIABILITY AND EXPENSES ARISING OR RESULTING FROM INACCURACIES IN
OR INADEQUACY OF SUCH PARTICULARS.

III. THE MERCHANT SHALL COMPLY WITH ALL REGULATIONS OR REQUIREMENTS OF
CUSTOMS, PORT AND OTHER AUTHORITIES, AND SHALL BEAR AND PAY ALL
DUTIES, TAXES, FINES, IMPOSTS,EXPENSES OR LOSSES (INCLUDING,
WITHOUT PREJUDICE TO THE GENERALITY OF THE FOREGOING, THE FULL
RETURN FREIGHT FOR THE GOODS RETURNED, OR IF ON-CARRIED, THE FULL
FREIGHT FROM THE PORT OF DISCHARGE OR THE PLACE OF DELIVERY
NOMINATED HEREIN TO THE AMENDED PORT OF DISCHARGE OR THE
AMENDED PLACE OF DELIVERY) INCURRED OR SUFFERED BY REASON OF ANY
FAILURE TO SO COMPLY OR BY REASON OF ANY ILLEGAL, INCORRECT OR
INSUFFICIENT MARKING, NUMBERING OR ADDRESSING OF THE GOODS, AND
SHALL INDEMNIFY THE CARRIER IN RESPECT OF ANY SUCH FAILURE TO
COMPLY OR BY REASON OF ANY SUCH MARKING, NUMBERING OR ADDRESSING
OF THE GOODS.

SECTION: 14    -    14. FREIGHT, INCLUDING CHARGES


I. FREIGHT INCLUDING CHARGES SHALL BE DEEMED FULLY EARNED ON
RECEIPT OF THE GOODS BY THE CARRIER AND SHALL BE PAID AND NON-
RETURNABLE IN ANY EVENT.

II. THE FREIGHT HAS BEEN CALCULATED ON THE BASIS OF PARTICULARS
FURNISHED BY OR ON BEHALF OF THE SHIPPER.  THE CARRIER MAY
AT ANY TIME OPEN ANY CONTAINER OR OTHER PACKAGE OR UNIT IN ORDER
TO REWEIGH, REMEASURE OR REVALUE THE CONTENTS AND IF THE
PARTICULARS FURNISHED BY OR ON BEHALF OF THE SHIPPER ARE
INCORRECT, IT IS AGREED THAT A SUM EQUAL TO EITHER FIVE TIMES
THE DIFFERENCE BETWEEN THE CORRECT FREIGHT AND THE FREIGHT CHARGED
OR TO DOUBLE THE CORRECT FREIGHT LESS THAN THE FREIGHT CHARGED,
WHICHEVER SUM IS THE SMALLER, AND THE EXPENSES INCURRED IN
DETERMINING THE CORRECT PARTICULARS, SHALL BE PAYABLE AS

LIQUIDATED DAMAGES TO THE CARRIER.

III. FULL FREIGHT HEREUNDER SHALL BE DUE AND PAYABLE AT THE PLACE
WHERE THIS BILL OF LADING IS ISSUED, BY THE MERCHANT WITHOUT
DEDUCTION ON RECEIPT OF THE GOODS OR PART THEREOF BY THE CARRIER
FOR SHIPMENT.   ALL CHARGES DUE HEREUNDER TOGETHER WITH FREIGHT
( IF NOT PAID AT THE PORT OF LOADING AS AFORESAID ) SHALL BE DUE
FROM AND PAYABLE ON DEMAND BY THE MERCHANT ( WHO SHALL BE JOINTLY
AND SEVERALLY LIABLE TO THE CARRIER THEREFOR ) AT SUCH PORT OR
PLACE AS THE CARRIER MAY REQUIRE, VESSEL OR CARGO LOST OR NOT LOST
FROM ANY CAUSE WHATSOEVER.

IV. ALL OTHER CHARGES SHALL BE PAID TO THE CARRIER BEFORE DELIVERY
OF THE GOODS IN FULL WITHOUT OFFSET, COUNTERCLAIM OR DEDUCTION,
IN THE CURRENCY SPECIFIED IN THE CARRIER'S APPLICABLE TARIFF, OR
IF NO CURRENCY IS SO SPECIFIED, IN THE LAWFUL CURRENCY OF THE
UNITED STATES.

V. THE MERCHANT SHALL REMAIN RESPONSIBLE FOR ALL FREIGHT REGARDLESS
WHETHER THE BILL OF LADING BE MARKED, IN WORDS OR SYMBOLS,
"PREPAID", "TO BE PREPAID" OR "COLLECT".

SECTION: 15    -    15. LIEN


THE CARRIER SHALL HAVE A LIEN ON ALL GOODS, CONTAINERS AND ANY
DOCUMENTS RELATING THERETO FOR ALL SUMS DUE UNDER THIS CONTRACT
OR ANY OTHER CONTRACT OF UNDERTAKING TO WHICH THE MERCHANT WAS
PARTY OR OTHERWISE INVOLVED, WHICH LIEN SHALL ALSO EXTEND TO GENERAL
AVERAGE CONTRIBUTIONS, SALVAGE AND THE COST OF RECOVERING SUCH SUMS,
INCLUSIVE OF ATTORNEY FEES, AND SHALL SURVIVE DELIVERY.   SUCH LIEN
MAY BE ENFORCED BY THE CARRIER BY PUBLIC AUCTION OR PRIVATE TREATY,
WITHOUT NOTICE TO THE MERCHANT.

SECTION: 16    -    16. OPTIONAL STOWAGE AND DECK CARGO


I. BY TENDERING GOODS FOR CARRIAGE WITHOUT ANY WRITTEN REQUEST FOR
CARRIAGE IN A SPECIALIZED CONTAINER, OR FOR CARRIAGE OTHERWISE
THAN IN A CONTAINER, THE MERCHANT ACCEPTS THAT THE CARRIAGE MAY
PROPERLY BE UNDERTAKEN IN A GENERAL PURPOSE CONTAINER OR SIMILAR
ARTICLE OF TRASPORT USED TO CONSOLIDATE GOODS.

II. GOODS MAY BE STOWED BY THE CARRIER IN CONTAINERS, AND CONTAINERS
WHETHER STOWED BY THE CONTAINER OR RECEIVED FULLY STOWED, MAY BE
CARRIED ON OR UNDER DECK WITHOUT NOTICE UNLESS ON THE FACE HEREOF
IT IS SPECIFICALLY STIPULATED THAT THE CONTAINERS OR GOODS WILL
BE CARRIED UNDER DECK.   THE MERCHANT EXPRESSLY AGREES THAT CARGO
STOWED IN CONTAINER AND CARRIED ON DECK IS CONSIDERED FOR ALL
LEGAL PURPOSES TO BE CARGO STOWED UNDER DECK.   GOODS STOWED IN
CONTAINERS ON DECK SHALL BE SUBJECT TO THE LEGISLATION REFERRED
TO IN CLAUSE 6 HEREOF AND WILL CONTRIBUTE TO GENERAL AVERAGE AND
RECEIVE COMPENSATION IN GENERAL AVERAGE, AS THE CASE MAY BE.

III. GOODS ( NOT BEING GOODS STOWED IN CONTAINERS OTHER THAN
PALLETS, OR SIMILAR UNITS ) WHICH ARE STATED HEREIN TO BE CARRIED
ON DECK AND WHICH ARE SO CARRIED, ARE CARRIED WITHOUT
RESPONSIBILITY ON THE PART OF THE CARRIER FOR LOSS OR DAMAGE OF
WHATSOEVER NATURE ARISING DURING CARRIAGE BY SEA WHETHER CAUSED BY
UNSEAWORTHINESS OR NEGLIGENCE OR ANY OTHER CUASE WHATSOEVER.

SECTION: 17    -    17. METHODS AND ROUTES OF TRANSPORTATION

    I. THE CARRIER MAY AT ANY TIME AND WITHOUT NOTICE TO THE MERCHANT:

        A. USE ANY MEANS OF TRANSPORT OR STORAGE WHATSOEVER.

        B. TRANSFER THE GOODS FROM ONE CONVEYANCE TO ANOTHER.

        C. TRANSHIP THE GOODS.

        D. UNDERTAKE THE CARRIAGE OF THE GOODS ON A VESSEL OR
           VESSELS IN ADDITION TO AND/OR OTHER THAN THAT
           NAMED ON THE FACE HEREOF.

        E. UNPACK AND REMOVE GOODS WHICH HAVE BEEN PACKED
           INTO CONTAINER AND FORWARD THE SAME IN A CONTAINER
           OR OTHERWISE.

        F. PROCEED BY ANY ROUTE IN ITS DISCRETION (WHETHER OR NOT
           THE NEAREST OR MOST DIRECT OR CUSTOMARY OR ADVERTISED ROUTE),
           AT ANY SPEED, AND PROCEED TO OR STAY AT ANY PLACE OR PORT
           WHATSOEVER ONCE OR MORE OFTEN AND IN ANY ORDER.

        G. LOAD OR UNLOAD THE GOODS AT ANY PLACE OR PORT (WHETHER OR
           NOT SUCH PORT IS NAMED OVERLEAF AS THE PORT OF LOADING OR
           PORT OF DISCHARGE) AND STORE THE GOODS AT ANY SUCH PLACE
           OR PORT.

        H. COMPLY WITH ANY ORDERS OR RECOMMENDATIONS GIVEN BY ANY
           GOVERNMENT OR AUTHORITY, OR ANY PERSON OR BODY ACTING
           OR PURPORTING TO ACT AS OR ON BEHALF OF SUCH GOVERNMENT
           OR AUTHORITY, OR HAVING UNDER THE TERMS OF THE INSURANCE
           ON THE CONVEYANCE EMPLOYED BY THE CARRIER THE RIGHT TO GIVE
           ORDERS OR DIRECTIONS.

        J. PERMIT THE VESSEL TO PROCEED WITH OR WTIHOUT PILOTS, TO
           TOW OR BE TOWED, OR TO BE DRY-DOCKED.

  II. THE LIBERTIES SET OUT IN CLAUSE 17 I MAY BE INVOKED BY THE
    CARRIER FOR ANY PURPOSE WHATSOEVER, WHETHER OR NOT CONNECTED WITH
    THE CARRIAGE OF THE GOODS, INCLUDING LOADING OR UNLOADING OTHER
    GOODS, BUNKERING, UNDERGOING REPAIRS, ADJUSTING INSTRUMENTS,
    PICKING UP OR LANDING PERSONS INVOLVED WITH THE OPERATION OR
    MAINTENANCE OF THE VESSEL IN ALL SITUATIONS.  ANYTHING DONE IN
    ACCORDANCE WITH CLAUSE 17 I OR ANY DELAY ARISING THEREFROM SHALL
    BE DEEMED TO BE WITHIN THE CONTRACTUAL CARRAIGE AND SHALL NOT BE
    A DEVIATION.

SECTION: 18    -    18. MATTERS AFFECTING PERFORMANCE

    I. IF AT ANY TIME THE CARRIAGE IS OR IS LIKELY TO BE AFFECTED BY
    ANY HINDRANCE, RISK, DELAY, DIFFICULTY OR DISADVANTAGE OF ANY KIND
    ( INCLUDING BY THE CONDITION OF THE GOODS ) WHENSOEVER AND
    HOWSOEVER ARISING WHETHER OR NOT PRIOR TO THE COMMENCEMENT OF THE
    CARRIAGE OR THE MAKING OF THE CONTRACT OF CARRIAGE, THE CARRIER
    MAY WITHOUT NOTICE TO THE MERCHANT:

   A. ABANDON THE CARRIAGE OF THE GOODS OR ANY PART OF THEM AND
      WHERE REASONABLY POSSIBLE PLACE THE GOODS OR ANY PART OF
      THEM AT THE MERCHANT'S DISPOSAL AT ANY PLACE WHICH THE
      CARRIER MAY DEEM SAFE AND CONVENIENT, WHEREUPON THE
      RESPONSIBILITY OF THE CARRIER IN RESPECT OF SUCH GOODS SHALL
      CEASE.

   B. SUSPEND CARRIAGE OF THE GOODS OR ANY PART OF THEM AND STORE
      THEM ASHORE OR AFLOAT UPON THE TERMS OF THE BILL OF LADING
      AND USE REASONABLE ENDEAVOURS TO FORWARD THE GOODS AS SOON AS
      POSSIBLE AFTER THE CAUSE OF HINDRANCE, RISK, DELAY,
      DIFFICULTY OR DISADVANTAGE HAS BEEN REMOVED, BUT THE CARRIER
      MAKES NO REPRESENTATIONS AS TO THE MAXIMUM PERIOD BETWEEN
      SUCH REMOVAL AND THE FORWARDING OF THE GOODS TO THE PORT OF
      DISCHARGE OR PLACE OF DELIVERY, WHICHEVER IS APPLICABLE,
      NAMED IN THIS BILL OF LADING.

 II. IN ANY EVENT THE CARRIER SHALL BE ENTITLED TO FULL FREIGHT ON
    GOODS RECEIVED FOR CARRIAGE AND THE MERCHANT SHALL PAY ANY
    ADDITIONAL COST RESULTING FROM THR CIRCUMSTANCES MENTIONED IN
    CLAUSE 18 I.

III. IF THE CARRIER ELECTS TO SUSPEND THE CARRIAGE UNDER CLAUSE 18 I
    B, THIS SHALL NOT PREJUDICE THE CARRIER'S RIGHTS SUBSEQUENTLY
    TO ABANDON CARRIAGE UNDER CLAUSE 18 I A.

SECTION: 19   -   19. DANGEROUS, HAZARDOUS OR NOXIOUS GOODS


   I. NO GOODS WHICH ARE OR MAY BECOME INFLAMMABLE, EXPLOSIVE,
    CORROSIVE, NOXIOUS, HAZARDOUS, DANGEROUS OR DAMAGING ( INCLUDING
    RADIO-ACTIVE MATERIALS ), OR WHICH ARE OR MAY BECOME LIABLE TO
    DAMAGE ANY PROPERTY WHATSOEVER, SHALL BE TENDERED TO THE CARRIER
    FOR CARRIAGE WITHOUT ITS EXPRESS CONSENT IN WRITING AND WITHOUT
    THE CONTAINER OR OTHER COVERING IN WHICH THE GOODS ARE TO BE
    CARRIED AS WELL AS THE GOODS THEMSELVES BEING DISTINCTLY MARKED
    ON THE OUTSIDE SO AS TO INDICATE THE NATURE AND CHARACTER OF ANY
    LAWS, REGULATIONS OR REQUIREMENTS, IF ANY SUCH GOODS ARE DELIVERED
    TO THE CARRIER WITHOUT SUCH WRITTEN CONSENT AND MARKING, OR IF IN
    THE OPINION OF THE CARRIER THE GOODS ARE OR ARE LIABLE TO BECOME
    OF A DANGEROUS OR NOXIOUS NATURE, THE SAME MAY AT ANY TIME BE
    DESTROYED, DISPOSED OF, ABANDONED OR RENDERED HARMLESS WITHOUT
    COMPENSATION TO THE MERCHANT AND WITHOUT PREJUDICE TO THE
    CARRIER'S RIGHT TO FREIGHT AND THE CARRIER SHALL BE UNDER NO
    LIABILITY TO MAKE ANY GENERAL AVERAGE CONTRIBUTION IN RESPECT
    OF SUCH GOODS.

 II. THE MERCHANT UNDERTAKES THAT SUCH GOODS ARE PACKED IN A MANNER
    MADE ADEQUATE TO WITHSTAND THE RISK OF CARRIAGE HAVING REGARD TO
    THEIR NATURE AND IN COMPLIANCE WITH ALL LAWS OR REGULATIONS WHICH
    MAY BE APPLICABLE DURING CARRIAGE AND HANDLING.

III. WHETHER OR NOT THE MERCHANT WAS AWARE OF THE NATURE OF THE GOODS,
    THE MERCHANT SHALL INDEMNIFY THE CARRIER AGAINST ALL CLAIMS,
    LOSSES, DAMAGES, LIABILITIES OR EXPENSES ARISING IN CONSEQUENCE
    OF THE CARRIAGE OF SUCH GOODS.

    NOTHING CONTAINED IN THIS CLAUSE SHALL DEPRIVE THE CARRIER OF ANY
    OF ITS RIGHTS PROVIDED FOR ELSEWHERE IN THIS BILL OF LADING.

SECTION: 20    -    20. TEMPERATURE CONTROLLED CARGO

I. GOODS WILL NOT BE PROVIDED TEMPERATURE CONTROLLED, INSULATED OR
   NATURALLY VENTILATED STOWAGE UNLESS THE CARRIER HAS UNDERTAKEN
   SUCH SPECIAL STOWAGE IN ADVANCE OF THE CARRIER'S RECEIPT OF THE
   GOODS, AND IN THE ABSENCE OF SUCH AGREEMENT, THE MERCHANT
   WARRANTS THAT THE GOODS DO NOT REQUIRE SUCH PROTECTION.  THE
   CARRIER DOES NOT PROVIDE MECHANICALLY VENTIALTED STOWAGE, AND DOES
   NOT FURNISH OR MAINTAIN PRESERVATIVE GASSES IN CONNECTION WITH
   TEMPERATURE CONTROLLED STOWAGE, AND THE CARRIER ASSUMES NO
   RESPONSIBILITY FOR LOSS OF OR DAMAGE TO GOODS ARISING IN WHOLE
   OR IN PART FROM ANY LACK OF SUCH STOWAGE.

II. THE CARRIER SHALL NOT BE LIABLE FOR ANY LOSS OF OR DAMAGE TO THE
    GOODS ARISING FROM THE LATENT DEFECTS, BREAKDOWN OR STOPPAGE OF
    THE REFRIGERATING MACHINERY, PLANT, INSULATION, OR OF ANY
    APPARATUS OF THE CONTAINER, VESSEL, CONVEYANCE OF OTHER FACILITIES
    UNLESS THE CARRIER SHALL, BEFORE OR AT THE BEGINNING OF THE
    CARRIAGE, HAVE FAILED TO EXERCISE DUE DILIGENCE TO MAINTAIN ANY
    SUCH EQUIPMENT ( OTHER THAN SHIPPER-PROVIDED EQUIPMENT ) IN AN
    EFFICIENT STATE.  IF THE GOODS HAVE BEEN PACKED INTO A
    REFRIGERATED CONTAINER, BY OR ON BEHALF OF THE SIHPPER, IT IS THE
    OBLIGATION OF THE SHIPPER TO STOW THE CONTENTS PROPERLY AND SET
    THERMOSTATIC CONTROLS EXACTLY; AND THE CARRIER WILL NOT BE LIABLE
    OF ANY LOSS OF OR DAMAGE TO THE GOODS ARISING OUT OF OR RESULTING
    FROM THE SHIPPER'S FAILURE IN SUCH OBLIGATIONS.  IF THE CARRIER
    HAS PACKED THE GOODS INTO A REFRIGERATED CONTAINER, AND A
    TEMPERATURE OR TEMPERATURE RANGE HAS BEEN DISCLOSED TO THE CARRIER
    BY THE SHIPPER OR ITS AUTHORIZED REPRESENTATIVE, CARRIER WILL
    SET THE THERMOSTATIC CONTROL ACCORDINGLY.

III. WITH RESPECT TO BOTH CARRIER-AND SHIPPER-PACKED CONTAINERS, WHERE
     CARRIER HAS UNDERTAKEN, BY SPECIAL AGREEMENT, TO CARRY THE GOODS
     AT A PARTICULAR TEMPERATURE OR TEMPERATURE RANGE, THE CARRIER
     UNDERTAKES ONLY THAT THE REFRIGERATION EQUIPMENT SHALL PERFORM
     WITHIN THE OPERATING SPECIFICATIONS OF THE EQUIPMENT AND MAKES
     NO WARRANTY OR AGREEMENT WITH RESPECT TO THE ACTUAL TEMPERATURE
     OF ANY COMMODITY, FRUIT, VEGETABLE, MEAT, FISH OR ANY PERISHABLE
     GOODS WITHIN THE CONTAINER.

SECTION: 21    -    21. DELIVERY

I. ANY MENTION HEREIN OF PARTIES TO BE NOTIFIED OF THE ARRIVAL OF
   THE GOODS IS SOLELY FOR THE INFORMATION OF THE CARRIER, AND
   FAILURE TO GIVE SUCH NOTIFICATION SHALL NOT INVOLVE THE CARRIER
   IN ANY LIABILITY NOR RELIEVE THE MERCHANT OF ANY OBLIGATION
   HEREUNDER NOTWITHSTANDING ANY CUSTOM OR AGREEMENT TO THE CONTRARY.

II. IF NO PLACE OF DELIVERY IS NAMED ON THE FACE HEREOF, THE CARRIER
    SHALL BE AT LIBERTY TO DISCHARGE THE GOODS AT THE PORT OF
    DISCHARGE, WITHOUT NOTICE AT OR ONTO ANY WHARF, CRAFT OR PLACE,
    ON ANY DAY AND AT ANY TIME, WHEREUPON THE LIABILITY OF THE CARRIER
    ( IF ANY ) IN RESPECT OF THE GOODS DISCHARGED AS AFORESAID SHALL
    WHOLLY CEASE, NOTWITHSTANDING ANY CHARGES, DUES OR OTHER EXPENSES
    THAT MAY BE OR BECOME PAYABLE, UNLESS AND TO THE EXTENT THAT ANY
    APPLICABLE COMPULSORY LAW PROVIDES TO THE CONTRARY ( IN WHICH
    CASE THE TERMS AND CONDITIONS OF THIS BILL OF LADING SHALL
    CONTINUE DURING SUCH ADDITIONAL COMPULSORY PERIOD OF

RESPONSIBILITY ).  THE MERCHANT SHALL TAKE DELIVERY OF THE GOODS
UPON DISCHARGE.

III.  IF A PLACE OF DELIVERY IS NAMED ON THE FACE HEREOF, THE MERCHANT
SHALL TAKE DELIVERY OF THE GOODS WITHIN THE TIME PROVIDED FOR IN
THE CARRIER'S APPLICABLE TARIFF ( SEE CLAUSE 2 ).

IV.  IF THE DELIVERY OF THE GOODS IS NOT TAKEN BY THE MERCHANT WHEN AND
WHERE THE CARRIER IS ENTITLED TO CALL UPON THE MERCHANT TO TAKE
DELIVERY THEREOF, THE CARRIER SHALL BE ENTITLED, WITHOUT NOTICE,
TO UNPACK THE GOODS IF PACKED IN CONTAINER AND/OR TO STORE THE
GOODS ASHORE, AFLOAT, IN THE OPEN OR UNDER COVER, AT THE SOLE RISK
OF THE MERCHANT.  SUCH STORAGE SHALL CONSTITUTE DUE DELIVERY
HEREUNDER, AND THEREUPON THE LIABILITY OF THE CARRIER IN RESPECT
OF THE GOODS STORED AS AFORESAID SHALL WHOLLY CEASE, AND THE COSTS
OF SUCH STORAGE ( IF PAID OR PAYABLE BY THE CARRIER OR ANY AGENT
OR SUB-CONTRACTOR OF THE CARRIER ) SHALL FORTHWITH UPON DEMAND
BE PAID BY THE MERCHANT TO THE CARRIER.

V.  IF THE MERCHANT FAILS TO TAKE DELIVERY OF THE GOODS WITHIN THIRTY
DAYS OF DELIVERY BECOMING DUE UNDER CLAUSE 23 II OR III, OR IF IN
THE OPINION OF THE CARRIER THEY ARE LIKELY TO DETERIORATE, DECAY,
BECOME WORTHLESS OR INCUR CHARGES WHETHER FOR STORAGE OR OTHERWISE
IN EXCESS OF THEIR VALUE, THE CARRIER MAY, WITHOUT PREJUDICE TO
ANY OTHER RIGHTS WHICH IT MAY HAVE AGAINST THE MERCHANT, WITHOUT
NOTICE AND WITHOUT ANY RESPONSIBILITY WHATSOEVER ATTACHING TO HIM
AND AT THE SOLE RISK AND EXPENSE OF THE MERCHANT, SELL, DESTROY
OR DISPOSE OF THE GOODS AND APPLY ANY PROCEEDS OF SALE IN
REDUCTION OF THE SUMS DUE TO THE CARRIER FROM THE MERCHANT IN
RESPECT OF THIS BILL OF LADING.

VI.  IF, AT THE PLACE WHERE THE CARRIER IS ENTITLED TO CALL UPON THE
MERCHANT TO TAKE DELIVERY OF THE GOODS UNDER CLAUSE 23 II)OR III),
THE CARRIER IS OBLIGED TO HAND OVER THE GOODS INTO THE CUSTODY OF
ANY CUSTOMS, PORT OR OTHER AUTHORITY. SUCH HAND-OVER SHALL
CONSTITUTE DUE DELIVERY TO THE MERCHANT UNDER THIS BILL OF LADING.

VII.  FAILURE BY THE MERCHANT TO TAKE DELIVERY OF THE GOODS IN
ACCORDANCE WITH THE TERMS OF THIS CLAUSE, NOTWITHSTANDING HIS
HAVING BEEN NOTIFIED OF THE AVAILABILITY OF THE GOODS FOR
DELIVERY, SHALL CONSTITUTE A WAIVER BY THE MERCHANT TO THE CARRIER
OF ANY CLAIM WHATSOEVER RELATING TO THE GOODS OR THE CARRIAGE
THEREOF.

VIII.  IN THE EVENT OF THE CARRIER AGREEING, AT THE REQUEST OF THE
MERCHANT, TO ANY CHANGE OF DESTINATION, THE TERMS OF THIS BILL OF
LADING SHALL CONTINUE TO APPLY UNTIL THE GOODS ARE DELIVERED BY
THE CARRIER TO THE MERCHANT AT THE AMENDED PORT OF DISCHARGE OR
PLACE OF DELIVERY WHICHEVER IS APPLICABLE, UNLESS THE CARRIER
SPECIFICALLY AGREES IN WRITING TO CONTRARY.

IX.  THE MERCHANT'S ATTENTION IS DRAWN TO THE STIPULATIONS CONCERNING
FREE STORAGE TIME AND DEMURRAGE CONTAINED IN THE APPLICABLE
TARIFF.

SECTION: 22    -   22. TRASHIPMENT BILLS OF LADING


IF THE GOODS ARE TO BE TRASHIPPED VIA A CONNECTING CARRIER TO A
DESTINATION POINT BEYOND THE PLACE OF DELIVERY STATED ON THE FACE

HEREOF, CARRIER MAY, ON BEHALF OF THE MERCHANT AND ACTING SOLELY
AS THEIR AGENT, ARRANGE FOR SUCH BEYOND CARRIAGE CONSISTENT WITH
INSTRUCTIONS RECEIVED FROM THE MERCHANT AT THEIR RISK AND EXPENSE.
IN SUCH EVENT, THE CARRIER MAY DELIVER THE GOODS TO THE CONNECTING
CARRIER WITHOUT SURRENDER OF THE CARRIER'S ORIGINAL, PROPERLY
ENDORSED BILL OF LADING AND UPON REQUEST BY THE MERCHANT, SHALL
OBTAIN THE CONNECTING CARRIER'S ACKNOWLEDGEMENT THAT DELIVERY OF THE
GOODS SHALL BE MADE ONLY UPON SURRENDER OF THE CARRIER'S ORIGINAL,
PROPERLY ENDORSED BILL OF LADING.

SECTION: 23    -    23. BOTH-TO-BLAME COLLISION


THE BOTH-TO-BLAME COLLISION CLAUSE PUBLISHED BY THE BALTIC AND
INTERNATIONAL MARITIME COUNCIL AND OBTAINABLE FROM THE CARRIER OR
ITS AGENTS UPON REQUEST IS HEREBY INCORPORATED INTO THIS BILL OF
LADING.

SECTION: 24    -    24. GENERAL AVERAGE


I. GENERAL AVERAGE SHALL BE ADJUSTED AT ANY PORT OR PLACE AT THE
   OPTION OF THE CARRIER AND THE SUBJECT TO CLAUSE 16 II IN
   ACORDANCE WITH THE YORK ANTWRP RULES 1994, PROVIDED THAT WHERE
   AN ADJUSTMENT IS MADE IN ACCORDANCE WITH THE LAW AND PRACTICEE
   OF THE UNITED STATES OF AMERICA OR OF ANY OTHER COUNTRY HAVING
   THE SAME OR SIMILAR LAW OR PRACTICE THE FOLLWOING CLAUSES SHALL
   APPLY: -

   NEW JASON CLAUSE

   A. IN THE EVENT OF ACCIDENT, DAMAGE, PERIL OR DISASTER, BEFORE
      OR AFTER THE COMMENCEMENT OF THE VOYAGE RESULTING FROM ANY
      CAUSE WHATSOEVER, WHETHER DUE TO NEGLIGENCE OR NOT, FOR WHICH
      OR THE CONSEQUENCE OF WHICH, THE CARRIER IS NOT RESPONSIBLE,
      BY STATUTE, CONTRACT, OR OTHERWISE, THE GOODS AND THE
      MERCHANT SHALL JOINTLY AND SEVERALLY CONTRIBUTE WITH THE
      CARRIER IN GENERAL AVERAGE TO THE PAYMENT OF ANY SACRIFICES
      LOSSES OR EXPENSES OF A GENERAL AVERAGE NATURE THAT MAY BE
      MADE OR INCURRED AND SHALL PAY SALVAGE AND SPECIAL CHARGES
      INCURRED IN RESPECT OF THE GOODS.

   B. IF A SALVING VESSEL IS OWNED OR OPERATED BY THE CARRIER,
      SALVAGE SHALL BE PAID FOR AS FULLY AS IF THE SAID SALVING
      VESSEL BELONGED TO STRANGERS.

II. IF THE CARRIER DELIVERS THE GOODS WITHOUT OBTAINING SECURITY FOR
    GENERAL AVERAGE CONTRIBUTIONS, THE MERCHANT BY TAKING DELIVERY
    OF THE GOODS, UNDERTAKES PERSONAL RESPONSIBILITY TO PAY SUCH
    CONTRIBUTIONS AND TO PROVIDE SUCH CASH DEPOSIT OR OTHER SECURITY
    FOR THE ESTIMATED AMOUNT OF SUCH CONTRIBUTIONS AS THE CARRIER
    SHALL REASONABLY REQUIRE.

III. THE CARRIER SHALL BE UNDER NO OBLIGATION TO EXERCISE ANY LIEN
     FOR GENERAL AVERAGE CONTRIBUTION DUE TO THE MERCHANT.

SECTION: 25    -    25. WAR RISKS; GOVERNMENTAL ORDERS


THE CARRIER SHALL HAVE LIBERTY TO CARRY GOODS DECLARED BY ANY

BELLIGERENT TO BE CONTRABAND AND PERSONS BELONGING TO OR INTENDING
JOIN THE ARMED FORCES OR GOVERNMENTAL SERVICE OF ANY BELLIGERENT; TO
SAIL ARMED OR UNARMED AND WITH OR WITHOUT CONVOY; AND TO COMPLY WITH
ANY ORDERS, REQUESTS OR DIRECTIONS AS TO LOADING, DEPARTURE, ARRIVAL,
ROUTES, PORTS OF CALL, STOPPAGE, DISCHARGE, DESTINATION, DELIVERY OR
OTHERWISE, HOWSOEVER GIVEN BY THE GOVERNMENT OF ANY NATION OR
DEPARTMENT THEREOF OR ANY PERSON ACTING OR PURPORTING TO ACT WITH THE
AUTHORITY OF SUCH GOVERNMENT OR OF ANY DEPARTMENT THEREOF, OR BY ANY
COMMITTEE OR PERSON HAVING, UNDER THE TERMS OF THE WAR RISK INSURANCE
ON THE VESSEL, THE RIGHT TO GIVE SUCH ORDERS, REQUESTS OR DIRECTIONS.
DELIVERY OR OTHER DISPOSITION OF THE GOODS IN ACCORDANCE WITH SUCH
ORDERS, REQUESTS OR DIRECTIONS SHALL CONSTITUTE PERFORMANCE OF THE
CARRIER'S DELIVERY OBLIGATIONS UNDER THE TERMS OF THIS BILL OF LADING
AND ALL RESPONSIBILITY OF THE CARRIER, IN WHATEVER CAPACITY, SHALL
TERMINATE UPON SUCH DELIVERY OR OTHER DISPOSITION.

SECTION: 26    -    26. VARIATION OF THE CONTRACT


NO SERVANT OR AGENT OF THE CARRIER SHALL HAVE THE POWER TO WAIVE
OR VARY ANY TERM OF THIS BILL OF LADING UNLESS SUCH WAIVER OR
VARIATION IS IN WRITING AND IS SPECIFICALLY AUTHORIZED OR RATIFIED IN
WRITING BY THE CARRIER.

SECTION: 27    -    27. VALIDITY


IN THE EVENT THAT ANYTHING HEREIN CONTAINED IS INCONSISTENT WITH
ANY APPLICABLE INTERNATIONAL CONVENTIONAL OR NATIONAL LAW WHICH
CANNOT BE DEPARTED FROM BY PRIVATE CONTRACT, THE PROVISIONS HEREOF
SHALL TO THE EXTENT OF EACH INCONSISTENCY BUT NO FURTHER BE NULL
AND VOID.

SECTION: 28    -    28. LAW AND JURISDICTION


I. GOVERNING LAW

    INSOFAR AS ANYTHING HAS NOT BEEN DEALT WITH BY THE TERMS AND
    CONDITIONS OF THIS BILL OF LADING, SINGAPORE LAW SHALL APPLY.
    SINGAPORE LAW SHALL IN ANY EVENT APPLY IN INTERPRETING THE TERMS
    AND CONDITIONS HEREOF.

II. JURISDICTION

    ALL DISPUTES RELATING TO THIS BILL OF LADING SHALL BE DETERMINED
    BY THE COURTS OF SINGAPORE TO THE EXCLUSION OF THE JURISDICTION OF
    THE COURTS OF ANY OTHER COUNTRY PROVIDED ALWAYS THAT THE CARRIER
    MAY IN ITS ABSOLUTE AND SOLE DISCRETION INVOKE OR VOLUNTARILY
    SUBMIT TO THE JURISDICTION OF THE COURTS OF ANY OTHER COUNTRY
    WHICH, BUT FOR THE TERMS OF THIS BILL OF LADING, COULD PROPERLY
    ASSUME JURISDICTION TO HEAR AND DETERMINE SUCH DISPUTES, BUT SHALL
    NOT CONSTITUTE A WAIVER OF THE TERMS OF THIS PROVISION IN ANY
    OTHER INSTANCE.

III. NOTWITHSTANDING CLAUSE 28 I)AND II), IF CARRIAGE INCLUDES TO, FROM
    OR THROUGH A PORT IN THE UNITED STATES OF AMERICA, THE MERCHANT
    MAY REFER ANY CLAIM OR DISPUTE TO THE UNITED STATES DISTRICT COURT
    FOR THE SOUTHERN DISTRICT OF NEW YORK IN ACCORDANCE WITH THE LAWS
    OF THE  UNITED STATES OF AMERICA.

# EXHIBIT B

1  Marilyn Raia, SBN 072320
   Ronald L. Richman, SBN 139189
2  601 California Street, Suite 1800
   San Francisco, California 94108
3  Telephone: 415.352.2700
   Facsimile: 415.352.2701
4  E-Mail: ron.richman@bullivant.com

5  Attorneys for DefendantS
   U.G. Co., Inc. dba Universal Grocers and
6  Kamdar Global LLC

7

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10                     SAN FRANCISCO DIVISION

11 | APL CO. PTE. LTD.,                    | Case No.: C 05-0646 MHP

12 |              Plaintiff,               | **DECLARATION OF MARILYN RAIA IN**
                                          | **SUPPORT OF OPPOSITION TO**
13 |       vs.                             | **MOTION FOR ATTORNEYS FEES**

14 | U.K. AEROSOLS LTD., U.G. CO. INC., doing | Date: August 27, 2007
   | business as UNIVERSAL GROCERS CO., and | Time: 2:00 PM
15 | KAMDAR GLOBAL, LLC,

16 |              Defendants.

17

18      I, Marilyn Raia, declare under penalty of perjury as follows:

19      1.      I am of counsel to the firm of Bullivant Houser Bailey and lead counsel for

20              defendants UG Co. Inc and Kamdar Global, LLC.

21      2.      I have personal knowledge of the matters set forth in this declaration based

22              upon my work on this case, and my experience in the maritime law field in

23              San Francisco and could testify thereto if called as a witnesses.

24      3.      I am a 1976 graduate of UC Hastings College of the Law. After my

25              admission to the California Bar in December 1976 I joined the firm of Derby

26              Cook Quinby & Tweedt and practiced maritime law with that firm until it

27              merged with Bullivant Houser Bailey in 2000. I have continued to practice

28              maritime law at Bullivant Houser Bailey since the merger. I have written

                                        - 1 -
   DECLARATION OF MARILYN RAIA IN SUPPORT OF OPPOSITION TO MOTION FOR
                          ATTORNEYS FEES

articles on maritime law topics, I write a quarterly maritime law and marine insurance newsletter for my firm and I have co-taught the Carriage of Goods/Carriage of Passengers by Sea course at the University of San Francisco Law School. I agree with Mr. Donovan that this case presented some novel and complex issues of maritime law.

4.   I have personal knowledge of the rates charged in San Francisco by three maritime law firms who have attorneys with experience equivalent to or exceeding that of APL's counsel, Charles Donovan, Amy Norris and Brenna Moorhead. Those firms are: 1) Cox Wootton Griffin Hansen & Poulos; 2) Emard Danoff Port Tamulski & Paetzold and 3) Gibson Robb & Lindh. I have gained this knowledge from 1) my representation of the same clients as those other counsel and 2) from my role as counsel for excess liability insurers which required me to review bills from other maritime counsel in San Francisco and recommend payment based upon reasonableness of hourly rate and time spent.

5.   The highest current hourly rate for maritime work in San Francisco that I am aware of is $300. That rate is for senior attorneys with experience comparable to Mr. Donovan's and greatly exceeding that of Ms. Norris or Ms. Moorhead.

6.   I have attended many of the court proceedings in this matter as well as the ENE session and depositions. On most of those occasions, APL was represented by more than one attorney. I cannot determine from the very few documents submitted by APL in support of its motion for attorneys fees whether the amount being sought includes fees for more than one attorney attending a proceeding. I also cannot determine whether the time billed was reasonable or even consistent with the time billed by my firm for the same activities.

7.   I also have personal knowledge of the invoices that were sent to our client for the defense of this case. The amount that we have billed to our client on this

DECLARATION OF MARILYN RAIA IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEYS FEES

file for fees in defending two parties is approximately $128,000 and like those claimed by APL, did not include significant effort in connection with co-defendant Imp-Ex.

Executed at San Francisco, CA this 3ᵈ day of August, 2007.

Marilyn Raia

6083997.1

DECLARATION OF MARILYN RAIA IN SUPPORT OF OPPOSITION TO MOTION FOR
ATTORNEYS FEES