UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

APL CO. PTE. LTD.,

        Plaintiff,

    v.

UK AEROSOLS LTD., INC.; U.G. CO., INC. dba Universal Grocers Co.; KAMDAR GLOBAL, LLC,

        Defendants.

No. C 05-0646 MHP

**MEMORANDUM & ORDER**
**Re: Plaintiff's Motion for Attorneys' Fees**

On February 11, 2005 plaintiff APL Co. Pte. Ltd. ("APL") brought this breach of contract and negligence action against defendants UK Aerosols Ltd. ("UKA"), U.G. Co., Inc. ("U.G."), and Kamdar Global, LLC ("Kamdar"). On December 18, 2006 APL, U.G. and Kamdar filed cross motions for summary judgment. On February 23, 2007 the court granted summary judgment in favor of APL and denied U.G. and Kamdar's motion for summary judgment. On March 8, 2007 the parties filed their stipulation regarding damages. On June 25, 2007 the court issued an order granting APL's motion for entry of judgment. Now before the court is APL's motion for attorneys' fees. The court has considered the parties' arguments fully, and for the reasons set forth below, the court rules as follows.

BACKGROUND[1]

Plaintiff APL is a Singapore corporation with its principal place of business in Singapore. APL is qualified to do business in California. Defendant UKA is an English company with its principal place of business in England. Defendant U.G. is a California company with its principal place of business in California. Defendant Kamdar is an Illinois limited liability company with its principal place of business in California.

UKA sent a request to plaintiff APL asking that APL send a cargo of 717,120 spray cans and 59,760 cartons of hair spray and mousse (the "goods") from Istanbul, Turkey to California. Pursuant to this request, on October 8, 2003, plaintiff issued its bill of lading APLU No. 800701216 (the "bill of lading") to govern the terms of the carriage. On November 23, 2003, after the goods arrived in California, APL discovered that the shipment was "leaking, dangerous and hazardous." Plaintiff then spent approximately $700,000 in assessing, cleaning, removing and eventually destroying the goods. The ensuing litigation is described in earlier orders of this court.

On July 9, 2007 plaintiff filed a motion for attorneys' fees. The issue facing the court is whether attorneys' fees should be awarded in accordance with Singapore law. Pursuant to clause 28(I) of the bill of lading, "[i]nsofar as anything has not been dealt with by the terms and conditions of the bill of lading, Singapore law shall apply." Plaintiff asserts that this clause requires application of Singapore law, which follows the English Rule that attorneys' fees be awarded to the prevailing party. In response, defendants make four arguments. First, that U.S. law should govern because the bill of lading is ambiguous. Second, that the Carriage of Goods By Sea Act (hereinafter "COGSA")[2] should govern the question of attorneys' fees because clause 28(I) is superceded by other clauses of the bill of lading. Third, that Singapore law does not apply because plaintiff failed to provide reasonable notice of its intent to apply Singapore law as required by Federal Rule of Civil Procedure 44.1. Fourth, that plaintiff should be judicially estopped from arguing that Singapore law should govern the determination of attorneys' fees because plaintiff has taken inconsistent positions over the course of this litigation. Consequently, defendants assert that the federal common law of admiralty, which only provides for attorneys' fees in exceptional cases, governs this dispute.

DISCUSSION

This case was brought before the court pursuant to its admiralty jurisdiction. The power of the federal courts extends to "all Cases of admiralty and maritime jurisdiction." U.S. Const. art. III, § 2. Congress has further established that the district courts have original jurisdiction in "[a]ny civil case of admiralty or maritime jurisdiction." 28 U.S.C. § 1333. It is well-established that admiralty

2

jurisdiction requires the application of substantive admiralty law. See Insurance Co. v. Dunham, 78 U.S. (11 Wall.) 1, 25 (1870) ("[a]dmiralty jurisdiction defines . . . the place or territory where the law [of] maritime prevails").

COGSA is applicable *ex proprio vigore* "to all contracts for the carriage of goods by sea to or from ports of the United States in foreign trade." 46 U.S.C. § 1312. It sets out rules for the predictable allocation of risk between shippers and carriers in contracts for the shipment of goods. See Senator Linie GMBH & Co. KG v. Sunway Line, Inc., 291 F.3d 145, 148 (2d Cir. 2002). "COGSA governs the relationship between the parties where a bill of lading is issued as the contract of carriage." 1 Thomas J. Schoenbaum, Admiralty and Maritime Law § 4-1 at 650 (4th ed. 2004). The parties agree that the bill of lading is generally governed by COGSA.[3]

I.  The Choice of Law Provision

The issue presented is whether the bill of lading's choice of law provision in clause 28 mandates that Singapore law govern the attorneys' fees determination. Plaintiff argues that the choice of Singapore law should be enforced under the Second Restatement of the Conflict of Laws ("Restatement"). In actions based upon federal question jurisdiction, including admiralty, choice of law determinations are governed by federal common law, which follows the Restatement. Chan v. Society Expeditions, Inc., 123 F.3d 1287, 1297 (9th Cir. 1997). A court may give effect to a choice of law provision in a bill of lading where "the law chosen has a reasonable relation to the parties and the transaction and is not contrary to a fundamental policy of the forum state." Restatement (Second) of Conflict of Laws § 187(2)(a)–(b) (1971).

Before the court embarks upon that analysis, however, it must determine which one of the numerous provisions designating differing legal regimes in the bill of lading is to be given effect. Bills of lading are contracts of adhesion and, as such, ambiguities are strictly construed against the carrier. The Caledonia, 157 U.S. 124, 137 (1895); see also Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 62 (1995). Applying these principals to the present action, the court finds that plaintiff's bill of lading contains fatal ambiguities. Clause 6 of the bill of lading states that the

3

provisions of COGSA "shall apply on all shipments to or from the United States whether compulsorily applicable or not," Def.'s Opp., Exh. A at 14, whereas clause 28(I) provides for the application of Singapore law "[i]nsofar as anything has not been dealt with by the terms and conditions of this bill of lading." Id. at 25. The bill of lading, however, fails to adequately provide for the situation at hand. Thus, clause 6 creates ambiguity about the scope of clause 28(I)'s choice of law provision. Because plaintiff drafted an ambiguous document it "cannot now claim the benefit of the doubt." Mastrobuono, 514 U.S. at 63. United States law, including COGSA, was applied during the liability phase of this action. Moreover, plaintiff has conceded that "COGSA governs this bill of lading." Pl.'s Reply at 1. Thus, United States admiralty governs the plaintiff's request for attorneys' fees. COGSA, following the American Rule, does not grant attorneys' fees to a prevailing party. See, e.g., Noritake Co., Inc. v. M/V Hellenic Champion, 627 F.2d 724, 730 (5th Cir. 1980).

    Even if there were no ambiguity, Clause 6 governs. Under the general maritime law of contracts, "freedom of contract is the norm so that rights, duties, [and] liability depend primarily upon the substance of the parties' agreement." Schoenbaum, supra, § 5-1 at 181. While freedom of contract in maritime contracts is the norm, the parties are restrained by COGSA. "COGSA allows a freedom of contracting out of its terms, but only in the direction of increasing the [carrier's] liabilities, and never in the direction of diminishing them." Sun Oil Co. v. M/T Carisle, 771 F.2d 805, 813 (3d Cir. 1985) (internal quotations omitted). It is undisputed that general contractual principles govern the interpretation of the bill of lading. Consequently, it stands to reason that the terms and conditions of the bill of lading will dictate the choice of law in the first instance. Pursuant to the bill of lading's "Clause Paramount" (clause 6) the parties agreed that the provisions of COGSA "shall apply on all shipments to or from the United States whether compulsorily applicable or not." Def.'s Opp., Exh. A at 14.

    On the other hand, clause 28(I) is couched in terms that significantly impair its applicability in the case at bar. Clause 28(I) merely states that "[i]nsofar as anything has not been dealt with by the terms and conditions of this bill of lading, Singapore law shall apply." While the precise metes

4

and bounds of the choice of law provision are unclear, it is apparent that shipments to and from the United States are "dealt with" in clause 6 of the bill of lading. More specifically, clause 6 dictates that COGSA "shall apply" to shipments to or from the United States. The underlying dispute in this action involved a shipment of goods from Istanbul, Turkey to California; the dispute is governed by clause 6 of the bill of lading and COGSA controls.

Plaintiff cites Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer, 515 U.S. 528 (1995), for the proposition that COGSA should govern only questions of liability whereas Singapore law should be used to interpret all other issues. In Vimar Seguros, the Supreme Court held that foreign arbitration clauses in maritime bills of lading are "not invalid under COGSA in all circumstances." 515 U.S. at 541. Bacchus Associates ("Bacchus"), a New York fruit distributor, contracted with Galaxie Negoce, S.A. to have a shipload of fruit transported from Morocco to Massachusetts. Id. at 530. When the ship arrived in Massachusetts, it was discovered that the thousands of boxes had shifted in the cargo holds, resulting in over one million dollars in damage. Id. at 531. Bacchus received over seven hundred thousand dollars from its cargo insurer, Vimar Seguros y Reaseguros ("Vimar Seguros"). Id. Bachus and Vimar Seguros brought suit in the District Court for the District of Massachusetts under the bill of lading. Id. Subsequently, the defendants moved to stay the action and compel arbitration under the bill of lading's arbitration clause. Id. The primary question before the Court was whether a foreign arbitration clause could be given effect despite the limitation in section 3(8) of COGSA that renders null and void "any clause, covenant, or agreement in a contract for carriage" which relieves the carrier "from liability for loss or damage to or in connection with the goods, arising from negligence, fault, or failure in the duties and obligations provided in this clause . . . ." See id. at 534 (quoting 46 U.S.C.App. § 1303(8)). Addressing the distributor's contention that section 3(8) of COGSA required the invalidation of the bill of lading's forum selection clause, the Court explained that section 3(8) merely prohibits carriers from contracting out of "specific liability imposed by the act, without addressing the separate question of the means and costs of enforcing that liability." Id. at 534. Consequently, the Court held that because the forum selection clause did not lessen liability in a manner prohibited by COGSA it was not invalid per se. See id. at 534–39.

5

1  The Court also found that the Vimar Seguro's claim against the bill of lading's choice of law
2  provision was not ripe, holding that "mere speculation that the foreign arbitrators might apply
3  Japanese law which, depending on the proper construction of COGSA, might reduce respondents'
4  legal obligations, does not in and of itself lessen liability under COGSA." Id. at 541. Nevertheless,
5  the Court stressed that faithful application of COGSA was ensured because the District Court
6  "retained jurisdiction . . . to ensure that the legitimate interest in the enforcement of the . . . laws has
7  been addressed." Id. at 540 (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473
8  U.S. 614, 638 (1985) (internal quotations omitted)).

Vimar Seguros does not speak to the circumstances of this action. Defendants do not argue that section 3(8) invalidates the bill of lading's choice of law provision. Rather, defendants contend only that the choice of law provision has been superseded by clause 6. Clause 6 of the bill of lading applies only to a narrow subset of disputes, namely, disputes arising between the parties concerning shipments of goods to or from the United States. Where clause 6 does not apply and where the bill of lading is otherwise silent, clause 28(I) serves as a catchall provision and provides for the application of Singapore law. In the present action, where the underlying facts involve a shipment of goods from Istanbul, Turkey to California, the choice of law was dictated by clause 6. As such, the catchall choice of law provision is not applicable; COGSA governs the attorneys' fees determination. U.S. law only grants attorneys' fees to a prevailing party where provided by statute or contract. Silence is to be used as a signal that attorneys' fees were not contemplated by the parties, not for the proposition that they were not "dealt with."

II.     Rule 44.1

"A party who intends to raise an issue concerning the law of a foreign country shall give notice by pleadings or other reasonable written notice." Fed. R. Civ. P. 44.1. This rule was promulgated to protect litigants from being subject to "unfair surprise." Fed R. Civ. P. 44.1 advisory committee's note. While Rule 44.1 does not set a "definite limit" on the time by which a party must give notice of an issue of foreign law, the advisory committee's notes provide that a court, in

6

determining the reasonableness of the notice given, should consider: (1) the stage of the case when notice was given; (2) the reason for delay; and (3) the importance of the issue to the case as a whole. Id. Nevertheless, the Ninth Circuit has held that "[a]bsent extenuating circumstances, notice of issues of foreign law that reasonably would be expected to be part of the proceedings should be provided in the pretial conference and contentions about the applicability of foreign law should be incorporated in the pretrial order." DP Aviation v. Smiths Indus. Aerospace & Defense Sys. Ltd., 268 F.3d 829, 848 (9th Cir. 2001).

In the instant action, plaintiff filed its complaint on February 11, 2005. The pleadings did not mention the choice of law provision or otherwise suggest that Singapore law might govern attorneys' fees. Later, in its July 26, 2006 opposition to defendants' motion for summary judgment, plaintiff first noted the presence of a choice of law provision designating Singapore law and reserved the right "to contend that Singapore law governs the contract at issue in this case." See Docket No. 75 at 4, n.2. Plaintiff's reservation, however, occurred in the broader context of its own forceful argument that the bill of lading was a "COGSA-governed contract." Id. at 4. This vague and ambiguous reservation did little to provide defendants with reasonable notice that plaintiff, while advocating for COGSA-based liability, would move to apply Singapore law to the issue of attorneys' fees.

Moreover, at no time prior to its July 9, 2007 post-judgment motion for attorneys' fees did plaintiff provide any indication that it would seek to apply Singapore law to the issue of attorneys' fees. Neither did plaintiff provide the court with any explanation for its delay. While notice given during trial may be reasonable when the issue was not previously apparent, "in the absence of extenuating circumstances, a party should not be permitted to raise an issue of foreign law after the pretrial conference described in Rule 16 has been held." DP Aviation, 268 F.3d at 846–47 (internal quotations omitted).

Introducing an issue concerning the law of a foreign country at such a late stage in the litigation, without prior notice, is highly prejudicial to the defendants. Plaintiff could have reasonably anticipated that attorneys' fees would be an issue if liability was resolved in its favor.

7

Earlier notice would have afforded defendants a more appropriate measure of time to research Singapore law, consult and retain experts in Singapore law, and otherwise marshal an appropriate defense.[4] Plaintiff has not presented any extenuating circumstances demonstrating that "prior notice was impracticable or that the need for prior notice was not reasonably foreseeable." Id., at 849. Rule 44.1 requires plaintiff to provide reasonable notice of its intent to apply Singapore law with regard to attorneys' fees. Plaintiff failed to meet this obligation. Since COGSA has heretofore governed the interpretation of the bill of lading, COGSA shall apply in the assessment of attorneys' fees.

III.   Judicial Estoppel

The doctrine of judicial estoppel may be invoked to prevent a party from taking inconsistent positions in the same litigation. Yanez v. United States, 989 F.2d 323, 326 (9th Cir. 1993). Judicial estoppel "is an equitable doctrine invoked by a court at its discretion." Morris v. California, 966 F.2d 448, 452–53 (9th Cir.1991), cert. denied, 506 U.S. 831 (1992) (citations omitted). The aim of the doctrine is to protect the integrity of the courts by preventing a litigant from "playing fast and loose with the courts by taking inconsistent positions." Rockwell Intern. Corp. v. Hanford Atomic Metal Trades Council, 851 F.2d 1208, 1210 (9th Cir.1988) (internal quotations and citations omitted). Courts which have recognized the doctrine of judicial estoppel have followed two distinct approaches. The majority of circuits have held that a litigant will be judicially estopped from asserting a contrary position only where "the inconsistent statement was actually adopted by the court in the earlier litigation." Yanez, 989 F.2d at 326. Under the minority approach, "the doctrine applies even if the litigant was unsuccessful in asserting the inconsistent position." Id.

Defendants argue that judicial estoppel is particularly apt in a COGSA action. Defendants first note that COGSA applies *ex proprio vigore* to all bills of lading for carriage of goods to or from the United States. See 46 U.S.C. App. § 1300. Defendants further argue that the plaintiff should be judicially estopped from requesting attorneys' fees under Singapore law because plaintiff's bill of

lading expressly incorporates COGSA.  Moreover, during the liability phase of this action plaintiff asserted, and obtained relief by arguing, that bill of lading is governed by COGSA.

In response, plaintiff contends that judicial estoppel is not applicable here because it has maintained a consistent position throughout this litigation.  Plaintiff argues that there has been no inconsistency to its position because, while relying upon COGSA with respect to arguments made in favor of liability, it was careful to expressly reserve the right to apply Singapore law to "other issues in this case" in its motion for summary judgment.  See Docket No. 67 at 11 n.3.

In assessing whether the plaintiff should be judicially estopped from applying Singapore law, the essential inquiry is whether a litigant has played fast and loose with the court by taking inconsistent positions.  See Yanez, 989 F.2d at 326.  Here, plaintiff has surely stretched the boundaries by asserting that two wholly separate legal regimes should govern the interpretation of a single contract.  Moreover, the assertion is all the more dubious because the language in the bill of lading does not clearly support the application of Singapore law to attorneys' fees.  The choice of law provision is a vaguely worded catchall provision that sheds little light on the precise contours of the issue before the court.  Yet, the court cannot say that plaintiff has played fast and loose with the court by taking either inconsistent factual or legal positions.  Even while advocating for the application of COGSA in specific instances, plaintiff expressly reserved the right to have Singapore law govern other issues.  Thus, plaintiff's position has been more ambiguous than inconsistent.  Therefore, the doctrine of judicial estoppel does not apply.

IV.     Attorneys' Fees Under COGSA

The general rule that the prevailing party in an admiralty case is not entitled to attorneys' fees is firmly established in federal law.  See B.P. North America Trading, Inc. v. Vessel Panamax Nova, 784 F.2d 975, 977 (9th Cir. 1986), cert. denied, 479 U.S. 849 (1986) .  Congress did not abrogate this rule by expressly providing for attorneys' fees to the prevailing party in an action based upon COGSA.  The courts, however, have crafted certain exceptions to the general rule.  Broadly speaking, these exceptions are designed to "permit a plaintiff to recover a proportionate

9

share of his costs from others who benefit from his efforts without contributing to them." Id. (citations omitted). To obtain an award under these exceptions, the prevailing party must "stand in such a relationship to the benefitted class that the award will operate to spread the costs proportionately and with some exactitude among identifiable beneficiaries of the fee-seeker's success." Id. at 976 (citations and internal quotations omitted). In the instant action, the sole beneficiary of the judgment against defendants is plaintiff. Further, plaintiff has not presented any class of identifiable beneficiaries from whom contribution could be obtained. An attorneys' fees award in admiralty cases cannot be assessed only against an opposing party. No exception to the general rule exists in this action; and therefore, as a matter of law, APL is not entitled to attorneys' fees.

CONCLUSION

For the foregoing reasons, the court hereby DENIES plaintiff's motion for attorneys' fees.

IT IS SO ORDERED.

Dated: October 29, 2007

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

**ENDNOTES**

1. Unless otherwise noted, all facts are taken from the plaintiff's second amended complaint (the "Complaint" or "SAC").

2. Until recently COGSA was found at 46 U.S.C. section 1300, et seq. Nearly all decisional references to the statute are in this earlier citation format. In October 2006, Congress continued its recodification of Title 46 and has "temporarily" placed COGSA as an appendix to 46 U.S.C. section 30701. For ease of reference, however, the court will refer to the earlier location.

3. All statutory references are to COGSA.

4. Rule 44.1 provides: "The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed. R. Civ. P. 44.1.