**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

APL Co. Pte. Ltd.,
        *Plaintiff-Appellee,*

                v.

UK Aerosols Ltd.,
                *Defendant,*

Valley Forge Insurance
Company,
        *Defendant-intervenor,*

            and

U.G. Co., Inc., dba Universal
Grocers Co.; Kamdar Global
LLC,
        *Defendants-Appellants.*

No. 07-16739

D.C. No.
CV-05-00646-MHP

APL Co. Pte. Ltd.,
        *Plaintiff-Appellant,*

                v.

UK Aerosols Ltd.; U.G. Co.,
Inc., dba Universal Grocers Co.;
Kamdar Global LLC,
        *Defendants-Appellees,*

Valley Forge Insurance
Company,
        *Defendant-intervenor-Appellee.*

No. 08-15078

D.C. No.
CV-05-00646-MHP

OPINION

Appeals from the United States District Court
for the Northern District of California
Marilyn H. Patel, District Judge, Presiding

13671

13672          APL Co. Pte. Ltd. v. U.G. Co., Inc.

Argued and Submitted
March 12, 2009—San Francisco, California

Filed September 21, 2009

Before: J. Clifford Wallace, Sidney R. Thomas and
Jay S. Bybee, Circuit Judges.

Opinion by Judge Wallace

## COUNSEL

Marilyn Raia and Norman J. Ronneberg Jr., Bullivant Houser Bailey PC, San Francisco, California, for Valley Forge Insurance Company, defendant-intervenor for U.G. Co. Inc. and Kamdar Global LLC.

Charles S. Donovan, Amy B. Norris, Brenna E. Moorhead and Timothy C. Perry, Sheppard, Mullin, Richter & Hampton LLP, San Francisco, California, for APL Co. Pte. Ltd.

## OPINION

WALLACE, Senior Circuit Judge:

  U.G. Co., Inc. (U.G.) and Kamdar Global LLC (Kamdar) appeal from the district court's summary judgment in favor of APL Co. Pte. Ltd. (APL), based on the district court's holding

that U.G. and Kamdar have indemnification obligations to APL under the parties' bill of lading. APL appeals from the district court's denial of its motion for attorneys' fees. The district court had jurisdiction pursuant to 28 U.S.C. § 1333. We have jurisdiction over these timely filed appeals pursuant to 28 U.S.C. § 1291. We affirm the summary judgment of the district court. We reverse the district court's denial of attorneys' fees and remand this claim to the district court.

## I.

In June 2003, U.G., a California company, sent purchase orders for 717,120 cans of hair spray and 59,760 cartons of hair mousse to Kamdar, an Illinois limited liability company. Kamdar, acting as purchasing agent, forwarded the purchase orders to UK Aerosols Ltd. (UK Aerosols), an English company, and purchased the goods from UK Aerosols. Kamdar authorized UK Aerosols to ship the goods on behalf of U.G. and Kamdar. Accordingly, UK Aerosols requested that APL, a Singapore corporation, ship the cargo containing the hair mousse and hair spray from Istanbul, Turkey to Long Beach, California.

APL issued a bill of lading governing the terms of carriage. On the bill of lading, APL is listed as the carrier, UK Aerosols as the shipper, Kamdar as the "notify party," and U.G. as the "also notify party." UK Aerosols, U.G. and Kamdar each accepted and endorsed the bill of lading. The bill of lading contains several provisions at issue in this case. Clause 9 provides that the "merchant" must indemnify APL for any losses caused by the manner in which a container had been packed by a party other than APL or the unsuitability of the goods for carriage. "Merchant," as defined in the bill of lading, includes the shipper, consignee, receiver, holder of the bill of lading, owner of the cargo or person entitled to the possession of the cargo or having a present or future interest in the goods for carriage. Clause 19 provides that express written consent from APL is required for the carriage of hazardous goods, and

regardless of whether the "merchant" is aware of the hazardous nature of the goods, it must indemnify APL for any losses arising as a consequence of the carriage of such goods. Clause 28(i) of the bill of lading specifies that "[i]nsofar as anything has not been dealt with by the terms and conditions of the bill of lading, Singapore law shall apply."

When the goods arrived in Long Beach, California, APL discovered that one of the containers in the shipment was "leaking, dangerous and hazardous." APL spent approximately $700,000 in assessing, cleaning up, removing, and ultimately disposing of the shipment.

APL subsequently filed a complaint against UK Aerosols, Kamdar, U.G., and Imp-Ex Solutions, LLC (a party later dismissed from the action), asserting negligence claims and contract claims, alleging that the defendants had breached their indemnification obligations under the bill of lading. UK Aerosols failed to answer the complaint, and the district court entered default judgment against it. U.G. and Kamdar moved for summary judgment, arguing that certain provisions of the bill of lading were void because they violated provisions of the Carriage of Goods by Sea Act (COGSA). The district court held that Clause 9 of the bill of lading would only violate COGSA to the extent that it imposed liability without fault on a party that was a "shipper," and because neither party had alleged that U.G. and Kamdar were "shippers," Clause 9 was not necessarily void. The district court also held that APL might not be able to prevail under Clause 19 if it was on notice of the hazardous nature of the goods, but that the issue of whether it had notice was a factual issue in dispute. Consequently, the district court denied summary judgment to U.G. and Kamdar on the contract claims. It did, however, enter summary judgment for U.G. and Kamdar on the negligence claims.

Subsequently, U.G. and Kamdar filed a second motion for summary judgment, and APL filed its first motion for sum-

mary judgment. U.G. and Kamdar argued that they were "shippers," and therefore, certain provisions of the bill of lading were void as applied to them. APL, on the other hand, argued that U.G. and Kamdar were contractually liable under the bill of lading for the negligence of UK Aerosols, even if they were not negligent. The district court denied U.G. and Kamdar's motion and granted APL's motion, holding that U.G. and Kamdar were not "shippers," and thus not entitled to the protection of COGSA's rule against liability without fault. The district court held that U.G. and Kamdar were contractually liable under Clauses 9 and 19 of the bill of lading. The district court entered judgment against U.G. and Kamdar in the amount of $733,963.10.

Following the entry of judgment, APL filed a motion for attorneys' fees. APL argued that the bill of lading provides that the attorneys' fees issue is governed by Singapore law, and therefore, the prevailing party is entitled to attorneys' fees. The district court denied the motion. It held that COGSA would control the dispute over attorneys' fees, that federal law would apply to the issue, and therefore that no attorneys' fees would be awarded. It also held that APL did not meet its obligation under Federal Rule of Civil Procedure 44.1 to give reasonable notice that it would raise the issue concerning Singapore law.

Subsequently, U.G. and Kamdar filed an appeal from the district court's summary judgment in favor of APL, and APL filed an appeal from the district court's denial of attorneys' fees.

We review a district court's summary judgment *de novo*. *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 602 (9th Cir. 2005). Questions of statutory construction are reviewed *de novo*. *All Pac. Trading, Inc. v. Vessel M/V Hanjin Yosu*, 7 F.3d 1427, 1433 (9th Cir. 1993). Contract interpretation is also reviewed *de novo*. *Yang Ming*

*Marine Transp. Corp. v. Okamoto Freighters Ltd.*, 259 F.3d 1086, 1095 (9th Cir. 2001).

U.G. and Kamdar argue that section 1304(3) of COGSA[1] prohibits them from being held liable under the bill of lading. Section 1304(3) provides that "[t]he shipper shall not be responsible for loss or damage sustained by the carrier or the ship arising or resulting from any cause without the act, fault, or neglect of the shipper, his agents, or his servants." Clause 9 of the bill of lading requires that where the container at issue was packed by a party other than APL, a "merchant" must indemnify APL for losses incurred as a result of "the manner in which the Container has been filled, packed, stuffed or loaded; or [ ] the unsuitability of the Goods for Carriage in [the] Container." As defined in the bill of lading, the term "merchant" includes U.G. and Kamdar as parties having a future right to receive the goods and the owner of the goods, respectively.

U.G. and Kamdar argue, however, that they are also "shippers" entitled to the protection of section 1304(3) of COGSA. Therefore, U.G. and Kamdar contend that they are not obligated to indemnify APL for expenses related to the clean-up of the leaked materials because the leak did not result from their own acts, fault or neglect; rather the leak was the result of UK Aerosol's negligent packing.

The word "shipper" is not defined in COGSA. However, the COGSA statutory scheme indicates that, for purposes of section 1304(3), a "shipper" is a party separate and distinct from other parties to a bill of lading, including, in this case, the owners of the goods and those who have a future interest in the goods.

---

[1]COGSA is now included as a note to 46 U.S.C. § 30701. This opinion cites the pre-2006 section numbers of COGSA as they appeared in the appendix to Title 46 of the United States Code.

APL Co. Pte. Ltd. v. U.G. Co., Inc.

[1] First, Congress chose to use different terms in COGSA when referring to the "shipper" in conjunction with other parties, on the one hand, and the "shipper" alone, on the other. When interpreting a statute, we abide by the principle that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (internal quotation marks and citation omitted). In this case, COGSA defines a "contract of carriage" to include bills of lading and other similar documents, which "regulate[ ] the relations between a carrier and a *holder* of the same." 46 U.S.C. App. § 1301(b) (2004) (emphasis added). A "holder" of a bill of lading can be any person in possession of the bill of lading, whether it be the shipper or the subsequent endorsee of the bill of lading. U.C.C. § 1-201(b)(21)(B) (2004) (" 'Holder' means . . . the person in possession of a document of title if the goods are deliverable either to bearer or to the order of the person in possession"); *see also Interpool Ltd. v. Char Yigh Marine (Panama) S.A.*, 890 F.2d 1453, 1459 (9th Cir. 1989) (holding that "[i]n maritime commercial transactions, the Uniform Commercial Code is taken as indicative of the federal common law of admiralty"). Thus, if Congress had intended section 1304(3) to protect both the shipper *and* subsequent endorsees of the bill of lading, it could have used the term "holder" as it did in section 1301(b).

[2] Second, expanding the definition of "shipper" to include multiple parties to the bill of lading would undermine the underlying policy goals of COGSA. For example, COGSA mandates that, "on demand of the shipper," the carrier must "issue to the shipper a bill of lading." 46 U.S.C. App. § 1303(3) (2004). A bill of lading evidences the receipt of goods for shipment. U.C.C. § 1-201(b)(6). It also operates as a document of title. *See Pollard v. Vinton*, 105 U.S. 7, 8 (1881) ("In the hands of the holder [the bill of lading] is evidence of ownership . . . of the property mentioned in it, and

of the right to receive said property at the place of delivery"). If each party to the bill of lading, including both the named "shipper" and the "notify parties," was entitled to demand that the carrier issue a bill of lading, multiple parties could possess an original bill of lading. To do so would create competing chains of title, undermining COGSA's goal of promoting predictability in the implementation of sea-carriage rules. *Senator Linie Gmbh & Co. Kg v. Sunway Line, Inc.*, 291 F.3d 145, 148 (2d Cir. 2002) (holding that Congress' goal with COGSA was to foster "international uniformity in sea-carriage rules and allocating risk between shippers and carriers in a manner that is consistent and predictable").

**[3]** Third, the use of the term "shipper" in other COGSA provisions implies that a shipper is the entity that delivers the goods to the carrier, not the eventual receiver of the goods. Section 1303(5) provides that "[t]he shipper shall be deemed to have guaranteed to the carrier the accuracy at the time of shipment of the marks, number, quantity and weight, as furnished by him." Therefore, the shipper is the entity that provides the particulars regarding the shipment. Section 1303(5) also requires the shipper to indemnify the carrier against losses resulting from "inaccuracies" in the description of the marks, number, quantity and weight of the shipment. A practical reading of this statute dictates that the entity that delivers the goods to the carrier and provides the particulars is the "shipper" because the entity that ships the goods is the party most able to verify the specifics of the shipment.

Significantly, section 1303(5) also specifies that "[t]he right of the carrier to such indemnity shall in no way limit his responsibility and liability under the contract of carriage *to any person other than the shipper.*" *Id.* (emphasis added). If Congress had intended all parties to the bill of lading (including the owners and those with a future interest in the goods) to be included in the definition of "shipper," there would be no need to include a provision making the carrier liable to parties to the bill of lading other than the "shipper" because

there would be no other parties to whom the carrier would be liable.

U.G. and Kamdar argue that the definition of "shipper" from the Shipping Act of 1984 (Shipping Act) should supply the definition of "shipper" under COGSA. Under the Shipping Act, a "shipper" includes "a cargo owner" or the "person to whom delivery is to be made." 46 U.S.C. § 40102(22). However, there is no indication that Congress intended to merge the definition of "shipper" from the Shipping Act into COGSA. *Accord United States ex rel. Chicago, New York & Boston Refrigerator Co. v. Interstate Commerce Comm'n*, 265 U.S. 292, 295 (1924) ("[B]ecause words used in one statute have a particular meaning they do not necessarily denote an identical meaning when used in another and different statute"). Moreover, as discussed above, to do so would be inconsistent with several provisions within COGSA.

**[4]** Case law offers different definitions for "shipper" depending on the context. *Compare Logistics Mgmt., Inc. v. One (1) Pyramid Tent Arena*, 86 F.3d 908, 911 n.2 (9th Cir. 1996) (relying on an admiralty law treatise's definition of "shipper" as "the party who supplies the goods to be transported") *with Compagnie Generale Transatlantique v. Am. Tobacco Co.*, 31 F.2d 663, 667 (2d Cir. 1929) (relying on the Shipping Act's definition of "shipper" as the "person for whose account the carriage of the goods is undertaken"). There is no need for us to articulate a precise definition of "shipper" to fill in the definitional gap in COGSA. It is clear, based on other provisions of COGSA's statutory scheme, that U.G. and Kamdar, parties not listed as the "shipper" on the bill of lading, do not qualify as "shippers" for purposes of section 1304(3). For those reasons, we hold that section 1304(3) of COGSA does not shield them from liability under the bill of lading.

## II.

**[5]** U.G. and Kamdar next argue that they are not obligated to indemnify APL under Clauses 9 and 19 of the bill of lading

because those clauses are void under section 1303(8) of
COGSA. Section 1303(8) provides that:

> "[a]ny clause . . . in a contract of carriage relieving
> the carrier or the ship from liability for loss or dam-
> age to or in connection with the goods, arising from
> negligence, fault, or failure in the duties and obliga-
> tions provided in this section, or lessening such lia-
> bility otherwise than as provided in this chapter,
> shall be null and void and of no effect."

The question before us is whether either Clause 9 or Clause
19 of the bill of lading impermissibly lessens APL's liability
for loss or damage to or in connection with the goods trans-
ported; if so, the clauses are void.

   U.G. and Kamdar first argue that Clause 9 is void under
section 1303(8) to the extent that it "lessens APL's liability"
by violating section 1304(3). As discussed above, section
1304(3) of COGSA prevents a shipper from being responsible
for loss or damage sustained by a carrier without "the act,
fault, or neglect of the shipper, his agent, or his servants."
Clause 9 of the bill of lading states that if a container not
packed by APL causes loss, damage, or liability because of
the manner in which the container was packed or loaded, the
merchants (as defined in the bill of lading) must indemnify
the carrier for the loss.

   [6] We conclude that Clause 9 of the bill of lading does not
violate section 1304(3). Clause 9 would violate section
1304(3) if it imposed strict liability on the shipper. But in
order for liability under Clause 9 to set in, a person or entity
other than the carrier (most likely the shipper) must have
acted negligently or packed the container in a manner that
would cause damage. Thus, it does not impermissibly lessen
APL's liability. Furthermore, to the extent that U.G. and
Kamdar also argue that Clause 9 relieves APL of liability for
loss caused by APL's own negligence, they are incorrect. The

APL Co. Pte. Ltd. v. U.G. Co., Inc.

clause is not triggered if APL packed the containers that caused the damage. Therefore, the clause is not void under section 1303(8).

Clause 9 in this case is readily distinguishable from the clause at issue in a district court case cited by U.G. and Kamdar: *Excel Shipping Corp. v. Seatrain Int'l S.A.*, 584 F. Supp. 734, 747-48 (E.D.N.Y. 1984). In that case, the bill of lading included a clause stating that " 'the shipper, the consignee and the goods, jointly and severally, shall be liable for, and shall indemnify [the carrier] and the ship against' damages caused by cargo tendered for carriage." *Id.* at 747. There was no provision exempting the shipper from liability which stemmed from the carrier's negligence. It therefore directly violates section 1304(3) of COGSA by making the shipper liable for acts caused by *any* party. *Id.* at 748. In Clause 9 at issue here, on the other hand, the parties cannot be held liable for any negligence on the part of APL in packing and shipping the goods.

**[7]** For the above reasons, Clause 9 of the bill of lading does not violate section 1304(3), and it does not attempt to relieve APL of APL's liability for loss or damage to goods due to its negligence. Clause 9 is therefore valid. U.G. and Kamdar do not dispute that they fit within the definition of "merchant" under the bill of lading, and under Clause 9, the "merchants" must indemnify APL for losses caused by the manner in which a shipper-packed container was packed or the unsuitability of goods for carriage. Thus, U.G. and Kamdar are contractually bound to indemnify APL under Clause 9.

U.G. and Kamdar also argue that Clause 19 of the bill of lading is void under section 1303(8) because the clause violates section 1304(6) of COGSA. Because we hold they are liable under Clause 9, it is unnecessary for us to reach the alternative liability issue raised under Clause 19.

## III.

We review a district court's determination that a party did not give reasonable notice of its intent to raise an issue about a foreign country's law for abuse of discretion. *DP Aviation v. Smiths Indus. Aerospace & Defense Sys. Ltd.*, 268 F.3d 829, 846 (9th Cir. 2001). We review the district court's analysis of the Federal Rules of Civil Procedure *de novo*. *Id.* We review *de novo* a district court's decision concerning the appropriate choice of law. *Id.*

After the district court entered judgment in favor of APL, APL filed a motion for attorneys' fees, arguing that attorneys' fees should be awarded in accordance with Singapore law. Clause 28(i) of the bill of lading provides that "[i]nsofar as anything has not been dealt with by the terms and conditions of the bill of lading, Singapore law shall apply." APL argues that this provision requires application of Singapore law as to attorneys' fees, which are not provided for in the bill of lading. APL also contends that Singapore law follows the English rule, according to which attorneys' fees are awarded to the prevailing party.

The district court denied APL's motion for attorneys' fees on three grounds: (A) APL did not provide reasonable notice pursuant to Federal Rule of Civil Procedure 44.1 of its intent to raise Singapore law as to the attorneys' fees issue; (B) the governing choice-of-law provision in the bill of lading is COGSA, and therefore, the American rule should apply to the attorneys' fees issue; and (C) APL is estopped from invoking Singapore law because it relied heavily on COGSA throughout the litigation. We address each ground in turn.

### A.

**[8]** The first issue is whether APL gave reasonable notice of its intent to invoke Singapore law. Pursuant to Federal Rule of Civil Procedure 44.1, "[a] party who intends to raise an

APL Co. Pte. Ltd. v. U.G. Co., Inc.

issue about a foreign country's law must give notice by a
pleading or other writing." The primary purpose of this notice
requirement is to avoid unfairly surprising opposing parties,
and therefore, "[i]t is only fair to provide notice of potential
application of foreign law as early as is practicable and, in any
event, at a time that is reasonable in light of the interests of
all parties and the court." *DP Aviation*, 268 F.3d at 847. The
Advisory Committee Notes to Rule 44.1 delineate several fac-
tors to consider in determining whether the notice of the for-
eign law issue is "reasonable": (1) the stage which the case
had reached at the time of the notice; (2) the reason proffered
by the party for its failure to give earlier notice; and (3) the
importance to the case as a whole of the issue of foreign law.
Fed. R. Civ. P. 44.1 Advisory Committee's Note; *DP Avia-
tion*, 268 F.3d at 847. We evaluate the reasonableness of
APL's notice of its intent to invoke Singapore law under these
factors.

At the summary judgment stage of the proceeding, APL
advised the court that it did not waive the right to contend that
Singapore law governs the bill of lading. In a footnote to its
opposition to U.G. and Kamdar's first motion for summary
judgment, APL asserted that it reserved the right to contend
that Singapore law governed the bill of lading. In its motion
for summary judgment, APL stated, "by arguing U.S. law in
this motion, APL does not waive the right to contend Singa-
pore law applies to other issues in the case." Of course, attor-
neys' fees were not at issue in the judgment on the merits and
APL did not invoke Singapore law during the summary judg-
ment portion of the proceedings before the district court. Fol-
lowing judgment on the merits, APL filed its motion for
attorneys' fees, and at that point, specifically alleged that Sin-
gapore law applies to attorneys' fees.

**[9]** First, we consider the stage which the case had reached
at the time of notice. Fed. R. Civ. P. 44.1 Advisory Commit-
tee's Note. In general, "[a]bsent extenuating circumstances,
notice of issues of foreign law that reasonably would be

expected to be part of the proceedings should be provided in the pretrial conference." *DP Aviation*, 268 F.3d at 848. However, attorneys' fees were not an issue in the merits of the summary judgment requests. APL maintained throughout the proceedings that Singapore law might apply to other issues under the bill of lading unrelated to the merits of the requested summary judgments. Attorneys' fees only became an issue after summary judgment had been entered. Therefore the issue of foreign law was not "reasonably . . . expected to be part of the proceedings" earlier in the case, and it was not at issue in the summary judgment proceedings. *See id*. The court and the opposing parties were on notice that Singapore law might be raised in future motions. APL timely invoked foreign law as to attorneys' fees at the first opportunity when the issue became material: in the motion for attorneys' fees.

Second, we evaluate the reason proffered by the party for the failure to give earlier notice. Fed. R. Civ. P. 44.1 Advisory Committee's Note. As discussed above, there was no need for APL to give notice that it would specifically invoke Singapore law as to attorneys' fees until that became an issue before the court. The parties were on notice that Singapore law might be invoked, and APL gave more specific notice when the post-judgment issue came before the court.

Third, we consider the importance to the case as a whole on the issue of foreign law. The district court found that the delay in raising the foreign law issue was "highly prejudicial" to the defendants because APL could have "reasonably anticipated that attorneys' fees would be an issue if liability was resolved in its favor," and earlier disclosure would have afforded defendants time to research and mount a defense as to Singapore law. However, the issue of choice of law as to attorneys' fees was an isolated aspect of the case, not touching upon other areas, including the summary judgment motions. Further, the issue is not particularly complicated; to mount a successful defense would not require extensive or time-consuming research or discovery. Indeed, the parties

were alerted to possible relevance of Singapore law long prior
to the filing of the fee motion.

**[10]** For the above reasons, we hold that the district court
abused its discretion in holding that APL failed to give rea-
sonable notice under Rule 44.1.

## B.

The next reason used by the district court to deny APL's
motion for attorneys' fees was because it held that COGSA
was the governing choice-of-law provision in the bill of lad-
ing. Based on its holding that COGSA governs the bill of lad-
ing, the district court chose to apply United States admiralty
law to the attorneys' fees issue. Federal law generally does
not permit the prevailing party in an admiralty case to recover
attorneys' fees. *See B.P. N. Am. Trading, Inc. v. Vessel Pana-
max Nova*, 784 F.2d 975, 977 (9th Cir. 1986).

There are two choice-of-law clauses we should consider.
Clause 6 of the bill of lading specifies that "[f]rom loading of
the Goods onto the Vessel until discharge of the Goods from
the Vessel, the Carrier's responsibility shall be subject to the
provisions of any legislation compulsorily applicable to this
Bill of Lading," including COGSA, the provisions of which
"shall apply on all shipments to or from the United States
whether compulsorily available or not." Clause 28(i) specifies
that "[i]nsofar as anything has not been dealt with by the
terms and conditions of this Bill of Lading, Singapore law
shall apply. Singapore law shall in any event apply in inter-
preting the terms and conditions hereof." No provision of the
bill of lading refers to the award of attorneys' fees or which
law shall govern the award of attorneys' fees.

The district court held that Clause 6 of the bill of lading
creates an ambiguity as to the scope of Clause 28. It is true
that any ambiguity in a bill of lading is strictly construed
against the carrier, and ambiguity as to a choice-of-law provi-

sion is construed against the interest of the party that drafted it. *Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1296 (9th Cir. 1997); *All Pac. Trading, Inc.*, 7 F.3d at 1431. We now determine whether the district court correctly held there was an ambiguity caused by Clause 6.

[11] COGSA is silent as to attorneys' fees: it neither authorizes their award, nor prohibits fees. *See Noritake Co., Inc. v. M/V Hellenic Champion*, 627 F.2d 724, 730 & 730 n.5 (5th Cir. 1980) (stating that Congress did not explicitly authorize the award of attorneys' fees to the prevailing party in an action based on COGSA, then explaining two judicially-created exceptions where attorneys' fees are awarded in suits based on COGSA). Additionally, the parties do not contend that Clause 28 is void under any provision of COGSA.

[12] Because the bill of lading does not expressly deal with attorneys' fees, COGSA is silent as to attorneys' fees, and the award of attorneys' fees does not contravene any other provision of COGSA, attorneys' fees thus become an issue that was not "dealt with" in the bill of lading. It therefore falls squarely in the domain of Clause 28, which states that Singapore law shall apply to issues not "dealt with" in the bill of lading. Singapore law provides that, under certain circumstances, the common law of England is in force in Singapore. Application of English Law Act § 3(1) (Sing.). Under the English rule, attorneys' fees are generally awarded to the prevailing party. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975).

In the face of COGSA's silence as to attorneys' fees, the district court erroneously substituted the general American rule in admiralty cases that provides that, "[a]bsent some statutory authorization, the prevailing party in an admiralty case is generally not entitled to an award for attorneys' fees." *Noritake*, 627 F.2d at 730; *see also Alyeska Pipeline*, 421 U.S. at 247. We have held that "[i]n the absence of a contractual choice-of-law clause, federal courts sitting in admiralty apply

APL Co. Pte. Ltd. v. U.G. Co., Inc.

federal maritime choice-of-law principles derived from the Supreme Court's decision in *Lauritzen v. Larsen*, 345 U.S. 571 . . . (1953), and its progeny." *Chan*, 123 F.3d at 1296. However, "where the parties specify in their contractual agreement which law will apply, admiralty courts will generally give effect to that choice." *Id.* at 1296-97. The parties in this case selected Singapore law to govern issues not otherwise covered by the bill of lading. The district court erred in substituting federal law to govern all provisions of the bill of lading merely because COGSA is federal law.

U.G. and Kamdar also argue that Clause 28(iii), which states that if "Carriage includes Carriage to, from or through a port in the United States of America, the Merchant may refer any claim or dispute to the United States District Court for the Southern District of New York in accordance with the laws of the United States," dictates that the American Rule of attorneys' fees should apply in this case. This statement is not a choice-of-law provision. The bill of lading explicitly states that "Singapore law shall in any event apply in interpreting the terms and conditions hereof." The reference to United States law in Clause 28(iii) refers only to the law required to refer a claim to the Southern District of New York, and is not the choice of law that governs the bill of lading.

**[13]** For the above reasons, we hold that by the terms of the bill of lading, Singapore law is the parties' choice of law as to attorneys' fees.

## C.

**[14]** Finally, the district court held that APL is estopped from invoking Singapore law because it relied heavily on COGSA throughout the litigation. The doctrine of judicial estoppel may be invoked to prevent a party "from taking inconsistent positions in the same litigation." *Yanez v. United States*, 989 F.2d 323, 326 (9th Cir. 1993), quoting *Morris v. California*, 966 F.2d 448, 452-53 (9th Cir. 1991), *cert. denied*,

506 U.S. 831 (1992). But APL did not take inconsistent positions in this litigation. As discussed above, COGSA governed the bill of lading, and anything not controlled by COGSA or otherwise "dealt with" in the bill of lading is governed by Singapore law. COGSA dictated many of the rights and duties that were at issue in determining liability under the bill of lading. COGSA, however, did not supply the answer to the question of attorneys' fees; consequently, APL is entitled to rely on the contractual choice-of-law provision in the bill of lading.

For the above reasons, we affirm the summary judgment entered by the district court, but reverse the district court's determination that Singapore law does not apply for the determination of attorneys' fees. We therefore remand to the district court the attorneys' fees issue.

**AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**