1  SHEPPARD MULLIN RICHTER & HAMPTON LLP
     A Limited Liability Partnership
2    Including Professional Corporations
   CHARLES S. DONOVAN, Cal. Bar No. 103667
3  BRENNA E. MOORHEAD, Cal. Bar No. 233425
   Four Embarcadero Center, 17th Floor
4  San Francisco, California  94111-4106
   Telephone:    415-434-9100
5  Facsimile:    415-434-3947
   Email:        cdonovan@sheppardmullin.com
6
   Attorneys for Plaintiff APL Co. Pte. Ltd.
7

8                      UNITED STATES DISTRICT COURT

9                     NORTHERN DISTRICT OF CALIFORNIA

10

11 | APL CO. PTE. LTD.,                    | Case No. C-05-0646 MHP
12 |                  Plaintiff,           | **APL CO. PTE. LTD.'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES**
13 |         v.                            |
14 | UK AEROSOLS LTD.; U.G. CO., INC. dba  |
   | UNIVERSAL GROCERS; KAMDAR             | Date:       January 4, 2009
15 | GLOBAL, LLC; and IMP-EX SOLUTIONS     | Time:       2 p.m.
   | LLC,                                  | Courtroom:  15
16 |
   |                  Defendants
17 |         and
   | VALLEY FORGE INSURANCE
18 | COMPANY,
   |                  Defendant-Intervenor
19

20

21                    **NOTICE OF MOTION AND MOTION**

22     TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

23     PLEASE TAKE NOTICE that at 2:00 p.m. on January 4, 2009, or as soon

24  thereafter as counsel may be heard, in the Courtroom of the Honorable Marilyn Hall

25  Patel, located at 450 Golden Gate Avenue, San Francisco, CA 94123, Plaintiff, APL

26  Co. Pte. Ltd. ("APL") will and hereby does move the Court for an award of

27  attorneys' fees.

28
   W02-WEST:5BM1\402329147.4           -1-              NOTICE & MOTION FOR
                                                        ATTORNEYS' FEES (C-05-0646 MHP)

1     This motion is made on the grounds that APL is the prevailing party in this
2 litigation and is entitled to an award of attorneys' fees of $875,799.52 (including
3 non-taxable costs) incurred before this Court and on appeal pursuant to the terms of
4 APL's bill of lading and Singapore law.

5     This motion is based upon this Notice of Motion and Motion, the supporting
6 Memorandum of Points and Authorities, the Declarations of Charles S. Donovan
7 and Brenna E. Moorhead, the other pleadings and materials already on file in this
8 matter, and upon such further argument and evidence as may be presented at the
9 hearing of this motion, if so ordered.

# MEMORANDUM OF POINTS AND AUTHORITIES
# IN SUPPORT OF MOTION

## TABLE OF CONTENTS

I. STATEMENT OF FACTS ..................................................................................................7

II. ARGUMENT .....................................................................................................................11

    A.    Singapore law applies to APL's request for attorneys' fees and provides for the recovery of these attorneys' fees. ............................... 11

    B.    APL is the prevailing party in this matter and therefore should be awarded attorneys' fees. ................................................................................ 13

    C.    APL's request for attorneys' fees is based on the lodestar approach and is reasonable in terms of both hours and rates............... 13

        1.    APL used the Lodestar Approach to calculate attorneys' fees. ................................................................................................... 14

        2.    The hours claimed are those reasonably expended in pursuit of the ultimate result achieved. ...................................... 15

        3.    The hourly billing rates presented by APL are commensurate with the prevailing rate. ........................................ 16

        4.    Consideration of the <u>Kerr</u> factors further demonstrates the reasonableness of the fees requested........................................... 17

    D.    APL's request for attorneys' fees is timely. ............................................ 19

III. CONCLUSION ................................................................................................................20

# TABLE OF AUTHORITIES

<u>Cases</u>

APL Co. Pte. Ltd. v. UK Aerosols Ltd.,
582 F.3d 947 (9th Cir. 2009) ................................................................................................ 11

Aromatique, Inc. v. Gold Seal, Inc.,
28 F.3d 863 (8th Cir. 1994) .................................................................................................. 12

Baerthlein v Electronic Data Systems Corp.,
2005 WL 88381 (N.D. Cal. 2005) ........................................................................................ 19

Barjon v. Dalton,
132 F.3d 496 (9th Cir. 1997) ................................................................................................ 16

Benjamin v. Lee,
[1993] 1 S.L.R. 185 (Singapore App. 1993) ........................................................................ 12

Bishop v. Osborn Transp., Inc.,
687 F. Supp. 1526 (N.D. Ala. 1988) .................................................................................... 17

Blum v. Stenson,
486 U.S. 886 (1984) ............................................................................................................. 16

Burlington v. Dague,
505 U.S. 557 (1992) ...................................................................................................... 14, 19

Charles v. Daley,
799 F.2d 343 (7th Cir. 1986) ................................................................................................ 10

Citizen Against Rent Control v. City of Berkeley,
181 Cal. App. 3d 213 (1986) ................................................................................................ 15

Coalition to Save Our Children v. State Board of Education,
901 F. Supp. 824 (D. Del. 1995) .......................................................................................... 17

Democratic Party of Washington v. Reed,
388 F.3d 1281 (9th Cir. 2004) .............................................................................................. 16

Evans v. Port Authority,
273 F.3d 346 (3d Cir. 2001) ................................................................................................. 16

Flannery v. California Highway Patrol,
61 Cal.App.4th 629 (1998) ................................................................................................... 14

Fleming v. Kemper Nat'l Servs., Inc.,
373 F. Supp. 2d 1000 (N.D. Cal. 2005) ............................................................................... 16

Franz v. Lytle,
854 F. Supp. 753 (D. Kan. 1994) ......................................................................................... 17

Greenhouse v. MCG Capital Corp.,
392 F.3d 650 (4th Cir. 2004) ................................................................................................ 17

NOTICE & MOTION FOR ATTORNEYS'
FEES (C-05-0646 MHP)

Hensley v. Eckerhart,
461 U.S. 424 (1983)................................................................................................. 13, 14

Hernandez v. Morales,
810 F. Supp. 25 (D.P.R. 1992)....................................................................................18

Hernandez v. Kalinowski,
146 F.3d 196 (3d Cir. 1998)........................................................................................14

In re "Agent Orange" Product Liability Litigation,
373 F. Supp. 2d 7 (E.D.N.Y. 2005).............................................................................12

Jordan v. Multnomah County,
815 F.2d 1258 (9th Cir. 1987) ....................................................................................19

Karkar v. Citicorp,
1994 U.S. App. LEXIS 29255 (9th Cir. 1994) ...........................................................13

Kerr v. Screen Extras Guild, Inc.,
526 F.2d 67 (9th Cir. 1975)............................................................................. 3, 18, 19

Ketchum v. Moses,
24 Cal. 4th 1122 (2001) ..............................................................................................16

Lopez v. San Francisco Unified Sch. Dist.,
385 F. Supp. 2d 981 (N.D. Cal. 2005) .................................................................. 15, 16

Lowe v. Unum life Insurance Company of America,
2007 WL 4374020 (E.D. Cal. 2007)..................................................................... 16, 19

Sabah Shipyard (Pakistan) Ltd. v. Government of Islamic Republic of Pakistan,
[2004] 3 S.L.R. 184 (Singapore High Ct. 2004).........................................................11

Schilling v. Moore,
286 B.R. 846 (W.D. Ky. 2002) ...................................................................................17

Schmidt v. Cline,
171 F. Supp. 2d 1178 (D. Kan. 2001).........................................................................17

Schwarz v. Secretary of Health & Human Services,
73 F.3d 895 (9th Cir. 1995)................................................................................... 14, 16

Serrano v. Priest,
20 Cal. 3d 25 (1997) ...................................................................................................14

Spain v. Mountamos,
960 F.2d 742 (9th Cir. 1982) ......................................................................................15

Stokus v. Marsh,
217 Cal.App.3d 647 (1990).........................................................................................14

Strange v. Monogram Credit Card Bank,
129 F.3d 943 (7th Cir. 1997) ......................................................................................13

Tutor-Saliba Corp. v. Hailey,
452 F.3d 1055 (9th Cir. 2006) ..................................................................................18

United States v. State of Or.,
657 F.2d 1009 (9th Cir. 1981) ..................................................................................10

Vo v. Las Virgenes Mun. Water Dist.,
79 Cal.App.4th 440 (2000) ................................................................................ 14, 15

Yahoo!, Inc. v. Net Games, Inc.,
329 F. Supp. 2d 1179 (N.D. Cal. 2004) ....................................................... 16, 17, 19

## Other Authorities

Restatement (Second) Conflict of Laws § 122 (1971) ...............................................13

## Rules

Federal Rules of Evidence 201 .................................................................................18

Federal Rules of Civil Procedure Rule 44.1 ..............................................................12

Singapore Rules of Court 2006, Order 59, Rule 1.....................................................12

Singapore Rules of Court 2006, Order 59, Rule 12...................................................12

Singapore Rules of Court 2006, Order 59, Rule 24(1)(a) & (b).................................12

Singapore Rules of Court 2006, Order 59, Rules 20-24............................................12

## Treatises

9A Wright & Miller, Federal Practice and Procedure § 2444 ...................................13

## I. STATEMENT OF FACTS

As the Court is familiar with the facts of this case, APL only states those facts of particular significance to this motion and summarizes the relevant procedural history.

APL transported a shipment of hair spray, hair mousse and air freshener (the "Goods") from Istanbul, Turkey to Long Beach, California pursuant to bill of lading number APLU 800701216 ("Bill of Lading"). APL is organized under the laws of Singapore. The shipper, UK Aerosols Ltd. ("UK Aerosols"), is a company organized under the laws of England. The Bill of Lading identifies U.G. Co., Inc. ("U.G.") and Kamdar Global LLC ("Kamdar") as "Notify Parties."

After arrival in Long Beach, California, the Goods were found to be leaking based on inadequate packing. APL was obliged to clean up the leaking Goods and dispose of them in a hazardous waste disposal facility in Arkansas. APL spent more than $739,895.91 cleaning up and disposing of the Goods. UK Aerosols rejected APL's demands for payment of those costs.

On February 12, 2005, APL filed a complaint in this Court against U.K. Aerosols, U.G. and Kamdar in this Court, alleging that UK Aerosols, U.G. and Kamdar were jointly and severally liable under the Bill of Lading for failing to pack the Goods in compliance with applicable laws or in an adequate manner to withstand the risks of carriage; and for failing to obtain APL's consent to carry flammable goods. On May 2, 2005, U.G. answered the complaint. On September 16, 2005, Kamdar answered the complaint. UK Aerosols never answered the complaint or appeared in the action. On May 4, 2006, at APL's request, the Court entered UK Aerosols' default.

On February 28, 2006, APL filed an amended complaint joining Imp-Ex Solutions, LLC ("Imp-Ex") as a defendant on the basis that Imp-Ex was jointly and severally liable for breach of the Bill of Lading. Imp-Ex filed a motion to dismiss.

1  APL opposed that motion. On July 7, 2006, the Court granted the motion to dismiss
2  but gave APL leave to amend its complaint.
3        On August 3, 2006, APL filed a second amended complaint. Imp-Ex
4  responded by filing a second motion to dismiss. On July 17, 2006, U.G. and
5  Kamdar filed a motion for summary judgment alleging that the Bill of Lading was
6  void under COGSA. On September 28, 2006, after hearing oral argument on all
7  pending motions, the Court issued two orders, one denying Imp-Ex's motion to
8  dismiss in part and granting the motion in part and the other denying U.G. and
9  Kamdar's motion for summary judgment on all grounds but negligence.
10       On December 18, 2006, the parties participated in an early neutral evaluation.
11 Declaration of Amy B. Norris in Support of APL's Motion for Attorneys' Fees (filed
12 July 9, 2007, and attached as Exhibit A) ("Norris Decl.") ¶ 6. APL and Imp-Ex
13 agreed to settle. Id. APL was unable to agree on settlement terms with U.G. or
14 Kamdar. Id.
15       On December 29, 2006, APL and U.G. and Kamdar filed cross motions for
16 summary judgment. The Court heard oral argument on those motion on February 5,
17 2007. Following the hearing and at the Court's direction, APL continued to prepare
18 for the trial scheduled to commence on March 7, 2007. Norris Decl. ¶ 7. APL
19 engaged in the relevant meet and confer sessions, prepared and filed motions in
20 limine, exhibit and witness lists and a pre-trial statement, and coordinated its
21 witnesses for trial. Id. at ¶ 8. On or about February 23, 2007, this Court granted
22 summary judgment in favor of APL and denied U.G. and Kamdar's motion for
23 summary judgment.
24       On March 1, 2007, the parties participated in a conference before the Court.
25 Norris Decl. ¶ 10. As the Court had determined that U.G. and Kamdar were liable
26 to APL, the parties agreed to stipulate to an amount of damages and concluded there
27 were no issues remaining for trial. Id. On March 8, 2007, the parties filed their
28 stipulation regarding damages.

APL prepared a proposed form of judgment and presented it to counsel for U.G. and Kamdar. Norris Decl. ¶ 11. Counsel could not agree on the proper method for calculating prejudgment interest. Id. On May 18, 2007, APL filed a motion for entry of judgment, asking the Court to determine the proper rate of prejudgment interest. On June 25, 2007, the Court issued an order granting APL's motion for entry of judgment that approved APL's calculation of prejudgment interest.

APL expended more than $641,000.00 in attorneys' fees and $34,235.00 00 in non-taxable costs prosecuting this action against U.G. and Kamdar. Declaration of Charles S. Donovan in Support of APL's Motion for Attorneys' Fees (filed July 9, 2007, and attached as Exhibit B) ("Donovan Decl.") ¶ 12. The services performed on APL's behalf are described in Exhibit A. The defendants' refusal to pay to clean up and dispose of the Goods compelled APL to file this lawsuit. Donovan Decl. at ¶ 13. The services provided by APL's lawyers were necessitated by the extensive law and motion practice and their refusal to settle, despite APL's multiple attempts to do so. Norris Decl. at ¶ 13.

On July 9, 2007, APL filed a motion to recover more than $641,000.00 in attorneys' fees and $34,235.00 00 in non-taxable costs incurred in prosecuting this action against U.G. and Kamdar. Docket Item No. 166. APL argued that pursuant to Clause 28 of the bill of lading, Singapore law governed and provided for an award of attorneys' fees. Clause 28 (a) of the Bill of Lading provides "in so far as anything has not been dealt with by the terms and conditions of this Bill of Lading, Singapore law shall apply. Singapore law shall in any event apply in interpreting the terms and conditions hereof." On October 30, 2007, this Court denied that motion. The District Court gave no effect to the bill of lading's Singapore choice of law. On November 29, 2007, APL filed notice with the District Court of its intention to appeal the District Court's order denying attorneys' fees.

On June 25, 2007, Valley Forge, U.G.'s insurer, filed its motion seeking to intervene on behalf of U.G. and Kamdar.[1] On August 2, 2007, the District Court granted Valley Forge's motion to intervene for the limited purpose of pursuing the appeal. On August 29, 2007, the District Court entered an amended judgment in favor of APL and against UK Aerosols, U.G. and Kamdar, jointly and severally, in the amount of $733,963.10. Valley Forge filed its notice of appeal on September 19, 2007.

On September 21, 2009, the Ninth Circuit Court of Appeals affirmed the District Court's summary judgment in favor of APL on the issue of liability under APL's bill of lading, and reversed and remanded to the District Court the issue of the application of Singapore law to the determination of attorneys' fees. The Ninth Circuit remanded the case to this Court for consideration of attorneys' fees under Singapore law. On that same date, that Court issued an order stating that APL is entitled to costs on appeal. The Appeals Court granted APL's unopposed bill of costs.

On October 27, 2009, APL submitted its request for attorneys' fees to the Ninth Circuit. APL spent more than 424 hours, amounting to $200,564.52 in attorneys' fees, in preparing the briefs and arguing the issues in order to prosecute this appeal. Description of the services performed on APL's behalf is provided in the Declaration of Brenna E. Moorhead in Support of APL's Motion for Attorneys' Fees (filed Oct. 27, 2009, attached as Exhibit C) ("Moorhead Decl. on Appeal"). All of these fees were necessary to prosecute the appeal. Moorhead Decl. ¶ 14. The hourly rates for APL's attorneys are commensurate with the prevailing market rate for comparable legal services. Declaration of Charles S. Donovan in Support of APL's Motion for Attorneys' Fees (filed Oct. 27, 2009, and attached as Exhibit D)

---

[1] An intervenor is to be treated similarly to the original parties and may be held liable for attorneys' fees. Charles v. Daley, 799 F.2d 343 (7th Cir. 1986); United States v. State of Or., 657 F.2d 1009, 1014 (9th Cir. 1981).

("Donovan Decl. on Appeal") ¶ 10. APL's attorneys set their hourly rates after canvassing the marketplace and assessing what competitors charge for lawyers of comparable experience and stature. Id.

Valley Forge opposed those fees and submitted its response. APL then prepared its reply submitted on November 16, 2009. On November 17, 2009, APL was served with the Ninth Circuit's Amended Mandate (dated Nov. 16, 2009). It set the date of judgment as November 16, 2009. The Amended Mandate transferred this matter, including the issue of attorneys' fees for work performed by APL's counsel on appeal, back to the District Court for consideration of the requests for attorneys' fees under Singapore law.

APL requests that the District Court grant this motion for attorneys fees' in the amount of $875,799.52 (including non-taxable costs) for work performed in the APL matter as provided under Singapore law.

## II. ARGUMENT

### A. Singapore law applies to APL's request for attorneys' fees and provides for the recovery of these attorneys' fees.

The Ninth Circuit ruled the bill of lading's choice of Singapore law applied to attorneys' fees. APL Co. Pte. Ltd. v.UK Aerosols Ltd., 582 F.3d 947, 957 (9th Cir. 2009). The issue:

> therefore falls squarely in the domain of Clause 28, which states that Singapore law shall apply to issues not "dealt with" in the bill of lading. Singapore law provides that, under certain circumstances, the common law of England is in force in Singapore. Application of English Law Act § 3(1) (Sing.). Under the English rule, attorneys' fees are generally awarded to the prevailing party.

Id.

Under the English Rule, costs, including attorneys' fees, are "'necessary appendages' to the judgment." Aromatique, Inc. v. Gold Seal, Inc., 28 F.3d 863, 875 (8th Cir. 1994). Singapore follows this rule. "The costs of the parties would include the fees and expenses of their lawyers . . . ." Sabah Shipyard (Pakistan) Ltd. v.

<u>Government of Islamic Republic of Pakistan</u>, [2004] 3 S.L.R. 184, 192 (Singapore High Ct. 2004) ("costs" in arbitration include lawyers' fees). See also <u>Benjamin v. Lee</u>, [1993] 1 S.L.R. 185 (Singapore App. 1993) (affirming taxation of "costs" that included attorneys' fees). Singapore's Court Rules recognize "costs" include "fees, charges, disbursements, expenses and remuneration." Singapore Rules of Court 2006, Order 59, Rule 1.[2] Singapore's rules authorize the Registrar of the Supreme Court to tax costs (Order 59, Rule 12) and set forth procedures for submitting a bill of costs. Order 59, Rules 20-24. The "fees" allowed clearly include legal fees incurred. See for example, Order 59, Rule 24(1)(a) & (b) which allow a solicitor's bill of costs to include charges for "work done in the cause or matter" and "work done in the taxation of costs."[3]

Rule 44.1 of the Federal Rules of Civil Procedure states:

> In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law.

It allows this Court to consult any "relevant material or source" regardless of admissibility under the Federal Rules of Evidence. <u>Id.</u> When presented with complex issues of foreign law, a federal court may seek assistance from any source, including academics or attorneys admitted in the foreign jurisdiction. See, e.g. <u>In re "Agent Orange" Product Liability Litigation</u>, 373 F. Supp. 2d 7, 18 (E.D.N.Y. 2005). The court may conduct its own legal research into foreign law. <u>Id.</u> The

---

[2] The rules are available on the website of the Supreme Court of Singapore. http://app.supremecourt.gov.sg/data/doc/ManagePage/97/roc_o59_new.htm (last visited November 12, 2009).

[3] APL does not contend Singapore's procedural rules for taxation of costs should apply here. Under settled rules of choice of law, the forum applies its own procedure. Restatement (Second) Conflict of Laws § 122 (1971). Singapore's procedures for taxing costs demonstrate, however, that under Singapore substantive law, a prevailing party recovers attorneys' fees as "costs."

1  "complexity of the foreign-law issue" is a factor in how far-reaching the research of
2  the court and counsel must go.  9A Wright & Miller, <u>Federal Practice and
3  Procedure</u> § 2444 at 350 (2008).  Here, the issue is remarkably uncomplicated and
4  boils down to a single question: does Singapore follow the English rule or the
5  American rule on attorneys' fees?

**B.  APL is the prevailing party in this matter and therefore should be awarded attorneys' fees.**

8  Without question, APL was the successful party in this dispute both before
9  this Court and before the Ninth Circuit.  APL prevailed on the merits of the dispute
10 before this Court, and this Court's decision on the issue of liability was upheld.
11 APL prevailed before the Ninth Circuit on the issue of application of Singapore law
12 to APL's request for attorneys' fees.  The Ninth Circuit has instructed this Court to
13 apply Singapore law to APL's request.  Under Singapore law, APL as the prevailing
14 party should be awarded attorneys' fees.

**C.  APL's request for attorneys' fees is based on the lodestar approach and is reasonable in terms of both hours and rates.**

17 The Court has the discretion to make an award of attorneys' fees under the
18 English Rule.  <u>Karkar v. Citicorp</u>, 1994 U.S. App. LEXIS 29255, *7 (9th Cir. 1994).
19 The party applying for an award of reasonable attorneys' fees bears the burden of
20 substantiating the hours worked and the rate claimed.  <u>Strange v. Monogram Credit
21 Card Bank</u>, 129 F.3d 943, 946 (7th Cir. 1997).  The hours reasonably expended on a
22 matter, include, but are not limited to, time spent drafting and revising pleadings,
23 meeting with clients, and preparing the case.  <u>Hensley v. Eckerhart</u>, 461 U.S. 424,
24 430, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983).  An attorney fee award usually
25 includes the time spent drafting and arguing the motion to obtain the award, as it
26 helps minimize unnecessary and frivolous litigation.  <u>Hernandez v. Kalinowski</u>, 146
27 F.3d 196, 199 (3d Cir. 1998).  The critical factor in determining the amount of a fee
28 award, however, is the success achieved.  <u>Hensley</u>, 461 U.S. at 436.

As the prevailing party, APL is entitled to an award of attorneys' fees under the English Rule. The starting point of the attorney's fees calculation is the "lodestar" method, under which fees are determined by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. Burlington v. Dague, 505 U.S. 557, 562 (1992).

### 1. APL used the Lodestar Approach to calculate attorneys' fees.

The analysis of attorneys' fees begins by establishing the "lodestar," i.e., the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). A reasonable number of hours includes all time "reasonably expended in pursuit of the ultimate result achieved in the same manner that an attorney traditionally is compensated by a fee-paying client for all time reasonably expended on a matter." Hensley, 461 U.S. at 431. The reasonable hourly rate is set according to the "prevailing market rates in the relevant community." Schwarz v. Secretary of Health & Human Services, 73 F.3d 895, 906 (9th Cir. 1995).

The lodestar formula is presumed to yield a reasonable attorneys' fee award which is "adequate to attract competent counsel, but which does not produce a windfall to attorneys." Hensley v. Eckerhart, 461 U.S. at 430 n.4. Although the court has wide discretion in deciding what attorneys' fees are reasonable in a particular case, its discretion must be exercised within the strictures of the lodestar method. Serrano v. Priest, 20 Cal. 3d 25, 48 (1997); Flannery v. California Highway Patrol, 61 Cal.App.4th 629, 639 (1998). Moreover, fee awards derived under the lodestar method are not limited by the amount of damages recovered by the prevailing party. See, e.g., Vo v. Las Virgenes Mun. Water Dist., 79 Cal.App.4th 440 (2000) (affirming fee award of $470,000 on damage award of $37,500); Stokus v. Marsh, 217 Cal.App.3d 647 (1990) (noting that to limit fee by damages would allow recalcitrant opponent to deprive prevailing party of reasonable fee). The "party who qualifies for a fee award should recover for all hours

1  reasonable spent unless special circumstances would render an award unjust." <u>Vo</u>,
2  79 Cal.App.4th at 446.
3  APL used the lodestar method to calculate the fees presented in this motion
4  for attorneys' fees. The fees APL requests equal the reasonable number of hours
5  worked multiplied by a reasonable hourly rate. It reviewed the fees billed by the
6  attorneys working on matters relevant to this matter and calculated attorneys' fees
7  based on the hours reasonably worked multiplied by a reasonable hourly rate. APL
8  submits evidence detailing time expended and the work completed within that time
9  to demonstrate the reasonableness of the hours. Exhibits A & C.
10 In addition, APL submits evidence that rates claimed are commensurate with
11 the prevailing market rate for comparable legal services to demonstrate the
12 reasonableness of the rates charged. Supplemental Declaration of Brenna E.
13 Moorhead in Support of APL's Motion for Attorneys' Fees (filed Nov. 16, 2009,
14 attached as Exhibit E) ("Supp. Moorhead Decl. on Appeal"). APL's attorneys set
15 their hourly rates after canvassing the marketplace and assessing what competitors
16 charge for lawyers of comparable experience and stature.

17 **2.    The hours claimed are those reasonably expended in pursuit of the**
18 **ultimate result achieved.**

19 A fee award should include the multitude of activities necessary to establish
20 liability, including the following:
21     1.    Conferring with clients and other counsel (<u>Citizen Against Rent</u>
22 <u>Control v. City of Berkeley</u>, 181 Cal. App. 3d 213, 234 (1986));
23     2.    Researching, preparing and revising motions, oppositions, pleadings,
24 and briefing (<u>Lopez v. San Francisco Unified Sch. Dist.</u>, 385 F. Supp. 2d 981, 994
25 (N.D. Cal. 2005));
26     3.    Time spent briefing and collecting a fee award (<u>Ketchum v. Moses</u>, 24
27 Cal. 4th 1122, 1141 n. 6 (2001); <u>Spain v. Mountanos</u>, 690 F.2d 742, 747 (9th Cir.
28 1982));

4. Preparation for oral argument (Lopez, 385 F. Supp. 2d at 996; Democratic Party of Washington v. Reed, 388 F.3d 1281, 1286 (9th Cir. 2004)); and

5. Other activities such as settlement discussions and negotiations (Fleming v. Kemper Nat'l Servs., Inc., 373 F. Supp. 2d 1000, 1009 (N.D. Cal. 2005)).

APL successfully opposed two motions for summary judgment and brought its own motion for summary judgment before this Court. Subsequently APL spent more than 424 hours, totaling $200,564.52 in attorneys' fees, in preparing the briefs and excerpts of record, conferring with colleagues and opposing counsel, meeting with clients, and presenting oral argument on appeal. Also, Mr. Donovan stated in his declarations that he used his billing judgment in billing APL. Exhibit B, ¶ 14; Exhibit D, ¶ 11.

### 3. The hourly billing rates presented by APL are commensurate with the prevailing rate.

The relevant community is the forum in which the court sits. Schwarz, 73 F.3d at 906; Lowe v. Unum life Insurance Company of America, 2007 WL 4374020, *7 (E.D. Cal. 2007) (citing Barjon v. Dalton, 132 F.3d 496, 500 (9th Cir. 1997). The relevant rates are the "local legal community as a whole," not a particular practice group or practice area. Yahoo!, Inc. v. Net Games, Inc., 329 F. Supp. 2d 1179, 1183-4 (N.D. Cal. 2004) (citing Blum v. Stenson, 486 U.S. 886, 893 (1984).) Rates are reasonable when they are in the range of rates charged by private attorneys of similar "experience, skill and reputation of the attorney requesting fees." Id. Once a prima facie showing of a reasonable hourly rate is made, the rate can be contested "only with appropriate record evidence." Evans v. Port Authority, 273 F.3d 346, 361 (3d Cir. 2001). Without such evidence, attorneys' fees must be awarded at the requested rate. Id.

This Court resides in San Francisco, where the parties have litigated this case. Analyzing Sheppard Mullin's charges in comparison to rates prevailing in the San

1  Francisco community does not show any marked discrepancy. Those rates are
2  consistent with the prevailing rates in the San Francisco legal market. Supp.
3  Moorhead Decl. on Appeal, ¶ 4. Indeed, the Central District of California has
4  previously found Sheppard Mullin's rates to be "reasonable." Id. at ¶ 5. In 2006, in
5  another appeal arising from the Northern District of California, this Court awarded a
6  Sheppard Mullin client its full fees based upon Sheppard Mullin's then prevailing
7  hourly rates. Id. at ¶ 6. The Ninth Circuit awarded attorneys' fees for work
8  performed by Sheppard Mullin attorneys supervised by Mr. Donovan. Id. These
9  facts in addition to Mr. Donovan's declaration and the National Law Journal Survey
10 demonstrate the reasonableness of the rates APL used to calculate the lodestar.

11      APL requests this Court take judicial notice of the information it submits
12 regarding hourly rates for attorneys in San Francisco. Under Fed. R. Evid. 201, a
13 court may take judicial notice of hourly rates prevailing in the legal community.
14 Schilling v. Moore, 286 B.R. 846, 849 (W.D. Ky. 2002); Schmidt v. Cline, 171 F.
15 Supp. 2d 1178, 1182 (D. Kan. 2001); Coalition to Save Our Children v. State Board
16 of Education, 901 F. Supp. 824, 832-33 (D. Del. 1995); Franz v. Lytle, 854 F. Supp.
17 753, 756 (D. Kan. 1994); Hernandez v. Morales, 810 F. Supp. 25, 29 n.4 (D.P.R.
18 1992); Bishop v. Osborn Transp., Inc., 687 F. Supp. 1526, 1531 (N.D. Ala. 1988).
19 See generally Greenhouse v. MCG Capital Corp., 392 F.3d 650, 655 n.4 (4th Cir.
20 2004) (taking judicial notice of market data).

21      **4.   Consideration of the Kerr factors further demonstrates the**
22           **reasonableness of the fees requested.**

23      "There is a strong presumption that the lodestar represents the 'reasonable'
24 fee" (Dague, 505 U.S. at 562), but in order to determine reasonableness, the Ninth
25 Circuit also requires consideration of the factors set forth in Kerr v. Screen Extras
26 Guild, Inc., 526 F.2d 67 (9th Cir. 1975). Tutor-Saliba Corp. v. Hailey, 452 F.3d
27 1055, 1064-1065 (9th Cir. 2006). The Kerr factors include the time and labor
28 required, the novelty and difficulty of the questions involved, the skill required,

preclusion of other employment by the attorney, relevant time limitations, results obtained, experience, reputation and ability of the attorneys, and the customary fee. Kerr, 526 F.2d at 70.

**Results:** APL was awarded $739,895.91 in damages. That is the full amount of the costs incurred in cleaning up and disposing of the Goods. In addition, APL was awarded prejudgment interest from the date UK Aerosols refused to reimburse APL for the costs of clean up and disposal. That is the computation of prejudgment interest proposed by APL. The Ninth Circuit ruled in favor of APL on all issues presented for appeal. APL received the desired result.

**Novelty and Difficulty of the Questions:** This dispute involved novel legal issues that required extensive legal research and law and motion practice. The questions presented to this Court and the Ninth Circuit were questions of first impression. That is demonstrated by the fact that APL's lead counsel who has more than thirty years of experience in maritime law had not previously encountered the questions posed by this action.

**Required Skill/Experience, Reputation and Ability of Attorneys:** The issues raised in this dispute were complex and required extensive knowledge of admiralty law. APL's lead attorney has more than thirty years of experience in the field. Many of the issues were novel to APL's counsel despite their extensive experience in maritime law. The issues required legislative history research, research of environmental regulations, and research of foreign law.

The significance of this dispute was heightened by the fact that an adverse outcome would have affected not only the disputed shipment and bill of lading but all goods shipped by APL under its standard bill of lading. An adverse outcome would have negatively impacted other major ocean cargo carriers, who ship goods under similar bill of lading provision. Most importantly, it would changed the distribution of liabilities and the equities in the industry of ocean cargo shipping.

1   **Customary Fee:** "The prevailing market rate is indicative of a reasonable
2   hourly rate." Jordan v. Multnomah County, 815 F.2d 1258, 1262 (9th Cir. 1987)
3   (citations omitted). The rates charged by APL's attorneys are in line with the
4   customary rates in the San Francisco legal market in which this case was litigated.
5   APL's attorneys set their rates after canvassing the marketplace and assessing what
6   competitors charge for lawyers of comparable experience and stature. The rates of
7   APL's counsel are reasonable as they are in line with the prevailing market rate.
8   **Time and Labor:** The standard for the number of hours considered in
9   computing an attorneys' fees award is "the number of hours that 'reasonably
10  competent counsel' would have billed." Baerthlein v Electronic Data Systems
11  Corp., 2005 WL 88381 *3 (N.D. Cal. 2005), quoting Yahoo!, Inc. v. Net Games,
12  Inc., 329 F. Supp. 2d 1179, 1182 (N.D. Cal. 2004). APL's counsel has significant
13  experience in the field of maritime law. The issues presented by this dispute were
14  novel and required substantial efforts on the part of APL's counsel. In addition, the
15  case was hard fought with the parties engaging in significant law and motion
16  practice and appeal of multiple issues involving the merits of this case and
17  attorneys' fees. The litigation posed unusual legal issues and required thorough
18  research and careful drafting. In light of the novel nature of the issues presented and
19  the zeal with which counsel pursued the proceedings, APL's attorneys spent a
20  reasonable number of hours litigating the case.

21  **D.   APL's request for attorneys' fees is timely.**
22  Local Rule 54-6 requires that "motions for awards of attorney's fees by the
23  Court must be served and filed within 14 days of entry of judgment by the District
24  Court." On November 16, 2009, the Circuit Court issued its Amended Mandate that
25  set the date of judgment for that date. In its Amended Mandate, it transferred
26  consideration of APL's request for attorneys' fees under Singapore law to this
27  District Court. APL submits this motion for attorneys' fees within the 14 day
28

deadline, on November 30, 2009. APL brings its request for attorneys' fees in a timely fashion.

### III. CONCLUSION

The Court should grant APL's motion for attorneys' fees.

Dated: November 30, 2009

SHEPPARD MULLIN RICHTER & HAMPTON LLP

CHARLES S. DONOVAN
BRENNA E. MOORHEAD
Attorneys for APL Co. Pte. Ltd.