1  Marilyn Raia, SBN 072320
   Norman J. Ronneberg, SBN 68233
2  601 California Street, Suite 1800
   San Francisco, California  94108
3  Telephone: 415.352.2700
   Facsimile: 415.352.2701
4  E-Mail:  marilyn.raia@bullivant.com
            norman.ronneberg@bullivant.com
5
   Attorneys for Defendant
6  U.G. Co., Inc. dba Universal Grocers

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

                       SAN FRANCISCO DIVISION
10

11 | APL CO. PTE. LTD.,                    | Case No.: C 05-0646 MHP

12 |                Plaintiff,             | **RENEWED OPPOSITION TO
                                             PLAINTIFF APL'S MOTION FOR
13 |       vs.                             | ATTORNEYS' FEES**

14 | U.K. AEROSOLS LTD., U.G. CO. INC., doing
   | business as UNIVERSAL GROCERS CO., and
15 | KAMDAR GLOBAL, LLC,

16 |                Defendants.

17

18                       I. **INTRODUCTION**

19         Pursuant to this Court's February 1, 2010 mandate, Plaintiff APL Co. PTE LTD

20 ("APL") was required  to provide Defendants with contemporaneous time records in support of

21 APL's petition for attorneys fees.  These records were to be clear and complete enough to allow

22 Defendants to meaningfully review each time entry and determine whether or not a particular

23 entry's inclusion in the fee petition was reasonable under the circumstances.

24         Notwithstanding this Court's Order, the records provided by APL to Defendants are still

25 heavily redacted, making it exceedingly difficult to ascertain the reasonability of particular

26 billings (See discussion below).  Although this Court advised APL that certain redactions to the

27 records might be made on the basis of attorney-client privilege, APL has not told this Court (or

28 Defendants) why any of the entries are privileged from disclosure, and therefore has not met its

                                    – 1 –

1    burden of proof with regard to the assertion of attorney-client privilege.[1] it is impossible—for

2    dozens of entries---- to tell how or why the privilege was invoked by APL. This, according to

3    the Ninth Circuit, is unacceptable.  See MGIC Indemnity Corp. v. Weisman 803 F2d 500, 505

4    (9th Cir. 1986), which established that  unless a district court has determined that particular

5    entries are protected by the attorney client privilege, complete and un-redacted timesheets must

6    be provided to the fee-liable party, so that party has a reasonable opportunity to challenge them .

7    See also Automotive Products v. Tilton 1993 WL 660164 (CD CA 1993) [Where, as here, trial

8    has concluded, redactions based on alleged work product immunity are inappropriate].

9    Accordingly, Defendants respectfully ask this Court to order the production of the complete and

10   un-redacted time records.   In the meantime, the facts and law supporting the Renewed

11   Opposition to Plaintiff's Motion for Attorneys Fees are below.

12                                    **II. ARGUMENT**

13   A.      **The hourly rates claimed for its attorneys by APL greatly exceed the benchmark**
             **rates for local admiralty lawyers set forth in "independent" declarations submitted**
14           **to this Court.  Therefore, the total fees claimed by APL must be reduced at the**
             **outset by at least 40%**

15

16           As conclusively established by the uncontroverted "independent" declarations of local

17   maritime lawyers Forrest Booth and George Nowell[2], the prevailing hourly rate for Northern

18   California partner-level maritime attorneys is $375; the prevailing rate for maritime associates is

19   no more than $200.[3]  Because APL has still failed to give this court sworn declarations from

20

21

22   [1] See United States v. Martin 278 F3d 988, 999-1000 (9th Cir 2002) [The party asserting the
     benefit of the attorney-client privilege bears the burden of proving each of several elements of
23   the privilege. "A party claiming the privilege must identify specific communications and the
     grounds supporting the privilege as to each piece of evidence over which the privilege is
24   asserted.....Blanket assertions are 'extremely disfavored.'" (Id. at 1000)].

25   [2] See Defendants' Memorandum in Opposition to Motion for Attorneys Fees at pp. 5-9, and
     declarations thereto, submitted to this court on December 14, 2009.  Defendants respectfully ask
26   this court to deem said Memorandum incorporated by reference into this Supplemental
     Opposition brief.

27
     [3] This court will recall that less than six years ago,  in 2004,  it held that the prevailing rate for
28   maritime partners in San Francisco was $225. See Peake v. Chevron Shipping Co. 2004 AMC
     2778, 2004 WL 1781008 (ND CA 2004).

                                          – 2 –

1   maritime practitioners, as required by <u>Mendenhall v. National Trans. Safety Board</u>[4] 213 F3d 464

2   (9th Cir 2000), APL's claimed entitlements to higher rates of $625 for attorney Donovan, and

3   $475 and $325 for associate attorneys Norris and Moorehead are totally unsupported by

4   competent evidence. See legal authorities at pp. 5-6 of Defendant's Opposition to Motion for

5   Attorneys' Fees.  As a result, attorney Donovan's claimed hourly rate must be reduced by **40%**

6   ($625/$375), while the claimed associate hourly rates must be reduced by at least **45%**

7   ($475/$200; $365/$200)----before the court even contemplates reductions for duplicative or

8   unreasonable billing.

9   **B.      The heavily redacted invoices submitted by APL prevents Defendants from having**
            **a meaningful opportunity to challenge the reasonability of individual time entries.**

10

11          As the Ninth Circuit Court of Appeals has explained, Defendants who suspect

12  duplicative billing and unreasonable charges are "not required to take [plaintiff's] word that

13  every hour was needed and all overlap has been eliminated."  Defendants are entitled to "see

14  just what was charged and why" because under our adversary system, they have a "right to

15  peruse and parse [APL's] fee demand." <u>Intel Corp. v. Terabye International Inc</u>. 6 F3d 614, 623

16  (9th Cir 1993).  See also <u>MGIC Indemnity Corp. v. Weisman</u> 803 F2d 500, 505 (9th Cir  1986).

17          The billing records most recently given to us are still heavily redacted.  It is impossible

18  to tell from them what subjects were researched, discussed or written about.  Was research done

19  on subjects that were germane to our case? Who knows? . Did one or more inexperienced junior

20  attorneys spend 15 hours "researching" a subject, which should have been noted as "black letter

21  law" in Davis' "Maritime Desk Book" or Schoenbaum's Admiralty hornbook or known with no

22  research at all by senior attorney Donovan?  It is impossible to ascertain that from the records

23  provided.

24

25

26  [4] The court in <u>Mendenhall</u> explained that in order to determine a reasonable rate for attorneys of
    comparable experience in cases of comparable complexity, the fee applicant meets its burden of
27  proof by providing the court with affidavits for "attorneys with the same specialization." (id. at
    472).  See also this Court's ruling in <u>Peake</u>, supra, at 2791, where the hourly rates sought by the
28  prevailing party were reduced to the rates usually billed by local, skilled lawyers who specialize
    in maritime law.

RENEWED OPPOSITION TO PLAINTIFF APL'S MOTION FOR ATTORNEYS' FEES

1    The scope of this problem is significant, and it pervades almost all 167 pages of the

2    blacked-out billing records..The following three instances are illustrative:  A)  In one three

3    month period alone, October to December 2006, there are twenty-six entries totaling up to 74

4    hours[5], which tell us only that Attorney X "researched_____", or Attorney Y spent

5    50 minutes "discussing _____".  See the cryptic time entries for October 3, 4, 5, 9, 16, 18,

6    19; November 12,16, 17, 20,21, 22, 27, 29, 30; December 8, 12, 12, 18, 21, 22, 26, 27 29; B)

7    In February 2005, there are eight time entries, totaling more than 35 hours, which tell research

8    has been done, but say nothing about the subject matter of the research.  See time entries for

9    February 1,2,3,4,7,8,9 and 10, 2005; C) Similarly, in March 2008, three timekeepers billed

10   almost 30 hours of redacted time for "research." On two days (March 14 and 21), two attorneys

11   were apparently doing the same research at the same time.  See time entries for March 12, 14,

12   17, 18 and 21, 2008.

13        The records are full of conferences between counsel that suggest the matter was used as

14   a "learning experience" by young lawyers.  No case law allows a prevailing party to recover for

15   "learning experiences" when the work could have been efficiently handled by more senior

16   counsel.  It is at best disingenuous for APL to argue it was saving cost by using less experienced

17   lawyers to handle certain matters.  Less experienced lawyers require longer time to do

18   something routine for a more senior lawyer.  Further, as a senior experienced attorney, Mr.

19   Donovan did not require a new lawyer editing or proofing his work.  See, e.g., the entries for

20   September 18 and 19,  26, 29 and 30  2008.

21        The redactions are particularly injurious to Defendants' ability to "parse" the time entries

22   because they may well hide duplication of attorney effort and unreasonable billing.  For

23   example, an Early Neutral Evaluation conference was held on December 18, 2006.  Three

24   different lawyers (timekeepers 0279, 2139 and 2216)  did the research and drafting of the ENE

25   brief.  It took them up to 76 hours to do this in a fourteen day period. See time entries for

26   November 30, 2006; December, 1, 3, 4, 5, 6, 7, 8,  11, 13.  On the face of it, this is an

27   _____

28   [5] Because of the block billing used by Plaintiff's counsel, it is not clear how much time was
     spent on individual projects within a particular time entry.  It is for this reason that block billing
     is disfavored when attorneys fees are being sought.

– 4 –

1  extraordinarily large number of hours to be spent on an ENE brief.  By this time, the subject

2  matters of the litigation had been researched to death.  Nonetheless, in the week following the

3  ENE conference, three timekeepers again set their research machine in motion and made

4  unspecified and heavily redacted time entries for an additional 30.6 hours of research time.  But

5  what they were researching or why remains unknown. Perhaps they were researching issues

6  which were only germane to one of the potential defendants, who have no corporate relationship

7  to Defendants UG and Kamdar.  To force UG and Kamdar to blindly compensate APL for these

8  charges would not be in the best interests of fairness or justice.

9  **C.      Notwithstanding the prejudicial redactions, it is still possible to see that many of the claimed fees are duplicative and/or unreasonable**

10

11         **1.       Singapore law presumes that a prevailing party should not be indemnified for the attorney fees of two or more lawyers**

12         As Singapore Attorney Tin's declaration establishes, Singapore law frowns on attorney

13  fee indemnification for two or more lawyer who appear at the same hearing or work on the same

14  legal project. See Defendants' Memorandum in Opposition to Motion for Attorneys Fees, pp. 4-

15  6. As a general rule, two attorneys should not bill for the same research project.  And, if a party

16  wants to make use of two or more lawyers, it must advise the court and seek permission to do

17  so. *Id.*

18         APL is a Singapore-based company.[6]  As such, it is presumed to know what the law of

19  Singapore is[7], including Singapore's requirement of prior court approval for the use of more

20  than one lawyer. Plaintiff APL knew at least as early as July 2006,  that it was planning to assert

21  a right to attorneys' fees on the basis of Singapore law although such intent was not

22  communicated to this Court or Defendants.  See footnote  2 in APL's brief in Opposition to UG

23  Co. and Kamdar's Motion for Summary Judgment, filed with this court on July 31, 2006.

24  _____

25  [6]  See APL's First Amended Complaint, at par. 1

26  [7] See HoTung & Co. v. United States 42 Ct. Cl. 213, 225 (1908)["That every citizen is presumed to know the laws of his own country, or the country in which he transacts business, and is bound at his peril to obey them, is elementary"].  See also Vokal v. United States 177 F2d

27  619, 625 (9th Cir 1949) [A party to a contract is presumed to know the law in respect to which the contract is made] and Foster Poultry Farms v. Sunfirst Bank 355 F Supp 2d 1145, 1153 (ED

28  PA 2006), which explained that a party which selects a foreign law for its contract is presumed to know the contents of that law.

RENEWED OPPOSITION TO PLAINTIFF APL'S MOTION FOR ATTORNEYS' FEES

1 │ Nonetheless, at no time did it comply with Singapore law by asking this Court to approve the

2 │ use of more than one attorney.

3 │       APL attempts to excuse its dereliction by arguing that Singapore's attorneys' fees laws

4 │ are merely "procedural", and that this court need only follow Singapore's substantive law.

5 │ APL is thus asking this Court to give it all the benefits, but none of the detriments, of Singapore

6 │ law. This is patently unfair. More pertinently, its argument regarding substance vs. procedure is

7 │ also misleading. APL has not offered any Singapore case or statutory law with regard to the

8 │ substantive/procedural distinction. Under American admiralty law, it is clear the measure and

9 │ quantification of damages[8] is almost always substantive. See <u>Clausen v. M/V. New Carissa</u> 339

10 │ F3d 1049, 1064-1069 and <u>Preston v. Frantz</u> 11 F.3d 357, 358-59 (2d Cir 1997). Therefore, if

11 │ Defendants are required to pay attorneys fees, they should be liable only for the fees of the

12 │ senior Sheppard Mullin attorney whenever two or more lawyers attend a hearing or perform a

13 │ given task.

14 │       The heavy redactions make it impossible to ascertain when many duplicative and

15 │ unreasonable tasks or projects were performed and billed for. However, some examples can be

16 │ easily seen:

17 │     1) Two attorneys billed for preparing and attending the December 18, 2006 ENE

18 │         conference, each logging approximately 9 hours of time. Only Mr. Donovan's time

19 │         should be allowed in the absence of any explanation for the need for more than one

20 │         attorney ; Similarly, two attorneys attended both the February 5, 2007 summary

21 │         judgment hearing and the February 28, 2007, pre-trial conference. Again, without

22 │         explanation of why two attorneys were needed. Only Mr. Donovan's time (at its

23 │         proper rate) should be assessed against Defendants for both of these appearances.

24 │     2) The Notice of Appeal: Dissatisfied with this Court's attorneys' fees ruling, APL filed

25 │         a one-sentence Notice of Appeal. The language is boilerplate; nothing special was

26 │         needed or included in it. Nonetheless, three different attorneys billed 5 hours for the

27 │         preparation of this *pro-forma* document. See entries for November 26 and 29,

28 │

---

[8] Attorneys fees are a measure of damages under Singapore law.

RENEWED OPPOSITION TO PLAINTIFF APL'S MOTION FOR ATTORNEYS' FEES

2007.   This demand is both patently unreasonable and indicative of the over-lawyering endemic in this case.  Only Mr. Donovan's fees should be assessed against Defendants. [NB : Multiple attorneys also worked on Appellee's opposition brief, as well as the opening appellant's brief on the attorneys fees issue.  In both of these cases, APL should be similarly limited to compensation for the work of only one attorney].

3) Appellate Reply Brief, attorneys' fees issue: Two lawyers spent more than 31 hours preparing an appellate reply brief, which seemingly re-stated points researched and argued in other contexts.   Timekeeper 0279 (Senior Lawyer Donovan) billed 18.1 hours of time; timekeeper 2443 billed 17.7 hours.  Under Singapore law, one and only one attorney's time, should be recovered subject to adjustment for the proper hourly rate.

4) Imp-Ex is a company with no corporate connection to UG or Kamdar herein.  A number of time entries address discovery to Imp-Ex, and research regarding Imp-Ex. (See entries for October 2, 3 and 5, 2006, November 16, 20 and 21).  None of these entries should be allowed against UG and Kamdar.

### III. CONCLUSION

There is still no basis for this Court to award attorneys' fees to APL.  Although APL asserts Singapore law as the basis for its pursuit of fees, it has failed to provide this Court with any guidance on what Singapore law provides.  Defendants have established the parameters of fee awards in Singapore and demonstrated what fees are recoverable.  The recoverable fees are far less than what has been claimed.  In particular, under Singapore law, a party is limited to the recovery of fees for one attorney unless permission is granted by the Court in advance for the use of more than one attorney. APL failed to seek the required permission and now attempts to recover fees for not two attorneys but for at least five different attorneys and non attorneys.

Even under the US standard, APL's proof falls far short of Ninth Circuit requirements. APL has not provided any independent evidence to justify the hourly rates it seeks.  Defendants have established the maximum hourly rate in San Francisco for senior attorneys is $375 and for

1  associates is $200.  In addition to not providing independent evidence to establish the hourly

2  rate, APL has failed to provide complete time records from which the reasonableness of the fees

3  claimed can be evaluated.  The records submitted are heavily redacted and deleted far more than

4  the attorney client privileged material allowed by the court.   Despite the heavily redacted

5  records and block billing, extensive "over lawyering" is patent, with duplicate effort and

6  appearances the norm, not the exception.

7       This Court should deny the motion for attorneys fees until appropriate evidence and

8  records are submitted in support thereof.

9  DATED:  March 5, 2010

10                                        BULLIVANT HOUSER BAILEY PC

11

12                                        By _____
                                             Marilyn Raia
13                                           Norman J. Ronneberg

14                                        Attorneys for Defendants Valley Forge Ins. Co. as
                                          intervenor for U.G., Inc. dba Universal Grocers and
15                                        Kamdar Global LLC

16  12382883.1

RENEWED OPPOSITION TO PLAINTIFF APL'S MOTION FOR ATTORNEYS' FEES