UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APL CO. PTE. LTD., | No. C 05-00646 MHP |
| Plaintiff, | |
| v. | **MEMORANDUM & ORDER** |
| UK AEROSOLS LTD. ET AL., | **Re: Plaintiff APL's Motion for Attorneys' fees** |
| Defendants. | |

In 2005, APL Co. Pte. Ltd. ("APL"), a Singaporean shipping company, filed suit against UK Aerosols Ltd. ("UK"), a British corporation, U.G. Co. Inc. ("U.G."), and Kamdar Global, LLC ("Kamdar") (collectively "defendants"). APL alleged that hairspray, hair mousse and air fresheners ("the goods") it was shipping on defendants' behalf were damaged during transport due to defendants' failure to adequately and legally pack the goods. Eventually, APL received a default judgment against UK and prevailed on the merits against UG and Kamdar on a motion for summary judgment. APL then moved for an award of attorneys' fees, which this court denied, reasoning that this admiralty dispute was governed by the "American Rule," whereby parties bear their own costs of representation. Defendants appealed the grant of summary judgment in favor of APL and APL appealed the denial of its motion for attorneys' fees. On appeal, the Ninth Circuit upheld this court's summary judgment order, but reversed the denial of the motion for attorneys' fees and remanded to this court. *APL Co. Pte. Ltd. v. UK Aerosols Ltd.*, 582 F.3d 947 (9th Cir. 2009). The Ninth Circuit held that the contract between the parties required that the law of Singapore apply to any motions for

attorneys fees. Accordingly, APL filed a new motion for attorneys' fees. Having considered the arguments and submissions of the parties and for the reasons stated below, the court enters the following memorandum and order.

BACKGROUND

This action is now back before this court after its brief sojourn in the Ninth Circuit. As discussed above, this is an admiralty case. APL alleged that it incurred $729,895.91 to clean up and dispose of the goods that were destroyed due to defendants' inadequate and illegal packing of the goods. In February 2007, after this court had issued a default judgment against UK and the parties had engaged in lengthy motion practice, the court granted APL's motion for summary judgment against U.G. and Kamdar. On June 25, 2007, the court entered an order of judgment granting APL the full amount of requested damages, as well as prejudgment interest.

On that same day, Valley Forge Insurance Company ("Valley Forge"), U.G.'s insurer, filed a motion to intervene on behalf of U.G. and Kamdar. This court granted Valley Forge's request, but only for the limited purpose of pursuing the appeal of the court's summary judgment order. On August, 29, 2007, the court entered an amended judgment in favor of APL and against UK, U.G. and Kamdar, jointly and severally, in the amount of $733,963.10. Valley Forge appealed the judgment on September 19, 2007.

Meanwhile, on July 9, 2007, APL filed a motion to recover approximately $641,000.00 in attorneys' fees and $34,235.00 in costs it incurred pursuing this action. Although parties in a civil suit typically bear their own costs of litigation, APL argued that granting of attorneys' fees in this action were governed by Clause 28(a) of the Bill of Lading that the parties entered into prior to shipping the goods. Clause 28(a) of the Bill of Lading provides "in so far as anything has not been dealt with by the terms and conditions of this Bill of Lading, Singapore law shall apply. Singapore law shall in any event apply in interpreting the terms and conditions hereof." APL asserted that Singapore adheres to the "English Rule," whereby the prevailing party in civil litigation is entitled to reimbursement from the losing party for attorneys' fees and costs. On October 30, 2007, the court

2

denied APL's motion for attorneys' fees. On November 29, 2007, APL filed notice with this court that it intended to appeal the attorneys' fee issue.

On September 21, 2009, the Ninth Circuit affirmed this court's grant of summary judgment in APL's favor, but reversed this court's denial of APL's motion for attorneys' fees, and remanded the case to this court so that it could calculate appropriate attorneys' fees under Singapore law. *APL Co. Pte. Ltd. v. UK Aerosols Ltd.*, 582 F.3d 947, 958 (9th Cir. 2009). On that same day, the Ninth Circuit issued an order that APL was entitled to costs on appeal. On November 16, 2009, the Ninth Circuit issued its mandate from the appeal, which indicated that the bill of costs on appeal had been awarded to APL in the amount of $309.80. On November 25, 2009, the Ninth Circuit issued an order that this court should consider APL's application for attorneys' fees related to the appeal at the same time it considered APL's motion for attorneys' fees related to the prosecution of the action in the district court.

On November 30, 2009, APL filed a motion for attorneys' fees in this court. In total, APL requests $875,799.52. APL's attorneys claim they devoted approximately 1,689 hours pursuing this litigation in the district court at a cost of $641,000.00 in attorneys' fees and $34,235.00 in non-taxable costs. APL also contends that its attorneys incurred an additional $200,564.52 in fees pursuing this action in the Ninth Circuit.

DISCUSSION

I.     Method of Calculating Fees

In light of the Ninth Circuit's mandate in this action, the parties agree that APL is entitled to some amount of attorneys' fees. Pursuant to the Application of English Law Act section 3(1) (Sing.), "[t]he common law of England (including the principles and rules of equity) so far as it was part of the law of Singapore immediately before 12th November 1993 shall continue to be part of the law of Singapore." Among the English laws to which Singapore subscribes is the "English Rule," under which "attorneys' fees are generally awarded to the prevailing party." *APL*, 582 F.3d at 957. Accordingly, APL is entitled to an award of attorneys' fees.

3

What the Ninth Circuit left entirely unaddressed was the method by which the court should calculate a reasonable attorneys' fees. In Singapore, attorneys' fees are called "costs." *See* Docket No. 209 (Opp'n), Exh. 1 (Seng Dec.) ¶¶ 6, 8; *see also Sabah Shipyard (Pakistan) Ltd. v. Government of Islamic Republic of Pakistan*, [2004] 3 S.L.R. 184, 192 (holding that "costs" include attorneys' fees). As far as the court can discern, Order 59 of the Singapore Rules of Court ("Order 59"), *available at* http://app.supremecourt.gov.sg/data/doc/ManagePage/97/eROC2006rev/eROC2006.htm, governs the awarding of costs. At the conclusion of litigation, a party potentially entitled to fees submits a bill of costs to the opposing party or parties. If the parties dispute the bill of costs, the bill is submitted to a "taxing Registrar" who determines the appropriate amount of the costs. Costs are determined on one of two bases: the "standard basis" or the "indemnity basis". The default manner for determining the proper amount of costs when a prevailing party is entitled to costs is the "standard basis." *See* Order 59, Rule 27(2); Supreme Ct. of Sing., Taxation and Review of Bills of Costs, http://app.supremecourt.gov.sg/default.aspx?pgID (explaining that where costs are not prescribed by legislation, the court should award them "on a standard basis). "On taxation of costs on the standard basis, there shall be allowed a reasonable amount in respect of all costs reasonably incurred and any doubts . . . as to whether the costs were reasonably incurred or were reasonable in amount shall be resolved in favour of the paying party . . . ." Order 59, Rule 27(2). Defendants' expert concedes that "[t]he underpinning approach to the taxation of costs in Singapore is that of reasonableness," and that "the overriding concern of the court is to exercise its discretion to achieve the fairest allocation of costs." Seng Dec. ¶ 19, 12. The parties also implicitly agree that the "standard basis" for apportioning costs, not the "indemnity basis," is appropriate in the instant case. *Id.* ¶ 15.

The Singapore Rules of Court also provide a number of very specific parameters that a taxing Registrar should apply when calculating costs. For example, it appears that under Singapore law, a party who prevails on what the Singapore courts call "summary judgment" is only entitled to a fixed fee ranging between $2,000 and $15,000 depending on the court in which the case is being pursued. *See* Order 14; Order 59, Appendix 2(1)(c); *id.*, Appendix 2, Part II.[1] It also appears that a party may

4

not receive costs for more than two attorneys or for non-attorneys working on a matter, unless that party makes certain showings of necessity. Seng Dec. ¶ 20.

The court, however, does not interpret the Ninth Circuit's mandate in this action as requiring the court to apply Singapore's specific and picayune procedural rules for calculating costs. Instead, the court will utilize the general, substantive "standard basis" for calculating costs, and will be guided by its reasonableness principle.

Although the "standard basis" uses terminology different from that employed in the United States, it has a very familiar ring. The widely accepted means for calculating attorneys' fees in the United States, the lodestar method, also uses reasonableness as its touchstone. The "lodestar is the product of *reasonable* hours times a *reasonable* rate." *City of Burlington v. Dague*, 505 U.S. 557, 559 (1992) (emphasis added, citations omitted). As is the case under the "standard basis," the party seeking fees bears the burden of submitting detailed records documenting "the hours worked and rates claimed." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). A court in the United States may reduce those hours if the documentation is inadequate, the submitted hours are duplicative or inefficient, or the requested fees appear excessive or otherwise unnecessary. *Id.*; *see also Chalmers v. Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986).

Pursuant to the above discussion, the court will apply the "standard basis" to determine the costs to which APL is entitled.

A. Reasonable Rates

The reasonableness of an attorney's hourly fee is determined in reference to the "prevailing market rates in the relevant community," with a special emphasis on fees charged by lawyers of "comparable skill, experience, and reputation." *Davis v. City of San Francisco*, 976 F.2d 1536, 1546 (9th Cir. 1992). As a general rule, the forum district, in this case the Northern District of California, represents the relevant legal community. *See Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).

Plaintiff requests the following rates for the attorneys who worked on this case.

5

| Attorney | Experience[2] | Hourly Billing Rate(s)[3] |
|---|---|---|
| Charles Donovan | 28 yrs. | $440-$645 |
| Amy Norris | 8 yrs. | $325-$475 |
| Brian Blackman | Unknown | $410 |
| Brenna Moorhead | 2 yrs. | $240-$385 |
| Timothy Perry | 3 yrs. | $290 |
| Mick Lauter | 1yr. | $260 |
| Margaret Pak | Unknown | $260 |
| Law clerks | | $195 |
| Paralegals | | $215 |

The only submission by plaintiff's attorneys to substantiate the reasonableness of these rates are statements contained in their own declarations, a published survey regarding the rates charged by other law firms and two federal court decisions in which attorneys' fees were approved for the same attorneys who worked in this action. None of these supporting documents are sufficient to establish that the requested rates are reasonable. To begin with, self-serving declarations cannot provide the sole authority for the reasonableness of the attorneys' rates. *Jordan v. Multnomah County*, 815 F.2d 1258, 1263 (9th Cir. 1987) ("[T]he fee applicant has the burden of producing satisfactory evidence, *in addition to the affidavits of its counsel*, that the requested rates are in line with those of the prevailing community for similar services of lawyers of reasonably comparable skill and reputation." (emphasis added) (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). The published survey, unaccompanied by any documentation to substantiate that the attorneys in this case have comparable skill and experience to the attorneys at the other firms, is essentially meaningless. Finally, the two attorneys' fees orders submitted by plaintiff's attorneys are of little help in determining the reasonableness of the attorneys' rates. One, a six-year old order from the Central District of California, is not from the relevant legal market. The other, a short order granting attorneys' fees in an unopposed motion in the Northern District of California, provides no information about the rates sought by the attorneys in that case.

6

The court must also consider the type of law at issue in this case when analyzing the reasonableness of the rates sought. Defendants assert that the rates typically charged by maritime lawyers in the Northern District of California are significantly less than what plaintiff's counsel submit, and have included two declarations from maritime lawyers to that effect. Defendant's seek to limit Donovan's rate to no more than $375 per hour and the associate attorneys' rates to no more than $200 per hour. Plaintiff's attorneys did not provide any satisfactory rebuttal to defendants' argument about the reasonableness of the rates sought.

Given the various deficiencies in plaintiff's justification for the asserted rates and that under the "standard basis" the court must resolve all doubts in defendants' favor, the court holds that the following reduced rates are reasonable:

| Attorney | Hourly Rate |
| --- | --- |
| Donovan | $450 |
| Norris | $300 |
| Blackman | $300 |
| Moorhead | $240 |
| Perry | $240 |
| Lauter | $225 |
| Pak | $225 |
| Law clerks | $150 |
| Paralegals | $150 |

These rates are treated as current rates, rather than historical rates which may require an upward adjustment, and shall apply to the calculation of fees for the entirety of the litigation.

B.   Reasonable Hours

As initial support of its motion for attorneys' fees, plaintiff submitted some records to document the hours devoted to litigating this action. Plaintiff submitted declarations from two partners and two associates at the law firm Sheppard Mullin Richter & Hampton, all of whom worked directly on plaintiff's case. According to these declarations, plaintiff's attorneys billed more

7

than 1,689 hours prosecuting this action in the district court, worth $641,000.00 in fees, and billed more than 424 hours appealing the district court's orders on summary judgment and for attorneys' fees, accumulating an additional $200,564.52 in fees.

For reasons not apparent from the record, the quality of the time records initially submitted by plaintiff to justify the hours expended in the district court and in the Ninth Circuit differed dramatically. Plaintiff submitted contemporaneous time records for the appeal that contain detailed, task-by-task descriptions of how the attorneys spent their time. *See* Mot., Exh. C (billing records re: appeal from Aug. 30, 2007, to July 30, 2008); Docket No. 205-4 (billing records re: appeal from July 1, 2008, to March 17, 2009). A great deal of information was, however, redacted from the records in order to allegedly protect attorney work-product.

In contrast, the records initially submitted to justify the hours worked to prosecute this action in the district court were wholly inadequate. *See* Docket No. 205-1 (billing records re: district court action). Even though this case was filed in February 2005, plaintiff's attorneys only submitted contemporaneous time records for the period between April 2, 2007 and July 9, 2007. And for that extremely meager production of time records, plaintiff's attorneys redacted every single description of the work performed for each line item. The complete redaction of any information about the work performed made it impossible for the court or defendants to examine the records for redundant or unnecessary work. The summaries provided in plaintiff's attorneys' declarations about the various amounts of time devoted to each portion of the district court proceedings could not rescue plaintiff's filing. *See* Docket No. 205-1 (Norris Dec.) ¶ 15.

Given the absence of records for much of the district court action, at the hearing on the motion for fees, the court ordered plaintiff's attorneys to submit all contemporaneous time records by February 8, 2010, and provided defendants with an opportunity to respond. In response to the court's instruction, plaintiff submitted comprehensive contemporaneous time records spanning the period from October 2004 to March 2009. As with the time records for the appeal, however, plaintiff redacted information from many of the entries.

8

While the submission of comprehensive, item-by-item time records represents a great improvement over plaintiff's initial supporting documentation, the redactions in both the trial and appellate time records make it impossible for the court to determine the reasonableness of the invoices. As one example of the countless instances of redaction, an entry for attorney Amy B. Norris on December 12, 2005, indicates that she spent 0.70 hours to "Analyze correspondence with Shoshana Chazan regarding [redaction]. Confer with Brenna Moorhead [another of plaintiff's attorneys] regarding [redaction]. Confer with Charley Donovan [another of plaintiff's attorneys] regarding [redaction]." The widespread use of redactions, without anything other than the most general justification from plaintiff's attorneys, prevents defendants from challenging and the court from determining the reasonableness of the billing entries. To be clear, there is no evidence before the court to indicate that the redactions were made in bad faith. Two actions between APL and Valley Forge, regarding whether defendants' insurance policy covered the judgment in this case, are currently pending, and it is entirely plausible that some of the time entries might implicate the issues being litigated in those cases. Nonetheless, this court is tasked with determining whether the number of hours that plaintiff's attorneys spent litigating this action was reasonable. Under the "standard basis," which mandates that the court resolve all doubts in favor of the payor, the court would have no choice but to draw the conclusion that many of the redacted entries, especially where the redactions prevent the court from assessing whether the attorney's conduct was relevant to this case, are unreasonable. Accordingly, within thirty (30) days of the entry of this order, plaintiff shall submit unredacted billing records, under seal, for *in camera* review. If plaintiff fails to do so, the court will apply the "standard basis" to the records currently before it in determining the number of hours reasonably expended on this litigation. After the thirty-day deadline has passed, the court will evaluate the reasonableness of plaintiff's billing records and calculate a reasonable attorneys' fee using the rates indicated above.

II. Costs

Plaintiff's counsel's documentation of the costs expended in the litigation, which total $34,235, are adequate, and the total amount is reasonable.

CONCLUSION

For the foregoing reason, plaintiff APL's motion for attorneys' fees is GRANTED in part. Under Singapore law, plaintiff, as the prevailing party, is entitled to costs, which include both reasonable attorneys' fees and reasonable expenses incurred in litigating this action.

Within thirty (30) days of the entry of this order, plaintiff shall submit, under seal, unredacted copies of its attorneys' billing records so that the court can conduct an *in camera* review. The court will then calculate a reasonable attorneys' fee, resolving all doubts in favor of defendants, based upon the hourly billing rates indicated above.

IT IS SO ORDERED.

Dated: September 3, 2010

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

**ENDNOTES**

1. Defendants' expert admits, however, that "[n]otwithstanding the fixed scale of costs, a Singapore court has the discretion under Order 59 Rule 31(2) to order that costs be taxed if it deems fit." Seng Dec. ¶ 18.

2. The attorneys' experience is measured as of the filing of this motion.

3. Where a range of billing rates is provided, the attorney in question raised his or her billing rate during the five year course of this litigation. The first number indicates his or her billing rate when he or she began working on the case, while the last number indicates his or her current billing rate.